Erin K. Olson, OSB 934776
Law Office of Erin Olson, P.C.
2014 N.E. Broadway Street
Portland, OR  97232
Telephone:  (503) 546-3150
eolson@erinolsonlaw.com

Brigid K. Turner, OSB 065846
Dwyer Williams Cherkoss Attorneys PC
1558 S.W. Nancy Way, Suite 101
Bend, OR  97702
Telephone:  (541) 617-0984
brigid@rdwyer.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **E.J.T.,** a minor, by and through his Conservator, InTRUSTment Northwest, Inc., <br><br> Plaintiff, <br><br> v. <br><br> **JEFFERSON COUNTY,** a public body; **TYLER W. ANDERSON,** in his individual capacity; and **ARJANG ARYANFARD**, in his individual capacity, <br><br> Defendants. | Case No.:  3:20-cv-1990 <br><br> **COMPLAINT** <br><br> **(Negligence; Violation of ORS 124.105; and Violation of 42 U.S.C. § 1983)** <br><br> **(DEMAND FOR JURY TRIAL)** |

Plaintiff alleges:

**PAGE 1 – COMPLAINT**

## PARTIES

1.      Plaintiff E.J.T. is a five year-old boy who at all times relevant to the allegations herein was a resident of the State of Oregon.  He appears through InTRUSTment Northwest, Inc., a conservator duly appointed for him in Jefferson County Circuit Court Case No. 20PR00609.

2.      Defendant Jefferson County is body politic and corporate under ORS 203.010 and a public body liable for the tortious acts of its officers, agents, and employees pursuant to ORS 30.260(4) and 30.265(1).

3.      Tyler W. Anderson ("Deputy Anderson") was at all times relevant a Deputy Sheriff appointed by the Jefferson County Sheriff and empowered pursuant to ORS 204.635 to perform any act or duty of the Sheriff.  Deputy Anderson was at all times relevant acting within the course and scope of his employment as a Deputy Sheriff.  Deputy Anderson is named individually herein pursuant to ORS 30.265(4) due to the constitutionally inadequate limits of ORS 30.272(2)(g) as applied to this case, and in his individual capacity under 42 U.S.C. § 1983.

4.      Arjang "R.J." Aryanfard ("Officer Aryanfard") was at all times relevant a police officer employed by the Warm Springs Police Department.  Officer Aryanfard was at all times relevant acting within the course and

**PAGE 2 – COMPLAINT**

scope of his employment as a Warm Springs Police Officer. He is named in his individual capacity herein.

## JURISDICTION

5.    This court has jurisdiction of Plaintiff's claims of violations of federal constitutional rights under 28 U.S.C. §§ 1331 and 1343.

6.    Pendent and supplemental jurisdiction is sought under 28 U.S.C. § 1367 and FRCP 18(a) for Plaintiff's state law claims.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

7.    E.J.T. was born in April, 2015, to Kaytlynne Rogerson ("Rogerson") and Andre Thomas ("Thomas").

8.    Thomas is a member of the Confederated Tribes of Warm Springs who at all times relevant, resided on the Warm Springs Indian Reservation in Jefferson County, Oregon.

9.    After Rogerson and Thomas separated in early 2017, E.J.T. remained in Rogerson's custody, and lived with her in her residence outside the city limits of Madras, in Jefferson County, Oregon. Rogerson and Thomas agreed informally to a visitation arrangement for Thomas and E.J.T.

10.    Rogerson and Josue Jair Mendoza-Melo ("Mendoza") began dating in approximately March of 2017, and Mendoza moved in with Rogerson and E.J.T. in early July of 2017.

**PAGE 3 – COMPLAINT**

11.    After Mendoza moved in with her, Rogerson would occasionally leave E.J.T. in Mendoza's care.

12.    On July 2, 2017, Rogerson took E.J.T. to St. Charles Madras Hospital after E.J.T.'s right thumb was dislocated.  Rogerson reported to hospital staff that the injury had happened in a witnessed fall.  E.J.T. was treated and released.

