**Josh Newton**, OSB# 983087
jn@karnopp.com
**Sarah R. Monkton**, OSB# 196018
srm@karnopp.com
KARNOPP PETERSEN LLP
360 SW Bond Street, Suite 400
Bend, Oregon 97702
TEL: (541) 382-3011
FAX: (541) 383-3073

*Of Attorneys for The Confederated Tribes of the
Warm Springs Reservation of Oregon*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **E.J.T.**, a minor, by and through his Conservator, InTRUSTment, Northwest, Inc., <br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>**JEFFERSON COUNTY**, a public body; **TYLER W. ANDERSON**, in his individual capacity; and **ARJANG ARYANFARD**, in his individual capacity,<br><br>　　　　　　Defendants. | Civil No. 3:20-cv-1990-JR<br><br>MEMORANDUM By *Amicus Curiae* The Confederated Tribes of the Warm Springs Reservation of Oregon |

**I.　　Introduction.**

The Confederated Tribes of the Warm Springs Reservation of Oregon ("Tribe" or

"CTWS") submits this memorandum in connection with the objections to Magistrate Russo's

Findings and Recommendation (ECF 63) filed by defendant Arjang Aryanfard, a former Warm

Page 1 –　　MEMORANDUM By *Amicus Curiae* The Confederated Tribes of the Warm Springs
　　　　　　Reservation of Oregon

Springs Tribal Police officer ("Officer Aryanfard"). Magistrate Russo recommends that this Court should "find Oregon courts have jurisdiction over the claims and therefore this Court has supplemental jurisdiction" to adjudicate Plaintiff's claims against Officer Aryanfard. ECF 63 at 17. The Tribe disagrees. Federal, state, and tribal law recognize that the Warm Springs Tribal Court is the proper forum to adjudicate those claims, and long-standing judicial precedent requires that Plaintiff exhaust his tribal court remedies before seeking any relief in federal court. The Tribe respectfully requests that the Court not adopt Magistrate Russo's Findings and Recommendation and instead dismiss Plaintiff's claims against Officer Aryanfard.

## II. Points and Authorities.

### A. Overview of Tribal Sovereignty.

Indian tribes are "distinct, independent political communities, retaining their original natural rights" in matters of self-government. *United States v. Cooley*, 141 S.Ct. 1638, 1642 (2021) (quoting *Worcester v. Georgia*, 6 Pet. 515, 559, 8 L.Ed. 483 (1832)). Tribal sovereignty predates the founding of this nation. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56 (1978) (tribes remain "separate sovereigns pre-existing the Constitution"). Because of their ancient sovereign status, the Constitution recognizes "Indian tribes" together with "foreign Nations" and the "several States." U.S. Const., art I., § 8. Indian tribes are not foreign Nations or States in the constitutional sense; they are "domestic dependent nations that exercise inherent sovereign authority." *Michigan v. Bay Mills Indian Community*, 572 U.S. 782, 788 (2014) (quoting *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Tribe of Okla.,* 498 U.S. 505, 509 (1991)).

The sovereign authority retained by Indian tribes is "unique" and carries certain limitations subject to the plenary authority of Congress. *Cooley*, 141 S.Ct. at 1642-43 (internal

citation and quotation marks omitted). Congress's "broad power" to regulate tribal affairs and the inherent sovereignty retained by Indian tribes, however, generally insulates Indian tribes from state control. *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 332 (1983). The Supreme Court recognizes "two independent but related barriers to the assertion of state regulatory authority over tribal reservations … ." *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 142 (1980). First, state authority may be preempted by federal law. *Id.* Second, state authority may unlawfully infringe "on the right of reservation Indians to make their own laws and be ruled by them." *Id.* Those barriers to state authority—federal preemption and infringement on tribal self-government—are independent in the sense that either one can preclude the application of state law on an Indian reservation. *Id.* at 143.