13.    On August 27, 2017, Mendoza picked up E.J.T. from his regular babysitter, Brittany Fowler ("Fowler"), and took him to Rogerson's home. When E.J.T. left Fowler's, he was uninjured.  The following morning, Rogerson dropped E.J.T. off at Fowler's while she went to work.  Fowler called Rogerson a short time later and instructed her to come pick up E.J.T. and take him to the hospital because his right arm was injured.  Rogerson did so, and St. Charles Madras Hospital staff diagnosed E.J.T. with nursemaid's elbow, a form of dislocation caused when a ligament slips out of place and gets caught between two bones of the elbow joint.  E.J.T. was treated and released.

14.    On September 30, 2017, Thomas picked E.J.T. up from Fowler's in the morning for a planned visit and delivered him to Rogerson's custody at around 9:10 p.m. that night while Rogerson was visiting with friends in Culver.  E.J.T. appeared happy when Thomas dropped him off and exhibited no signs of injury.

**PAGE 4 – COMPLAINT**

15.    The following morning, October 1, 2017, Rogerson left E.J.T. in Mendoza's care in their home outside the city limits of Madras, Jefferson County, Oregon, when she went to work, during which time Mendoza assaulted E.J.T.

16.    On Monday, October 2, 2017, Rogerson dropped E.J.T. off at Fowler's on her way to work.  When Fowler later went to change E.J.T.'s diaper, he expressed discomfort and pain, and she found severe bruising around his genitals.  Fowler called Rogerson and instructed her to come take E.J.T. to the hospital.  Rogerson did, arriving with E.J.T. at St. Charles Madras Hospital at approximately 9:57 a.m.  Rogerson's mother, Tina Jorgenson ("Jorgenson") arrived a short time later.

17.    St. Charles Madras Hospital staff examined E.J.T., describing his injuries in his medical record as "Scratches under both eyes, dry skin, bruising to scrotal/perineal area, small bruise noted to inner left thigh." The attending nurse, Briana Mellor ("Nurse Mellor"), advised Rogerson that the nature of E.J.T.'s injuries required hospital staff to notify law enforcement and the Oregon Department of Human Services ("DHS"). Nurse Mellor further advised Rogerson that DHS would likely want to come speak with her at her home and check on E.J.T.

18.    Nurse Mellor called Frontier Regional 9-1-1 dispatch center at 10:20 a.m. on October 2, 2017, to report possible child abuse of E.J.T.,

**PAGE 5 – COMPLAINT**

describing his injuries to the dispatcher as scrotal swelling and bruising. Frontier Regional 9-1-1 dispatched Jefferson County Sheriff's Deputy Tyler W. Anderson ("Deputy Anderson") to the hospital at 10:23 a.m.

19.     Deputy Anderson was a February 2016 graduate of the Department of Public Safety Standards and Training ("DPSST") Basic Police Class.  Deputy Anderson notified the dispatch center at 10:32 a.m. via his mobile data terminal ("MDT") that he had spoken by phone with Nurse Mellor, who told him Rogerson was waiting for him at the hospital, and that the abuse had happened at E.J.T.'s father's place on Saturday.

20.     When he arrived at St. Charles Madras Hospital, Deputy Anderson contacted Rogerson, glanced at E.J.T., and asked where E.J.T.'s father lived.  When Rogerson responded that he lived in Warm Springs, Deputy Anderson raised his hands and told her this was out of his jurisdiction, then turned and left.  He reported to dispatch via his MDT at 10:44 a.m. that "the abuse occurred in Warm Springs.  Dispatch is giving the call to them.  Mom will wait at [St. Charles Madras]."

21.     Deputy Anderson cleared the hospital at 10:45 a.m. without speaking further with hospital staff, without requesting medical records of the current or any previous injuries, without examining E.J.T., without questioning Rogerson about E.J.T.'s whereabouts and activities in the

**PAGE 6 – COMPLAINT**

preceding days, and without conducting any investigation whatsoever.  He did not take notes.  He did not write a report.  He did not notify DHS.