**B.      Overview of the Tribe.**

CTWS is a federally recognized, self-governing, sovereign Indian tribe. Declaration of Raymond Tsumpti, Sr., in Support of The Confederated Tribes of the Warm Springs Reservation of Oregon's Amicus Memorandum ("Tsumpti Dec."), ¶ 3. The Tribe consists of three Indian tribal groups: the Warm Springs, the Wasco and the Paiute. *Id.* The Tribe is the legal successor in interest to the Indian signatories to the Treaty between the United States of America and the Tribes and Bands of Middle Oregon, which was executed on June 25, 1855 and ratified by the U.S. Senate on March 8, 1859 (12 Stat. 963) ("1855 Treaty" or "Treaty"). *Id.* The Tribe is organized under a Constitution and Bylaws ratified by members of the Tribe on December 18, 1937, and approved by the U.S. Department of the Interior on February 14, 1938, pursuant to Section 16 of the Act of June 18, 1934 (48 Stat. 984), as amended by the Act of June 15, 1935 (49 Stat. 378). *Id.*

Pursuant to the 1855 Treaty, the Tribe has reserved approximately 640,000 acres of land for the exclusive use and occupation by the Tribe and its members as a permanent homeland ("Warm Springs Reservation"). Tsumpti Dec., ¶ 4. The Warm Springs Reservation is located in central Oregon and is bordered on the east by the middle of the channel of the Deschutes River, on the south by the Metolius River, on the west, generally, by the summit of the Cascade Mountain range, and on the north by the Tygh Ridge. *Id.* The United States holds legal title to almost the entire Reservation in trust for the benefit of the Tribe and/or its members. *Id.*

As of November 30, 2021, the Tribe had 5,375 members. Tsumpti Dec., ¶ 5. Most Tribal members reside on the Warm Springs Reservation. *Id.* The Tribe has significant levels of unemployment, exceeding thirty percent (30%), and high rates of poverty. *Id.* The Tribe is confronted with substantial social challenges associated with unemployment and poverty, including diminished life expectancy, poor health indicators, low high school graduation rates, drug use, and crime. *Id.*

Although the Warm Springs Reservation is located within the State of Oregon, Congress has generally exempted the Reservation from state criminal and civil jurisdiction. Tsumpti Dec., ¶ 6. (citing 18 U.S.C. § 1162; 28 U.S.C. § 1360. The Reservation is subject to applicable federal law. *Id.*

The Tribe has the inherent sovereign authority to make its own laws regulating certain activities on the Warm Springs Reservation. Tsumpti Dec., ¶ 7. The Tribe's Constitution and By-Laws vest certain governmental powers in the Tribal Council.[1] *Id.* The Tribal Council

---

[1] The Tribe's Constitution and By-Laws are available at https://warmsprings-nsn.gov/treaty-documents/constitution-and-bylaws/ (last accessed December 9, 2021). The Tribe

Page 4 –   MEMORANDUM By *Amicus Curiae* The Confederated Tribes of the Warm Springs Reservation of Oregon

oversees, among other functions, the Tribe's governmental services, including its public safety programs and court system. *Id.* The Tribe's Constitution and By-Laws expressly authorize the Tribal Council to establish ordinances governing law enforcement on the Warm Springs Reservation. *Id.* (citing CTWS Constitution and By-Laws, Art. V, Section i).

The Tribe has long-provided public safety and justice services on the Warm Springs Reservation. Tsumpti Dec., ¶ 8. The Warm Springs Police Department is part of the Tribal government and is the entity responsible for providing Tribal law enforcement services on the Reservation. *Id.* The Warm Springs Police Department office is located on the Warm Springs Reservation. *Id.* The Warm Springs Tribal Court exercises the Tribe's inherent sovereign authority to adjudicate crimes and civil claims. *Id.* An Indian tribe's authority is limited, however, in that tribes generally lack sovereign power to exercise criminal jurisdiction over non-Indians. *Id.* For many years, the Tribe has cooperated with the State of Oregon and local law enforcement agencies on policing issues involving non-Indians that affect the affect the health and welfare of the Tribe and its members. *Id.*

In 2010, the Oregon Court of Appeals issued a decision arising out of a traffic stop by a Warm Springs tribal police officer of a non-Indian outside the boundaries of the Warm Springs Reservation, following a pursuit that began on the Reservation. Tsumpti Dec., ¶ 9 (citing *State v. Kurtz*, 233 Or. App. 573, 228 P.3d 583 (2010)). The defendant was convicted for attempting to elude a police officer and resisting arrest by a peace officer. *Id.* The Court of Appeals reversed

---

also has a written Declaration of Sovereignty, dated June 25, 1992, a copy of which can be found at https://warmsprings-nsn.gov/treaty-documents/declaration-of-sovereignty/ (last accessed December 9, 2021). Tsumpti Dec., ¶ 7. The Declaration sets forth the scope and attributes of the Tribe's inherent sovereignty from its perspective. *Id.*

the conviction, concluding that the tribal police officer did not qualify as a police or peace officer under Oregon law. *Id.*