22.     Nurse Mellor contacted the Warm Springs Police Department and was advised they were shorthanded and would come when they could get away.  After a considerable wait, Warm Springs Police Officer Arjang "RJ" Aryanfard called Rogerson and interviewed her briefly over the phone.  He advised her that he had spoken with Thomas, and that he wanted to see E.J.T. and take photographs.

23.     When Warm Springs Police had not arrived at the hospital by approximately 2:00, Jorgenson informed hospital staff that E.J.T. had not been fed and had been cooped up in the small examining room for several hours.  After another call by Nurse Mellor to the Warm Springs Police Department in which she was again told they still could not get away, Nurse Mellor told Rogerson and Jorgenson that if they promised to take E.J.T. to the Warm Springs Police Department and speak to the officer named "R.J.," the hospital would release E.J.T.  After making the promise to Nurse Mellor, Rogerson and Jorgenson took E.J.T. and left.

24.     After leaving St. Charles Madras Hospital, Jorgenson drove Rogerson and E.J.T. to McDonalds to get food for E.J.T.  While waiting for the food, Jorgenson called the Jefferson County Sheriff's Office and asked to speak to the Sheriff.  When Sheriff James N. Adkins came on the line,

**PAGE 7 – COMPLAINT**

Jorgenson described the sequence of events and expressed her concerns about the instructions they had received to take E.J.T. to the Warm Springs Police Department. Sheriff Adkins affirmed that Jorgenson should continue on to Warm Springs as instructed.

25. Upon their arrival at the Warm Springs Police Department, Jorgenson and Rogerson contacted Officer Aryanfard, a March 2016 graduate of DPSST's Basic Police Class. Officer Aryanfard spoke with Rogerson and Jorgenson, took photos of E.J.T., promised Rogerson he would figure out what happened to E.J.T., and gave Rogerson his business card. Jorgenson, Rogerson, and E.J.T. then left the police station, and never heard from Officer Aryanfard again.

26. Officer Aryanfard did not further investigate E.J.T.'s injuries, having concluded that the injuries to E.J.T.'s genital area were caused by E.J.T. leaning over a coffee table, which conclusion was palpably unreasonable. Officer Aryanfard did not write a report, did not notify DHS, and did nothing with the photographs he had taken of E.J.T. for more than six weeks until they were requested of him by officers investigating catastrophic injuries sustained by E.J.T. on November 19, 2017.

27. Rogerson expected to be contacted by DHS after leaving St. Charles Madras Hospital on October 2, 2017, as she had been told by Nurse Mellor she would be. When she had not been contacted two days later,

**PAGE 8 – COMPLAINT**

Rogerson called DHS.  Rogerson was told by the call-taker that DHS had not received a report and had nothing in their system about the injuries with which E.J.T. presented to St. Charles Madras Hospital on October 2, 2017. Rogerson left her phone number with DHS in the event they needed to contact her.

28.     Between October 2, 2017, and November 19, 2017, Rogerson continued to leave E.J.T. in Mendoza's care on occasion at their home outside the city limits of Madras, Jefferson County, Oregon, during which time Mendoza inflicted physical injuries including bilateral facial bruising upon E.J.T.

29.     On the morning of November 19, 2017, E.J.T. was again left in Mendoza's care at their home outside the city limits of Madras, Jefferson County, Oregon, and Mendoza again assaulted E.J.T., inflicting serious physical injuries including traumatic brain injury.

30.     At 10:45 a.m., Rogerson carried E.J.T., who was unresponsive and stiff, into St. Charles Madras Hospital.  St. Charles Madras staff provided emergent care to E.J.T., including placing him on a ventilator, and then ordered him airlifted to Oregon Health Sciences University where he was admitted to Doernbecher Children's Hospital.  At Doernbecher, E.J.T. underwent emergent decompressive surgery to relieve a subdural brain

**PAGE 9 – COMPLAINT**

hematoma, but nonetheless suffered permanent, catastrophic brain damage resulting in permanent physical, cognitive, and developmental disabilities.