The Court of Appeals decision in *Kurtz* precipitated a legislative effort in 2011 to authorize tribal police officers to exercise, under certain conditions the powers of state law enforcement officers. Tsumpti Dec., ¶ 10. The legislation is commonly referred to as Senate Bill 412, or SB 412.[2] *Id.* During the legislative session, the Oregon Supreme Court reversed the Court of Appeals. *Id.* (citing *State v. Kurtz*, 250 Or. 65, 249 P.3d 1271 (2011)). The legislature proceeded with and ultimately passed SB 412, because the bill addressed important issues left unanswered by the courts. Tsumpti Dec., ¶ 10.

To be eligible to act with authority under SB 412 a tribal police officer must meet certain requirements. Tsumpti Dec., ¶ 11 (citing 2011 Or Laws, ch 644, § 2). These include being employed by a tribal government that has adopted a law authorizing tort claims arising from the conduct of the authorized tribal police officer to be asserted in the tribal government's court. *Id.* (citing 2011 Or Laws, ch 644, § 2(d)).

On February 7, 2012, our Tribal Council adopted Ordinance 93, which adopted and approved Chapter 390 of the Warm Springs Tribal Code ("WSTC"), passed to implement the requirements of SB 412. Tsumpti Dec., ¶ 12. WSTC § 390.130 authorizes tort claims against its law enforcement officers exercising SB 412 authority to be brought in Warm Springs Tribal Court, subject to certain permissible liability limitations. *Id.*

---

[2] SB 412 has been enrolled in the Oregon Session Laws at 2011 Or Laws, ch. 644, §§ 1 – 78. ORS 181A.680 to 181A.692 contain many of the substantive provisions of the Act.

### C. Warm Springs Tribal Court is the Proper Forum for Adjudicating Tort Claims against the Tribe's Law Enforcement Officers Exercising SB 412 Authority.

Plaintiff alleges that Officer Aryanfard "was at all times relevant a police officer employed by the Warm Springs Police Department" and "was at all times relevant acting within the course and scope of his employment as a Warm Springs Police Officer." ECF 1, ¶ 4. Plaintiff also alleges two state law claims against Officer Aryanfard: a claim for negligence, and a claim for violation of ORS 124.105. *Id.* at ¶¶ 35 – 44. Plaintiff alleges that this Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, to adjudicate his state law claims against Officer Aryanfard. *Id.* at ¶ 6; *see also* ECF 49 at 17. The Tribe is not a party to the action.[3]

In her Findings and Recommendation, Magistrate Judge Russo recommends that this Court find that "Oregon courts have jurisdiction over the claims and therefore this Court has supplemental jurisdiction" to adjudicate Plaintiff's claims against Officer Aryanfard. ECF 63 at 17. The Tribe disagrees with Magistrate Russo's Findings and Recommendation for three primary reasons. First, as Magistrate Russo recognizes, Plaintiff's claims arise out of Officer Aryanfard's status as an "authorized tribal police officer" for purposes of SB 412. *Id.* at 15. The proper forum for adjudication of such claims under state and tribal law is Warm Springs Tribal

---

[3] Magistrate Judge Russo observed that the Tribe had not intervened in the action. ECF 63 at 16. She seems to conclude that the Tribe's absence is an indicium that the Tribe does not view this action as implicating important issues of the Tribe's sovereignty. That is not correct. Magistrate Judge Russo appears to overlook the fact that Plaintiff chose not to sue the Tribe, and there is nothing that requires the Tribe to intervene in the action to protect its sovereign interests. Officer Ayranfard is represented by counsel provided by the Tribe's insurer, and the Tribe has been monitoring the action since its commencement. After Magistrate Judge Russo issued her Findings and Recommendation, the Tribe promptly sought (and obtained) leave to appear as *amicus curiae* to assist the parties and the Court understand the Tribe's sovereign interests that are inextricably intertwined with this action.

Court. *See* ORS 181A.685(4)(d)(E); WSTC § 390.130. Second, Oregon courts are divested of jurisdiction, if any, over such claims as a matter of federal law because such jurisdiction would interfere with the Tribe's sovereignty and self-government. *See Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 15 (1987) (recognizing divestiture of state court jurisdiction). Finally, 28 U.S.C. § 1360—which excludes the Warm Springs Reservation from the civil laws of the State of Oregon—preempts Oregon courts from exercising such jurisdiction as a matter of federal law.