31.    Mendoza was arrested and ultimately indicted by the Jefferson County grand jury on charges of Attempted Aggravated Murder, Assault in the First Degree, Assault in the Second Degree, and Criminal Mistreatment in the First Degree for crimes committed November 19, 2017, and Criminal Mistreatment in the First Degree and Assault in the Third Degree for crimes committed on or about October 1, 2017.

32.    Mendoza admitted to having caused E.J.T.'s injuries and was eventually convicted pursuant to a plea agreement of Attempted Aggravated Murder and one count of Criminal Mistreatment in the First Degree.  He was sentenced to a total of 144 months in prison.

33.    As a result of the injuries inflicted by Mendoza on November 19, 2017, E.J.T. required a tracheostomy which must be regularly suctioned, changed, and cleaned.  E.J.T. frequently requires oxygen and ongoing monitoring via a pulse oximeter.  He has a g-tube for feeding, which requires monitoring and care.  He cannot walk or talk.  He requires 24 hour care and supervision, and he will for the rest of his life, all to his economic damage in an amount the jury determines in accordance with the law and the facts, not to exceed $20 million.

**PAGE 10 – COMPLAINT**

34.    In addition, E.J.T. has suffered and will continue to suffer physical pain and discomfort, emotional injury and mental anguish, trauma, an inability to form intimate relationships, nightmares and sleep disruption, and chronic malaise, all to his noneconomic damages in an amount the jury determines in accordance with the law and the facts, not to exceed $10 million.

## FIRST CLAIM FOR RELIEF – NEGLIGENCE

### (Against Jefferson County,
### Tyler W. Anderson, and Arjang Aryanfard)

35.    Plaintiff realleges and incorporates herein as though set forth in full paragraphs 1-34, above.

36.    Jefferson County, by and through its employees or agents acting within the course and scope of their duties, including Deputy Anderson, and Officer Aryanfard, in his individual capacity, were negligent in one or more of the following ways on October 2, 2017, which caused the injuries sustained by E.J.T. thereafter, up to and including those sustained on November 19, 2017:

(a) By failing to make a mandatory cross-report of child abuse or neglect to DHS, as was required by ORS 419B.015;

(b) By failing to cause an investigation to be made to determine the nature and cause of the abuse of E.J.T., as required by ORS

**PAGE 11 – COMPLAINT**

419B.020(1)(a);

(c) By failing to cause E.J.T.'s injuries to be photographed and sent to a designated medical professional pursuant to ORS 419B.028; and

(d) By failing to ensure that a designated medical professional conducted a medical assessment of E.J.T. within 48 hours, as required by ORS 419B.023(2).

37.    As a result of the negligence of Jefferson County, Deputy Anderson, and Officer Aryanfard as alleged in this claim, an investigation into the nature and cause of the injuries sustained by E.J.T. on or about October 1, 2017, that were treated at St. Charles Madras Hospital on October 2, 2017, was not conducted, E.J.T.'s actual assailant was not identified, E.J.T. was not protected from Mendoza, and he suffered the harms and losses described in paragraphs 33 and 34.

38.    A timely notice of claim was sent to Jefferson County as required by ORS 30.275 within 270 days of the date of the discovery of E.J.T.'s cognizable injury by a person whose knowledge is imputed to E.J.T.

**SECOND CLAIM FOR RELIEF – VIOLATION OF ORS 124.105**

**(Against Jefferson County,
Tyler W. Anderson, and Arjang Aryanfard)**

39.    Plaintiff realleges and incorporates herein as though set forth in full paragraphs 1-38, above.

**PAGE 12 – COMPLAINT**

40.    E.J.T. was at all relevant times a vulnerable person within the meaning of ORS 124.100(1)(e) and entitled to the protection of ORS 124.100 *et seq.*, because he was an incapacitated person within the meaning of ORS 124.100(1)(e)(C) and ORS 125.005(5) since a condition existed in which his ability to receive and evaluate information effectively or to communicate decisions was impaired to such an extent that he did, at the relevant times, lack the capacity to meet the essential requirements for his physical health or safety, including those actions necessary to provide the health care, food, shelter, clothing, personal hygiene and other care without which serious physical injury or illness was likely to occur. Specifically, conditions existed such that E.J.T. lacked a wide range of cognitive and functional abilities relating to receipt and evaluation of information and communication, including:

(a) The ability to use and understand words, regardless of whether they were written or spoken;

(b) The ability to communicate effectively with or otherwise engage others, including those who may have been in a position to help E.J.T. meet his basic needs;

(c) The ability to understand basic concepts related to self-care, medical treatment, common dangers, and personal safety;

(d) The ability to manage money or purchase necessities;

**PAGE 13 – COMPLAINT**

(e) The ability to understand (i) that he had the need and right not to be abused by others; (ii) that he had the right to emotional security and bodily integrity; and (iii) an understanding that he was being physically abused;

(f) The ability to make or to communicate any decision that would cause his essential requirements for physical health and safety to be met;

(g) The ability to place phone calls, to communicate electronically, or in any way to contact law enforcement or medical providers; and

(h) The ability to receive and evaluate information effectively or to communicate decisions due to infancy.

41.    The conduct of Mendoza as alleged in paragraphs 28-29 constituted physical abuse within the meaning of ORS 124.105(1)(a) and ORS 124.105(1)(d).

42.    Jefferson County, by and through its employees or agents acting within the course and scope of their duties, including Deputy Anderson, and Officer Aryanfard in his individual capacity, permitted Mendoza to engage in physical abuse of E.J.T. after October 2, 2017, by knowingly failing to act on and after October 2, 2017, under circumstances in which a reasonable person should have known of the physical abuse.

43.    As a result of the acts and omissions as alleged in this Second Claim for Relief, E.J.T. suffered the harms and damages alleged in

**PAGE 14 – COMPLAINT**

paragraphs 33 and 34, and plaintiff is entitled to amounts equal to three times his economic and noneconomic damages, pursuant to ORS 124.100(2)(a) and (b).

44.    Plaintiff is further entitled to recover reasonable attorney fees pursuant to ORS 124.100(2)(c) and reasonable fees for the services of the conservator pursuant to ORS 124.100(2)(d).

### THIRD CLAIM FOR RELIEF – VIOLATION OF 42 U.S.C. § 1983

### (Against Deputy Anderson)

45.    Plaintiff realleges and incorporates herein as though set forth in full paragraphs 1-44, above.

46.    At all times relevant, Deputy Anderson was acting under color of state law.

47.    When on October 2, 2017, Deputy Anderson chose not to investigate E.J.T.'s injuries based on his belief that E.J.T. was Native American, Deputy Anderson violated E.J.T.'s constitutional right to equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution.

48.    As a result of Deputy Anderson's deprivation of E.J.T.'s constitutional right to equal protection of the laws as alleged in this Third Claim for relief, E.J.T. suffered the harm and damages alleged in paragraphs 33 and 34.

PAGE 15 – COMPLAINT

49.     Plaintiff is entitled to his reasonable and necessary litigation costs and attorney fees incurred herein pursuant to 42 U.S.C. § 1988.

## FOURTH CLAIM FOR RELIEF – VIOLATION OF 42 U.S.C. § 1983

### (Against Jefferson County)

50.     Plaintiff realleges and incorporates herein as though set forth in full paragraphs 1-49.

51.     At all times relevant to the allegations herein, the Jefferson County Sheriff had the following policies, customs, or practices:

(a)  A policy, custom, or practice of directing deputies to refer child abuse investigations involving Native American children to the Warm Springs Police Department without conducting any investigation to determine the location and source of the alleged abuse;

(b)  A policy, custom, or practice of failing to investigate allegations of child abuse involving Native American children; and

(c)  A policy, custom, or practice of failing to cross-report allegations of child abuse involving Native American children to DHS;

52.     At all times relevant to the allegations herein, the Jefferson County Sheriff failed to adopt necessary policies, customs, or practices as follows:

**PAGE 16 – COMPLAINT**

(a)  A clear policy, custom, or practice for circumstances under which deputies should investigate allegations of child abuse involving Native American children; and

(b)  A clear policy, custom, or practice for when deputies should make a cross-referral of allegations of child abuse involving Native American children to DHS.