> **(1) SB 412 Expressly Recognizes that Tribal Courts Are the Proper Forum for Tort Claims Arising from the Conduct of an "Authorized" Tribal Police Officer.**

SB 412 was intended to provide "authorized tribal police officers with the ability to exercise the powers of, and to receive the same authority and protections provided to, law enforcement officers under the laws of this state," without costs to the state or a political subdivision. ORS 181A.690(1). An "authorized tribal police officer" is a police officer who is acting in accordance with SB 412 while "employed by a tribal government that is in compliance" with SB 412. *See* ORS 181A.680(1) (defining "authorized tribal police officer").

To be "authorized" under SB 412, the tribal police officer must also meet several other requirements, including being employed by a tribal government that has adopted a provision of tribal law "[t]hat waives sovereign immunity, in a manner similar to the waiver expressed in ORS 30.260 to 30.300, as to tort claims asserted in the tribal government's court that arise from the conduct of an authorized tribal police officer." ORS 181A.685(4)(d)(E). Under the statute, the tribal law "[m]ay require that the claim be asserted in accordance with any applicable tort claim procedures of the tribal government." *Id.* Construed in accordance with the statutory interpretation framework laid down by the Oregon Supreme Court, the statute requires that for

Page 8 –   MEMORANDUM By *Amicus Curiae* The Confederated Tribes of the Warm Springs Reservation of Oregon

tribal police officers to exercise SB 412 authority, the tribal government must have prescribed a form of civil action in tribal court for tort claims against its police officers exercising that authority. *See State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009) (court's "paramount goal" is to discern the legislative intent through examination of the statutory text, context, legislative history, and, if necessary maxims of statutory construction).

The text of ORS 181A.685(4)(d)(E) requires that a tribe waive its sovereign immunity "in a manner similar to the waiver expressed in ORS 30.260 to 30.300" for a tort claim in tribal court arising from the conduct of a tribal police officer authorized under SB 412. The statute also provides that the Tribe may require that the "claim be asserted in accordance with any applicable tort claim procedures of the tribal government." *Id.* ORS 30.260 to 30.300 contain the provisions of the Oregon Tort Claims Act ("OTCA" or "Act"). The OTCA waiver of sovereign immunity is contained in ORS 30.265(1). The OCTA further prescribes the "*sole cause of action*" for torts committed by those employees or agents and provides that the OTCA remedy is "exclusive of any other action." ORS 30.265(2) (emphasis added). The OTCA provides that "[n]o other form of civil action is permitted." *Id.* Properly construed, in the context of the OTCA, ORS 181A.685(4)(d)(E) provides that a tribal government may adopt provisions of tribal law that prescribe a form of civil action in tribal court for tort claims against its authorized police officers, in accordance with any applicable tort claim procedures of the tribal government.

Plaintiff's counsel provides some of the legislative history for SB 412. ECF 50, Ex. 8. That history includes testimony from representatives of Oregon tribes and tribal organizations and confirms that the legislature was plainly aware that SB 412 implicated tribal sovereignty. *See, e.g.*, ECF 50 at 110-15, 120, 122-27, 129-34, 138, 149. The legislative history is also

consistent with the plain meaning of the ORS 181A.685(4)(d)(E), which expressly allows tribes to condition waivers of tribal sovereign immunity by specifying their tribal courts as the exclusive forum for tort claims against its police officers exercising SB 412 authority. To conclude that the statute somehow implicitly authorizes suits against tribal officers in state court would run afoul of the maxim of statutory construction to construe statutes in a manner that avoids unconstitutional results. *See State v. Kitzman*, 323 Or 589, 602, 920 P2d 134 (1996) (recognizing maxim). It would also violate the statutory maxim not to insert terms that the legislature has omitted. *See* ORS 174.010.

Common law immunity from suit is one of the "core aspects of sovereignty" retained by Indian tribes. *Bay Mills Indian Community*, 572 U.S. at 788. Sovereign immunity from suit is a "necessary corollary to Indian sovereignty and self-governance." *Id.* (quoting *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Engineering, P.C.*, 476 U.S. 877, 890 (1986)). The Supreme Court has repeatedly recognized that the doctrine of tribal sovereign immunity is settled law. *See id.* at 798. An Indian tribe is subject to suit only under two circumstances: "where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 754 (1998).