53.    At all times relevant to the allegations herein, the Jefferson County Sheriff inadequately trained his deputies to investigate allegations of child abuse involving Native American children, and his training failures amounted to deliberate indifference to the rights of Native American children to the equal protection of the laws intended to prevent child abuse.

54.    On October 2, 2017, Sheriff James N. Adkins, a final policymaker for Jefferson County in policies, customs, and practices concerning his deputies' responses to reports of child abuse involving Native American children, made the conscious, affirmative choice to ratify Deputy Anderson's violation of E.J.T.'s constitutional rights, as alleged in the Third Claim for Relief.

55.    As a direct result of the misconduct of Jefferson County as set forth above, E.J.T. was deprived of the right to equal protection of the laws as guaranteed to him in the Fourteenth Amendment to the United States Constitution, and such deprivation caused E.J.T. to suffer the harm and

**PAGE 17 – COMPLAINT**

damages alleged in paragraphs 33 and 34.

56.     Plaintiff is entitled to his reasonable and necessary litigation

costs and attorney fees incurred herein pursuant to 42 U.S.C. § 1988.

## JURY DEMAND

57.     Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against defendants as follows:

A.     On the FIRST CLAIM FOR RELIEF FOR NEGLIGENCE against all

defendants:

(1) Economic damages in an amount the jury determines in accordance

with the law and the facts, not to exceed $20 million;

(2) Noneconomic damages in an amount the jury determines in accordance

with the law and the facts, not to exceed $10 million;

(3) Costs and disbursements necessarily incurred therein; and

(4) Such other relief as the court may deem equitable and just.

B.     On the SECOND CLAIM FOR RELIEF FOR VIOLATION OF ORS 124.105

against all defendants:

(1) Economic damages in an amount the jury determines in accordance

with the law and the facts, not to exceed $20 million, trebled pursuant to

ORS 124.100(2)(a);

**PAGE 18 – COMPLAINT**

(2) Noneconomic damages in an amount the jury determines in accordance with the law and the facts, not to exceed $10 million, trebled pursuant to ORS 124.100(2)(b);

(3) Reasonable attorney fees incurred by the plaintiff, pursuant to ORS 124.100(2)(c);

(4) Reasonable fees for the services of a conservator incurred by reason of the litigation of this claim;

(5) Costs and disbursements necessarily incurred therein; and

(6) Such other relief as the court may deem equitable and just.

C.     On his THIRD CLAIM FOR RELIEF FOR VIOLATION OF 42 U.S.C. § 1983 against Deputy Anderson:

(1) Economic damages in an amount the jury determines in accordance with the law and the facts, not to exceed $20 million;

(2) Noneconomic damages in an amount the jury determines in accordance with the law and the facts, not to exceed $10 million;

(3) Reasonable attorney fees, costs, and disbursements necessarily incurred by the plaintiff, pursuant to 42 U.S.C. § 1988; and

(4) Such other relief as the court may deem equitable and just.

**PAGE 19 – COMPLAINT**

D.     On his FOURTH CLAIM FOR RELIEF FOR VIOLATION OF 42 U.S.C.

§ 1983 against Jefferson County:

(1) Economic damages in an amount the jury determines in accordance with

the law and the facts, not to exceed $20 million;

(2) Noneconomic damages in an amount the jury determines in accordance

with the law and the facts, not to exceed $10 million;

(3) Reasonable attorney fees, costs, and disbursements necessarily incurred

by the plaintiff, pursuant to 42 U.S.C. § 1988; and

(4) Such other relief as the court may deem equitable and just.

DATED:  November 17, 2020.

LAW OFFICE OF ERIN OLSON, P.C.


_____
Erin K. Olson, OSB 934776
eolson@erinolsonlaw.com

DWYER WILLIAMS CHERKOSS
ATTORNEYS P.C.


_____
Brigid K. Turner, OSB 065846
brigid@rdwyer.com

Attorneys for Plaintiff

**PAGE 20 – COMPLAINT**