The text of ORS 181A.685(4)(d)(E) unambiguously shows that Oregon legislature understood that only Congress—not the state—has the constitutional authority to abrogate tribal sovereign immunity, which is why SB 412 required tribes to "waive" their sovereign immunity. The statute also did not require that tribes consent to such claims being brought in state court but, rather, recognized the "tribal government's court" as the appropriate forum for such claims. Construing the statute as authorizing tort claims against "authorized tribal police officers" in

Page 10 –  MEMORANDUM By *Amicus Curiae* The Confederated Tribes of the Warm Springs Reservation of Oregon

state court is inconsistent with the plain text of the statute, and would require this Court to conclude that the Oregon legislature has the constitutional authority to abrogate tribal sovereign authority when it plainly does not. *See Kiowa Tribe of Oklahoma*, 523 U.S. at 754 (only Congress has authority to abrogate tribal sovereign immunity).[4]

The Tribe has adopted Ordinance 93, approving Chapter 390 of the Warm Springs Tribal Code, which implements the requirements of SB 412. Tsumpti Dec., ¶ 12. Consistent with ORS 181A.685(4)(d)(E), Ordinance 93 waives the Tribe's sovereign immunity, in a manner similar to the OTCA, as to tort claims asserted in Warm Springs Tribal Court that arise from the conduct of a tribal police officer exercising SB 412 authority. *See* WSTC 390.130. Ordinance 93 provides that any tort claim brought against its law enforcement officers arising from the Tribe's SB 412 authority "must be asserted in accordance with Chapter 205" of the Warm Springs Tribal Code, which is the Tribe's Tort Claims Ordinance.[5] The Tribe and its employees may be sued "*only when explicitly authorized* by either (1) applicable federal law, or (2) by ordinance or resolution of the Tribal Council." WSTC § 205.001 (emphasis added). The Tribe may only be

---

[4] Whether tribal sovereign immunity bars tort claims against tribal police officers that arise from their conduct as an officer authorized under SB 412 is not relevant to construing ORS 181A.685(4)(d)(E). The Oregon Legislature plainly intended for "authorized" tribal police officers to "receive the same … protections" provided to state law enforcement officers. ORS 181A.690(1). State law enforcement officers enjoy the protections of the "sole cause of action" provided by the OCTA. ORS 30.265(2). ORS 181A.696(4)(d)(E) plainly allow tribes to legislate similar protections for their officers in connection with the waiver of the tribe's sovereign immunity for purposes of SB 412.

[5] A copy of the Warm Springs Tribal Code can be found on the Tribe's website at https://warmsprings-nsn.gov/government/tribal-code/ (last accessed December 9, 2021).

Page 11 –   MEMORANDUM By *Amicus Curiae* The Confederated Tribes of the Warm Springs
                  Reservation of Oregon

sued in Warm Springs Tribal Court. WSTC 205.004. Its employees may be sued in Warm Springs Tribal Court or "other court of competent jurisdiction." WSTC § 205.001.

Ordinance 93 supplies the authorization for tort claims against the Tribe's law enforcement officers exercising SB 412 authority to be brought in Warm Springs Tribal Court. Assuming that a state court could even qualify as a "court of competent jurisdiction," it would be an appropriate forum *only if* explicitly authorized under Ordinance 93. WSTC § 205.001. The ordinance, however, contains no explicit authorization to sue Tribal police officers in Oregon state court. State courts, therefore, are not "courts of competent jurisdiction" and not an appropriate forum for such claims. That conclusion is consistent the Oregon legislature's decision not to require a state court forum for tort claims against tribal police officers exercising SB 412 authority. *See* ORS 181A.685(4)(d)(E). It is also consistent with the long-recognized notion that a waiver of tribal sovereignty "cannot be implied but must be unequivocally expressed." *See Santa Clara Pueblo*, 436 U.S. at 58 (applying standard in context of waiver of sovereign immunity). Ordinance 93 simply contains no unequivocal (or explicit) consent by the Tribe for its police officers to be subject to suit in state court. Warm Springs Tribal Court is, therefore, the sole forum for Plaintiff's claims against Officer Aryanfard.

> **(2) Oregon Courts Are Divested of Jurisdiction, If Any, Over Plaintiff's Claims Because Such Jurisdiction Would Interfere with the Tribe's Sovereignty and Self-Government.**

As a federally-recognized Indian tribe and successor to the Indian signatories of the 1855 Treaty, the Tribe is a distinct, independent political community, retaining its original natural rights in matters of self-government. *See Santa Clara Pueblo*, 436 U.S. at 55. The Tribe possesses inherent sovereign authority, which includes the authority to engage in policing for

protection of the health and welfare of the Tribe and its members. *See Cooley*, 141 S.Ct. at 1644; CTWS Constitution and By-Laws, Art. V, Section i.

The longstanding policy of the United States is to encourage tribal self-government. *Iowa Mut. Ins. Co.*, 480 U.S. at 14. The policy reflects the fact that Indian tribes retain "attributes of sovereignty over both their members and their territory." *Id.* Tribal courts serve a "vital role in tribal self-government." *Id.* If "state-court jurisdiction over Indians or activities on Indian lands would interfere with tribal sovereignty and self-government, the state courts are generally divested of jurisdiction as a matter of federal law." *Id.* at 15. Put differently, where tribes "possess authority to regulate the activities of nonmembers, civil jurisdiction over disputes arising out of such activities presumptively lies in tribal courts." *FMC Corporation v. Shoshone-Bannock Tribes*, 942 F.3d 916, 941 (9th Cir. 2019) (internal quotation marks and citation omitted).

Plaintiff alleges that Officer Aryanfard was employed as a Tribal police officer at all times material to Plaintiff's claims and "was at all times acting within the course and scope of his employment as a Warm Springs Police Officer." ECF 1, ¶ 4. Plaintiff also contends Officer Aryanfard is not a member of the Tribe, but his Tribal membership status is not determinative of the civil jurisdiction of the Warm Springs Tribal Court. The dispositive question presented is whether the Tribe possesses authority to regulate Officer Aryanfard's actions during the course and scope of his employment as a Tribal police officer. *See FMC Corporation*, 942 F.3d at 941 (presumptive tribal court jurisdiction where tribe has authority to regulate activities of nonmembers). The answer is assuredly yes; the Warm Springs Tribal Court, therefore, presumptively has jurisdiction to adjudicate Plaintiff's claims against Officer Aryanfard. To the

Page 13 –   MEMORANDUM By *Amicus Curiae* The Confederated Tribes of the Warm Springs Reservation of Oregon

extent that a state court has any conceivable basis for jurisdiction, it is divested by federal law because interferes with the Tribe's inherent sovereignty and self-government right to regulate actions of its law enforcement personnel. *See Iowa Mut. Ins. Co.*, 480 U.S. at 15.

### (3) 28 U.S.C. § 1360 Preempts Oregon Courts from Exercising Jurisdiction Over Plaintiff's Claims.

Plaintiff alleges that the sole interaction that Plaintiff's mother, grandmother, and Plaintiff had with Officer Aryanfard occurred at the Warm Springs Police Department, which is located on the Warm Springs Reservation. ECF 1 at 8; Tsumpti Dec., ¶ 8. Federal law, however, provides in part that the "civil laws of the State that are of general application to private persons" do not apply on the Warm Springs Reservation. 28 U.S.C. § 1360. The statute preempts the assertion of any state court jurisdiction over tort claims against Officer Aryanfard.

Federal law may preempt the application of state authority over actions that occur on Indian reservations. *White Mountain Apache Tribe*, 448 U.S. at 142. Federal law preempts state jurisdiction where the exercise of such jurisdiction "interferes with federal law or is incompatible with federal and tribal interests reflected in federal law, unless the State interests are sufficient to justify the assertion of state authority." *Mescalero Apache Tribe*, 462 U.S. at 334. An express congressional statement of preemption is not required. *White Mountain Apache*, 448 U.S. at 144. Ambiguities in federal law are "construed generously in order to comport with the traditional notions of sovereignty and with the federal policy of encouraging tribal independence." *Id.* at 143-44.

The exercise of state court jurisdiction, if any, over Plaintiff's claims against Officer Ayranfard is preempted by 28 U.S.C. § 1360, which plainly precludes the application of Oregon civil law on the Warm Springs Reservation. The assertion of such jurisdiction is also

Page 14 –  MEMORANDUM By *Amicus Curiae* The Confederated Tribes of the Warm Springs Reservation of Oregon

incompatible with federal policy encouraging tribal sovereignty and self-government on Indian reservations, which recognizes the vital importance of tribal courts. *Iowa Mut. Ins. Co.*, 480 U.S. at 14. There are also no countervailing state interests sufficient to justify the assertion of state court jurisdiction. If the Oregon legislature believed that such interests existed, SB 412 presumably would have required that tribes consent to the adjudication of tort claims against their police officers in state court. The legislature, however, did not impose such a requirement. It instead authorized such claims to be brought in tribal court in recognition of (and respect for) tribal sovereignty. The legislature also included a savings clause in SB 412, providing that nothing in the Act "[a]ffects the existing status and sovereignty of tribal governments whose traditional lands and territories lie within the borders of the State of Oregon as established under the laws of the United States." ORS 181A.690(9)(b). 28 U.S.C. § 1360 is an existing federal law precluding the application of Oregon law on the Warm Springs Reservation. Any state court jurisdiction over Plaintiff's claims against Officer Ayranfard is, thus, preempted.

      **D.    The Court Should Decline To Exercise Its Supplemental Jurisdiction, If Any, Until Plaintiff Exhausts His Tribal Court Remedies.**

28 U.S.C § 1367(c)(4) authorizes district courts to decline to exercise supplemental jurisdiction if "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." To the extent that this Court has supplemental jurisdiction, it should decline to exercise its jurisdiction in order to give the Warm Springs Tribal Court the opportunity to adjudicate Plaintiff's claims against Officer Aryanfard in a manner contemplated by SB 412 and Ordinance 93.

The Supreme Court has recognized that a "federal court's exercise of jurisdiction over matters relating to reservations affairs can … impair the authority of tribal courts." *Iowa Mut.*

Page 15 –  MEMORANDUM By *Amicus Curiae* The Confederated Tribes of the Warm Springs
                Reservation of Oregon

*Ins. Co.*, 480 U.S. at 16 (citing *National Farmers Union Ins. Companies v. Crow Tribe of Indians*, 471 U.S. 845 (1985). In order to promote tribal self-government and self-determination, federal courts commonly require litigants to exhaust their tribal court remedies before seeking relief in federal court, including where a party challenges the existence of tribal court jurisdiction. *See generally id.* In such situations, the Supreme Court instructs a federal court to "stay[] its hand until after the Tribal Court has had a full opportunity to determine its own jurisdiction …". *National Farmers Union*, 471 U.S. at 856-57. The Court recognized that the adjudication of tribal court jurisdiction by a "nontribal court infringes upon tribal law-making authority, because tribal courts are best qualified to interpret and apply tribal law." *Iowa Mut. Ins. Co.*, 480 U.S. at 16.

In her Findings and Recommendation, Magistrate Russo erred by purporting to determine whether the Warm Springs Tribal Court has jurisdiction to adjudicate Plaintiff's claims against Officer Aryanfard. ECF 63 at 17. The Warm Springs Tribal Court itself must be given "full opportunity to determine its own jurisdiction" before this Court addresses the issue. *National Farmers Union*, 417 U.S. at 857. The Court should, as a matter of comity, decline to exercise its supplemental jurisdiction, if any, over Plaintiff's claims against Officer Aryanfard in order to allow the Warm Springs Tribal Court the first opportunity to adjudicate such claims in accordance with its sovereign rights to self-govern. This principle is reinforced by the state's own recent policy expression in SB 183, passed in 2021, which gives full faith and credit to tribal court orders. *See* ORS 24.105(2).

## III. Conclusion.

For the foregoing reasons, the Tribe respectfully requests that the Court not adopt Magistrate Russo's Findings and Recommendation and that the Court dismiss Plaintiff's claims against Officer Aryanfard. Federal, state, and tribal law recognize that the Warm Springs Tribal Court as the proper forum to adjudicate those claims, and long-standing judicial precedent requires that Plaintiff exhaust his tribal court remedies before seeking any relief in federal court.

DATED: December 10, 2021.

KARNOPP PETERSEN LLP

*s/ Josh Newton*
Josh Newton, OSB #983087

*Of Attorneys for Amicus Curiae The Confederated Tribes of the Warm Springs Reservation of Oregon*

CERTIFICATE OF SERVICE

    I hereby certify that on December 10, 2021, I filed a true and correct copy of the foregoing document with the Clerk of the Court for the United States District Court – District of Oregon via the CM/ECF system. Participants in this case who are registered CM/ECF users will be served by the CM/ECF system.

    KARNOPP PETERSEN LLP

*s/ Josh Newton*
Josh Newton, OSB #983087

*Of Attorneys for Amicus Curiae The Confederated Tribes of the Warm Springs Reservation of Oregon*