# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| E.J.T., a minor, by and through his Conservator, InTrustment Northwest, Inc.,   ) ) ) ) | |
|       Plaintiff,   ) | Case No. 3:20-cv-01990-JR |
|    v.   ) ) | |
| JEFFERSON COUNTY, a public body; TYLER W. ANDERSON, in his individual capacity; and ARJANG ARYANFARD, in his individual capacity,   ) ) ) ) ) | March 4, 2022 |
|       Defendants.   ) _____) | Portland, Oregon |

**Oral Argument**

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE MICHAEL W. MOSMAN

UNITED STATES DISTRICT COURT SENIOR JUDGE

APPEARANCES

FOR THE PLAINTIFF:      Ms. Erin K. Olson
                        Law Office of Erin Olson, P.C.
                        1631 N.E. Broadway Street, No. 816
                        Portland, OR 97232


                        Mr. Kelly A. Rudd
                        Baldwin, Crocker & Rudd, P.C.
                        337 Garfield Street
                        Lander, WY 82520


                        Ms. Brigid Turner
                        Brigid Turner, Attorney at Law, LLC
                        P.O. Box 5065
                        Bend, OR 97708

FOR DEFENDANT ARJANG
ARYANFARD:              Mr. Daniel S. Hasson
                        Mr. Jonathan Henderson
                        Davis Rothwell Earle & Xochihua, PC
                        200 S.W. Market Street, Suite 1800
                        Portland, OR 97201

FOR AMICUS
CONFEDERATED TRIBES
OF WARM SPRINGS
RESERVATION OF OREGON:  Mr. Josh Newton
                        Ms. Sarah R. Monkton
                        Best Best & Krieger LLP
                        360 S.W. Bond Street, Suite 400
                        Bend, OR 97702

COURT REPORTER:         Bonita J. Shumway, CSR, RMR, CRR
                        United States District Courthouse
                        1000 S.W. Third Avenue, Room 301
                        Portland, OR 97204
                        (503)326-8188
                        bonita_shumway@ord.uscourts.gov

(P R O C E E D I N G S)

(March 4, 2022; 10:32 a.m.)

* * * * *

THE COURTROOM DEPUTY:  We're here today for oral argument in Case No. 3:20-cv-1990-JR, E.J.T. versus Jefferson County, et al.

Counsel, please state your name for the record.

MR. RUDD:  Kelly Rudd for plaintiff.

MS. OLSON:  Erin Olson for plaintiff.

MR. HENDERSON:  Jonathan Henderson for defendant, Officer Aryanfard.

MR. HASSON:  Dan Hasson on behalf of Officer Aryanfard.

MR. NEWTON:  Josh Newton on behalf of the Confederated Tribes of the Warm Springs Reservation of Oregon.

MS. MONKTON:  Sarah Monkton on behalf of the Confederated Tribes of Warm Springs Reservation of Oregon.

THE COURT:  Thank you all for being here.  I want to hear some tentative views and then I'll hear further argument. Although there are a number of complexities in the case, I think fundamentally it boils down to some relatively straightforward propositions.

So first, in my view, the first predicate question I have to ask is if I assume that the tribal court has in general -- maybe not in this case, but in general the capacity

and the waiver under governing law to handle civil cases --
which is my assumption -- and if I assume further that that
applies to a particular case like this one, then is that
ability of the tribal courts to exercise tribal jurisdiction
over a case like this exclusive or not.

If not -- that is, if it's possible that a case like
this could be brought in either state or tribal court -- then
are there factors that inform how that decision ought to be
made.

So my first question, put simply, is is tribal civil
jurisdiction over a case like this exclusive or not.

Then if in a case like this jurisdiction is
exclusive, then I proceed down the decision tree to a different
set of questions, and that is should I exercise -- and it's
been described differently, so I'll probably use all three
words, either comity or deference or allowing some form of
exhaustion even to go to tribal court or not.

And there are a number of factors the parties have
briefed about that, and I'm going to focus on one of them.  In
my view, the only one really in play here is I would as a
federal court sitting in diversity decline to do so if it would
be futile; that is, if our plaintiff could not bring this
action in tribal court.  So if that's the case, then even
though in a category of cases like this there might be tribal
court jurisdiction, if for some reason the nuances of this case

mean that our plaintiff could not bring a case in tribal court, then why waste everyone's time.

And I think that question turns on a couple of things. We might think of tribal jurisdiction in this case -- well, it's appropriate to think of it as a waiver of sovereign immunity with exceptions, as is true for almost every sovereign that waives immunity. And those exceptions mean that only some cases can be brought in tribal court. It's complicated here in this case because although the question of sovereign immunity is an important one, in my view, the Ninth Circuit has made it clear that in a case like this, where the only relevant defendant is being sued in his individual capacity, that defendant cannot assert sovereign immunity. I recognize that's an issue that is being preserved for appeal, and that's perfectly appropriate, but, you know, in my shoes I know what the Ninth Circuit has said on this subject.

So I think it means that the case starts out at least with a presumption that the waiver question becomes less important because the only defendant I have in front of me -- not the tribes, but this defendant is being sued in his individual capacity and cannot assert sovereign immunity.

So then I turn to other ways to look at whether this is the kind of case that can be brought in tribal court, and I think of it as really two -- two potential limiting factors. One is is this plaintiff the type of litigant that can bring an

action in Warm Springs tribal court.  And there are three types
of litigants that can bring such an action, can bring an action
in tribal court:  One are Indians; two are the Confederated
Tribes themselves; and three, non-Indians, including
corporations and other legal entities.  But for our purposes,
individual non-Indians.  And that requires two other things to
be present.  The non-Indian plaintiff has to be suing an
Indian, and the action has to arise upon the reservation.  At
least that's my understanding of 200.025(3).

So of those, of course, B is out of the question.
It's not the Confederated Tribes.  And if our plaintiff is a
non-Indian, then it looks like the third one doesn't apply
either, because the defendant is not an Indian, at least not
from the complaint, and I guess it's fair to -- as to the
second one, did this arise on the reservation, I think that's a
moving target in the complaint.  It certainly depends on which
day in the complaint you're talking about.

So it looks like the only way that our plaintiff can
be the sort of litigant that can bring an action in Warm
Springs Tribal Court is if our plaintiff is an Indian.  And I
don't know the answer on the record in front of me to that
question.  I just don't know.

And then -- well, I guess I'd say the second
predicate that might come into play is where this action -- I
mean, if plaintiff -- in my view, the reading of the relevant

law is that if you are qualified as an Indian, you can bring an action in Warm Springs Tribal Court, and the requirement that the defendant be an Indian or that the action arise on the reservation doesn't apply. But if I'm wrong about that, then that's the other question, is how do I decide where this action arose, given the procedural posture of the case.

But, again, my initial tentative reading is first that I first ask is this concurrent jurisdiction or exclusive, if the tribe has jurisdiction; and second, is it futile to require this plaintiff to bring an action in Warm Springs Tribal Court because the plaintiff cannot.

And in my view, the only way our plaintiff becomes the type of litigant that can bring an action in Warm Springs Tribal Court is by qualifying under the first prong, qualifying as an Indian.

So I'd like to start with the first question, and then I'll guide us through the second question after I hear your views on the first question.

Starting with plaintiff, your argument about whether -- assuming there is jurisdiction in tribal court, whether it was necessarily exclusive or concurrent with the State.

MR. RUDD: If the Court is asking me to assume that there is tribal court jurisdiction, I think it's clear that there is concurrent jurisdiction, which is not an uncommon

circumstance in our system of laws. Any particular cause of
action can find -- can give rise to claims in multiple forums
and can create causes of action arising from different sources
of law. I think if we assume that there is concurrent -- if
there is exclusive -- excuse me, if we assume that there is
jurisdiction in tribal court, which we -- which is not our
argument, but it is the assumption of your question, I think
there is certainly concurrent jurisdiction here in this court,
and that the exercise of that concurrent jurisdiction won't in
any way infringe on the sovereignty of the tribe. You can see
that in cases like *Lewis v. Clarke*, the *Maxwell* case, the
*Pistor v. Garcia* case, which are causes of action against
individuals that proceed in federal courts in a posture that is
similar to the way this case is currently before the Court.

THE COURT: And is your position that it's concurrent
because there's nothing that says it's exclusive, or do you
have positive authority for it being concurrent?

MR. RUDD: The way I would speak to that, Your Honor,
is I would say in the first instance because it can't be
exclusive, because if you look at *A-1 v. Strate* and *Nevada v.
Hicks*, at least in my analysis, you have to have serious
questions about whether there's any jurisdiction there at all.

I don't -- I'm not aware of any authority for the
proposition that there would be exclusive tribal court
jurisdiction over a claim brought by a non-enrolled person

against a non-enrolled person for harm that was caused outside
of reservation boundaries.  And --

THE COURT:  Well, that, I think, is a fairly
straightforward proposition, but I guess my question is if we
took a hypothetical that wasn't our case, you know, that you
had a Warm Springs enrolled member suing a Warm Springs
enrolled member for a tort, is there a body of law that says
that plaintiff must bring such an action in tribal court or
could it also be brought elsewhere, assuming elsewhere like
Jefferson County, that the jurisdictional hook for that county
was also satisfied.

I guess what I'm really asking -- First let me ask
this.  Do you agree that there are cases, some cases where the
tribal court has exclusive civil jurisdiction?

MR. RUDD:  I would agree that there are some cases
where the tribe has exclusive civil jurisdiction, but it is
most often, in my thinking about this, Your Honor, claims
against the tribe itself or perhaps tribal officials.  That
rule does not extend to claims against -- individual capacity
claims, let's say, and the principle certainly isn't so broad
that it could destroy the jurisdiction that courts of general
jurisdiction like the State of Oregon might have over the same
subject matter, and it's certainly -- there's nothing about any
exclusive jurisdiction case you can find that would displace
federal law and the jurisdiction of the federal courts.  So it

is quite possible for claims arising in and around Indian country to find a jurisdictional home, depending on the identity of the parties and other factors in either state court, federal court or tribal court. And so the idea that there is exclusive jurisdiction in the tribal court for a claim of this profile to me is incorrect.

THE COURT: Is there a portion of the tribal code or is there an aspect of SB 412 or otherwise that takes those cases that you say are exclusively in tribal court and makes it so? Is there, in other words, a piece of positive law that says these cases are exclusively in tribal court?

MR. RUDD: I think that we have outlined in our brief at least some of the pertinent tribal code provisions where the tribe describes their own jurisdiction with the positive law they've put in place, and I think that doesn't extend to the fact pattern of this case because the case did not arise upon the reservation. It arose in Jefferson County and it involves two Indian claimants primarily -- or two non-Indian litigants in the motion we're confronted with today.

The other point I would make -- and I think this is important, Your Honor. There's a structural point here, which is under the case law that informs the extent of the tribe's sovereign authority promulgate its own jurisdiction. There are constraints. And I don't think in any -- whatever room for disagreement there is in that, I think it is abundantly clear

that there is nothing that tribal government could do in terms of positive law to constrain the laws of -- the jurisdiction of the state courts of Oregon, and there's nothing that the tribal government could do as a matter of positive law to constrain or restrict the jurisdiction of this Court.

THE COURT:  Those are coterminous, right?  I don't have any more jurisdiction over this case sitting in diversity than the State of Oregon has, right?

MR. RUDD:  I think there are aspects of federal common law in this that we've touched on in our briefing that really need to be developed in discovery.  I think as the case is framed up in front of the Court right now, we're clearly within the Court's jurisdiction as a matter of supplemental or pendent jurisdiction, but there are, depending on the answers to some of these questions you're asking, there are a lot of questions of federal common law and other federal law that could become even more central as the case plays out.

THE COURT:  All right.  Thank you very much.

I'll start with counsel for defendant.

My first question is what's your argument for the tribal court having exclusive as opposed to concurrent jurisdiction over a tort claim like this?

MR. HENDERSON:  Sure.  So as counsel said, these are state law claims before this Court because -- under supplemental jurisdiction.  So really the question is does --

1   is the state court appropriate or tribal court appropriate.

2   And our position is if you look at the enactments of the Oregon

3   statutes and you look at the enabling provisions of the tribal

4   code, as well as the provision that you had just mentioned in

5   Chapter 200 of the tribal code, what you'll see is that the

6   clear contemplation was that these claims would be brought in

7   tribal court not in state court.

8         THE COURT: So I'm not trying to quibble at all, I'm

9   just trying to ask you to focus first on text. So when you say

10   "the clear contemplation," I want to get to that, but before we

11   get to contemplation -- meaning intent of the drafters -- what

12   does the text tell me about exclusivity, if anything?

13         MR. HENDERSON: So you won't find the language that

14   says exclusively or only.

15         THE COURT: Will I find any language that tells me

16   anything about exclusivity?

17         MR. HENDERSON: There is. There is even for the

18   claims that we can agree would be exclusively within the tribal

19   court jurisdiction. And so that's why I say we go -- you look

20   to the intent, you look to the language of these provisions,

21   and when you put it together, it becomes pretty clear.

22         THE COURT: Where would I find the contemplation?

23         MR. HENDERSON: So in the statutes enacted under

24   Senate Bill 412, under 181.685(e), this is listing the

25   requirements in order to comply with Senate Bill 412, in order

to be able to exercise state law enforcement authority, and one
of those requirements is that the tribe, among other things,
waives sovereign immunity in a manner similar to the waiver
expressed in the Oregon Tort Claims Act as to tort claims
asserted in the tribal government's court that arise from the
conduct of an authorized tribal police officer.  And so what
they're saying is you need to waive your sovereign immunity for
claims in tribal court relating to this type of state law
enforcement authority.

THE COURT:  So that's a bargain, that's a contract of
sorts.  It's a deal.

MR. HENDERSON:  Sure.

THE COURT:  You waive sovereign immunity if you're
the tribe in order to get what?

MR. HENDERSON:  In order to get -- the state law
enforcement authority for certain qualified officers.

THE COURT:  So waiver of sovereign immunity in other
settings never tells me anything about exclusivity.  Both the
federal government and the State of Oregon have waived
sovereign immunity for certain tort claims, and depending on
other factors, they can be brought in either court.

Why does waiver of sovereign immunity here tell me
something about exclusivity?

MR. HENDERSON:  So what I was going to get to here is
when you look at these things together, you can see that this

1  is what they envision, that they be in tribal court.

2     THE COURT:  When I look at what things together?

3     MR. HENDERSON:  So I'm looking also at the tribal

4  code provision that you had just mentioned at the beginning of

5  your remarks, and that is under 200.025(3).  If you look at

6  (c), it says, "Non-Indians, corporations, and other legal

7  entities in cases for personal injury or property damage

8  arising upon the reservation in which an Indian is a defendant

9  or when authorized by a specific tribal council enactment."

10     And when you look at the tribal council enactment

11  implementing the Senate Bill 412, it's authorizing the claims

12  in tribal court.  That was the contemplation.  That was the

13  contemplation under the Oregon statutes, it was the

14  contemplation by the tribal council.  That's what they were

15  doing was waiving sovereign immunity for claims to be brought

16  in tribal court and subject to the tort claims provisions of

17  the tribal code.

18     THE COURT:  So you're reading 200 as having a clause

19  before the "or" that's entirely separate from the clause that's

20  after the "or."  In other words, (c), listing types of

21  litigants who can bring actions in tribal court is one,

22  non-Indians, et cetera, or when authorized by a specific tribal

23  enactment.

24     MR. HENDERSON:  That's right.

25     THE COURT:  And that's a type of litigant, meaning

1  essentially a tort litigant.

2        MR. HENDERSON:  That's right.

3        THE COURT:  If you have a tort claim against

4  identified parties or entities, then you are the type of

5  litigant who can sue -- who can sue in tribal court.

6        MR. HENDERSON:  That's right.

7        THE COURT:  Meaning anybody who has such a tort

8  claim, a non-Indian, for example?

9        MR. HENDERSON:  Yes.  Like I said, and that makes

10  sense here when 412 -- the whole scheme of 412 is to allow

11  tribal officers to enforce Oregon law both on and off the

12  reservation against non-Indians.  So that's the most logical

13  way to read this is that those folks might have a claim, where

14  are those claims going to be filed, where can they be filed,

15  and the contemplation is they'll be filed in tribal court, and

16  they're allowed to do that under these provisions, under this

17  subsection (c) and under the implementation provisions of the

18  tribal code.  Otherwise --

19        THE COURT:  It makes a lot of sense to me that this

20  sort of bargain or deal would mean you could exercise state law

21  enforcement authority occasionally, but if you do, you've got

22  to waive sovereign immunity, so you could be sued in -- you

23  could be sued for it.  And sovereign immunity, of course, is

24  being waived in tribal court only.

25        MR. HENDERSON:  Yes.

1    THE COURT:  And so it makes perfect sense to me that

2  that would be part of the bargain.  What I don't get from that

3  is why they would necessarily be exclusive, that sort of the

4  plus and minus, the bargain -- the thing I'm getting is law

5  enforcement authority, and the thing I'm giving up is sovereign

6  immunity, but why would it mean that the sovereign immunity I'm

7  giving up is exclusive?  You must -- not you can sue me in

8  tribal court but you must.

9    MR. HENDERSON:  So that was the deal struck.

10    THE COURT:  Well, that's what you're saying, the deal

11  struck.  I'm asking you for your evidence of that.

12    MR. HENDERSON:  Well, so --

13    THE COURT:  You're saying this is the bargain for

14  exchange, and I guess my problem is the bargain for exchange

15  you've been describing makes perfect sense with or workout

16  exclusivity.

17    MR. HENDERSON:  Well, so then if you look at other

18  provisions, then, of the -- of Senate Bill 412 or those

19  statutes, those also suggest that this is what was contemplated

20  by the parties.  Again, and I can't point to language that says

21  you have to do this, it's only exclusive.  There is no such

22  definitive language like that.

23    THE COURT:  All right.

24    MR. HENDERSON:  But what the -- but what the Senate

25  Bill 412 statutes, especially the implementation or the

objective or the legislative purpose statute make clear is that the tribal officer will be subject to all the protections that state officers are provided, and that process is laid out in the tribal code. If you were able to just come into federal court, like they have here, and then just avoid the tort claims caps and all the other provisions of the tort claims process and the tribal code, then that just tosses out basically the agreement, because it renders meaningless significant portions of the tribal code. And that's our position here, is that they brought this claim in federal court in an attempt to avoid the caps and the process that's laid out in the code provisions. And we don't think you can do that. We don't think you can so easily step aside and avoid that.

THE COURT: All right. Thank you very much.

Intervenors? You're not intervenors. Amicus.

MR. NEWTON: Thank you, Your Honor. And may it please the Court.

On behalf of the Confederated Tribes of Warm Springs, first we want to thank the Court for giving us the opportunity to be able to participate in this hearing.

THE COURT: Sure.

MR. NEWTON: If you'd indulge me, I'd like to introduce my client representatives.

THE COURT: Please do.

MR. NEWTON: I've got the chairman of tribal council

1    Raymond Tsumpti.  In the middle we have our secretary-treasurer

2    Glendon Smith, and a colleague of ours, Howie Arnett.

3         THE COURT:  Thank you.  I know Mr. Arnett from long

4    ago.

5         MR. NEWTON:  Your Honor, our goal -- my goal today --

6    and you can hold me accountable to this -- is to hopefully shed

7    light on some of these complex issues and help you reason

8    through the legal issues presented.

9         As to your first question, assuming tribal court has

10   the capacity to adjudicate civil cases in this case, is that

11   jurisdiction exclusive.  And the answer is yes.  The answer is

12   yes for reasons that are slightly adjacent to what's been

13   discussed thus far.

14        I think it's important to start with the pre Senate

15   Bill 412 era, and what the Oregon -- State of Oregon and the

16   tribes in Oregon around the state were trying to accomplish.

17   They recognized with the *Kurtz* appeal that there was important

18   public safety concerns about law enforcement authority of

19   tribal police officers throughout the state.  And the

20   parties -- and when I say "the parties," I'm talking the two

21   sovereigns or the nine tribal sovereigns and the State of

22   Oregon, but at least the tribal sovereigns and the State of

23   Oregon came together with a legislative bargain.  I think

24   that's right because -- Can you hear me okay?  Sometimes with a

25   mask I'm not sure if it's too quiet or not.  I'm not, right?  I

1    feel like I'm shouting.

2         And anyway, point being it was a legislative bargain,

3    but it was a legislative bargain that respected the sovereignty

4    of all parties involved, and it actually required two rounds of

5    legislative action.  There was the state legislative action and

6    then subsequent tribal legislative action.  What I mean by

7    that, Your Honor, is that once Senate Bill 412 was enacted by

8    the Oregon legislature, it did not automatically apply to the

9    Confederated Tribes of Warm Springs or any other tribe in the

10   state of Oregon.  It required those tribes to evaluate whether

11   the bargain that was struck worked for them, and then they had

12   to take additional legislative action and opt into the scheme,

13   the cross-border enforcement scheme.

14        I can point to the specific part of the statute, Your

15   Honor.  It's 181A.685(4) -- no, excuse me.  Yeah, (4)(d), as in

16   David.  You have to adopt a provision of tribal law, and it

17   requires the waiver of tribal sovereign immunity so that there

18   can be an action brought against the tribe, a tort action

19   arising out of the tribal law enforcement officers' potential

20   torts in enforcing state law under Senate Bill 412.

21        Now, that waiver of sovereign immunity is important

22   and it's implicated and it is very much a part of this case,

23   but it's not central because, of course, the tribe itself is

24   not a party.  Your question is is Warm Springs Tribal Court the

25   exclusive jurisdiction for this case, and the short answer is

yes for a very simple reason. The Oregon legislature provided
that a tribe, in opting into the scheme, may "require that the
claim be asserted in accordance with any applicable tort claims
procedures of the tribal government."

And the tort claim procedures that the tribal
government put in place for Senate Bill 412 actions exclusively
authorize the Warm Springs Tribal Court as the place to bring
these claims.

THE COURT: Where do I find that?

MR. NEWTON: You find that, Your Honor, in Chapter
205 -- hold on here. Sovereign immunity.

No, excuse me. Ordinance 93 is the tribal council
legislative enactment that opts into Senate Bill 412. And it
adopts Chapter 390 of the tribal code. And 390.130 -- there is
no subsection -- says that "The tribe has authorized tort
claims against the tribe, its subordinate organizations,
enterprises, officers, agents, servants and employees, subject
to the conditions and limitations set forth in the Warm Springs
Tribal Code Chapter 205."

I'm going to pause for a moment, Your Honor, because
there's been some discussion about this action is brought
solely against the officer, although acting in the course and
scope of his duties, is being sued in his personal capacity,
and therefore tribal sovereign immunity, he can't avail himself
of tribal sovereign immunity under the doctrine that we've been

taught by *Lewis v. Clarke*.

But there's an important policy implication that I think is overlooked in *Lewis v. Clarke*, and there's a quote that says in that case, "The protection offered by tribal sovereign immunity is no broader than the protection offered by state or federal sovereign immunity."

But it doesn't say it's any narrower, Your Honor. And the tribe's point is there are other defendants in this case, and the State of Oregon has said if you're going to sue a state law enforcement officer, your sole and exclusive cause of action against a state law enforcement officer is under the Oregon Tort Claims Act, that statutory cause of action.

Senate Bill 412, the only fair way to read it is they wanted to provide parity. They said, okay, tribal officers, the fundamental bargain: We will allow you to enforce state laws, but we want two things. We want there to be a meaningful remedy if you do something wrong. We're not going to require that you bring an action in state court. I suppose the tribe could opt into that, but Warm Springs did not, Your Honor. It chose Warm Springs Tribal Court.

The other thing they said is your tort claim limits have to be at least as generous as the state tort claim limits. So again, you go back to Warm Springs Ordinance 93, you make the tort claim on us on par with the state tort claim limits, the tribe, using its sovereign authority, chooses Warm Springs

1   Tribal Court under its tort claim code.

2           THE COURT:  That's a useful argument, and I want to

3   consider it, but you started down this path reading me 390.130.

4   So tell me where in 390.130 I would learn that this was -- had

5   to be brought in tribal court.

6           MR. NEWTON:  That's right.

7           THE COURT:  What's the language you're relying on?

8           MR. NEWTON:  So if you go to the next sentence, Your

9   Honor, it says, "Any tort claim brought against a state

10  certified tribal officer" -- which would be Officer Aryanfard

11  in this case -- "arising from the tribe's state law enforcement

12  authority under Senate Bill 412 must be" -- which is synonymous

13  with shall -- "nondiscretionarily asserted in accordance with

14  Chapter 205."

15          So let's turn to Chapter 205, Your Honor, and we'll

16  start with 205.001.  This is the tribe's tort claim code.  And

17  it says, "The tribes, its subordinate organizations,

18  enterprises, officers, agents, servants and employees may be

19  sued in tribal court or other court of competent jurisdiction

20  only when explicitly authorized by either federal law or by

21  ordinance or resolution of tribal council."

22          So what we know is the tribes' employees can be sued

23  in tribal court if it's authorized by a tribal council

24  resolution.  We have the tribal ordinance.  We have Ordinance

25  93 that says tribal employees can be sued in accordance with

205.  So they cross-reference back to one another.  What neither say is that these employees can be sued in state court.

Now, ordinarily, Your Honor, you would say, well, it doesn't rule it out.

THE COURT:  "Neither" meaning -- what are the ones that are involved in the word "neither"?

MR. NEWTON:  Neither Chapter 205 nor 200 -- excuse me, Chapter 390 expressly mention state court.

THE COURT:  205 mentions "or other court of competent jurisdiction."  That doesn't sound like assertion of exclusivity.

MR. NEWTON:  That's right, but it assumes that court has jurisdiction.  The only way that a state court could get jurisdiction of these claims would require the tribe to consent to that as part of its opting in to Senate Bill 412.  That is the fundamental argument of the tribe, is that the tribe has total control over the waiver of its sovereign immunity and can condition it in any way that it sees fit.  And unless there's an express, clear, and unequivocal waiver of that sovereign immunity, including the venue, it doesn't happen.

THE COURT:  All right.

MR. NEWTON:  The only reasonable --

THE COURT:  Let me bump this up against the principle you don't like but is binding on me, which is that works when you're suing the tribe, it works when you're suing an officer

of the tribe.  All of them require some waiver of tribal

sovereign immunity.  It works when you're suing a law

enforcement official in his official capacity, but it seems to

fall apart when you're suing a defendant in his individual

capacity.  Now you're not suing the tribe and now because the

Ninth Circuit has essentially ordered me not to allow that

individual defendant to assert sovereign immunity, now nobody

with sovereign immunity is waiving or not waiving sovereign

immunity.  So how do I get around that?

MR. NEWTON:  You get around that by circling back to

Senate Bill 412 and the legislature allowing --

THE COURT:  Let me be a little more specific.  How do

I get around that without disagreeing with what the Ninth

Circuit has said about individuals sued in their individual

capacity?  I mean, I think you may have a powerful point to

make that the Ninth Circuit law on this point fails to take

important principles into account and is wrong, but I don't

have the luxury of agreeing with you on that point yet.

MR. NEWTON:  That's a great point, Your Honor.  I

think my rejoinder to that -- and I will hope that I state it

clearly.  I think I have a good answer for you, and that is the

tribe is not asking you to take a position that's contrary to

the Ninth Circuit precedent that comes from *Lewis v. Clarke*.

We're not saying that Officer Aryanfard can avail himself of

tribal sovereign immunity if he's sued in his personal

capacity, but what we are saying is that the tribe, just like a state law enforcement officer, can prescribe a statutory cause of action in tort claim limits that puts it on parity with the other defendants in this case.

If you were to rule in favor of the plaintiffs, the real risk is, Your Honor, is that the tribal law enforcement officer will be the only defendant in this action who will not have the benefit of a tort claim limit.

THE COURT:  Thank you very much.

Do you wish to reply at all?

MR. RUDD:  Yes.  A couple thoughts, Your Honor.

THE COURT:  Would you start with the last point first.  That is, is it the case that if I allow this to proceed in diversity in federal court, so fundamentally as a state court claim, that this particular defendant will have lost the protections of -- the procedural protections and damage limit protections of the Warm Springs tort claims code?

MR. RUDD:  The Warm Springs tort claims code do not constrain the cause of action against Aryanfard in his individual capacity that are before this Court.  That is our position, if I'm understanding your question.

THE COURT:  I'm really just restating the very last argument you heard, that if I go your way, this defendant would be the only defendant in the case without, for example, a limitation of liability or other protections that he would have

1    if he were in tribal court, and also he would lack the

2    protections that other defendants who are properly in a state

3    claim have under state law.

4            Is it true that he stands alone in that regard under

5    your theory of the case?

6            MR. RUDD:  I believe he stands alone in that regard

7    on our theory of the case, especially because of the

8    defendants' position that he was not acting in a state law

9    capacity during the investigation and his involvement in the

10   case.  So I don't think there are any caps that come to limit

11   the claim against Defendant Aryanfard.

12           THE COURT:  Is that different if he's found to have

13   been acting in some tribal capacity?  I guess I should phrase

14   it differently.  Is that different if he's -- in either way,

15   whether he's found -- you say that if the defendants are

16   correct that he's acting in some state law capacity, there's no

17   limit?

18           MR. RUDD:  There's no limit under the facts before

19   the Court as pled, and no caps that apply to the individual

20   claim against Aryanfard, primarily, Your Honor, because his

21   obligation to report child abuse in Oregon is mandatory -- 365,

22   24/7 -- and that is a feature of the law that comes to bear

23   that is robustly clear from the Oregon legislature.  So that

24   obligation, which is -- the claim at the center of the

25   individual capacity claim against Defendant Aryanfard is not

limited to his -- any official duties on behalf of any

particular law enforcement authority.

THE COURT: All right. Thank you.

The second argument to pick up is that if the tribal

court has jurisdiction, and if -- at least if it's the sort of

case where the tribal court would have jurisdiction, and if

tribal jurisdiction in cases like this are typically exclusive,

it's nevertheless the case that if you probe into the complaint

enough and see that sending it to tribal court would be futile,

futile because this plaintiff cannot, in fact, bring a claim in

tribal court, then that ends up taking this out of tribal court

entirely and back into state court. So to put it more

succinctly, can this plaintiff on this complaint bring this

action in Warm Springs Tribal Court?

And what's been raised, if I understand it correctly,

are a couple of arguments: One, that this plaintiff is not the

sort of litigant who can bring a claim in tribal court, doesn't

satisfy that requirement; and two, that the claim is -- to be

in tribal court must necessarily have arisen on the

reservation, a sort of a semi-geographical limitation on who

can sue in Warm Springs Tribal Court, and that that's not

present in this case.

Are those your two main arguments why this would be

futile to send to tribal court? Your client could not bring

the case in tribal court?

1        MR. RUDD:  Those points are central to the argument,

2   Your Honor, which is informed by the factors that have been

3   developed and the parameters for tribal court jurisdiction that

4   were set by the United States Supreme Court in cases like *A-1*

5   *v. Strate* and cases like *Nevada v. Hicks*.  Those cases create

6   significant limitations on tribal court jurisdiction, based on

7   the identity of the litigants as enrolled or not and the

8   location of the harm.  And I think if you look to those cases

9   and cases like the *Plains Commerce* case, which I don't -- I'm

10  not sure is before you, you see clear statements from the

11  United States Supreme Court that there are federal law

12  limitations on the jurisdiction of tribal courts.  And from our

13  perspective, when you line those factors up with our case, with

14  all the non-reservation, off-reservation conduct that's in the

15  nucleus of facts, and you look at the non-enrolled status of

16  both parties, and you analyze it under those cases, there is

17  not tribal court jurisdiction.  So I think it would be

18  appropriate for the Court to conclude that it was futile.

19          Even if the Court doesn't --

20          THE COURT:  I'm going to pause you there for just a

21  second.

22          MR. RUDD:  Sure.

23          THE COURT:  So is that a jurisdictional argument or a

24  discretionary argument?  I mean, normally when I'm considering

25  jurisdiction, I'm not looking at case law, I'm looking at some

1   sort of grant or denial of jurisdiction in a text somewhere.

2   You're suggesting that Supreme Court cases have me look at a

3   variety of factors that get at the identity of the litigants

4   and the location of the harm to decide if there's jurisdiction

5   on something like a continuum.  And that sounds more like,

6   well, if enough of those factors line up to suggest that it

7   wouldn't be wise to send it to tribal court, I'd retain

8   jurisdiction, otherwise I might out of comity send it to tribal

9   court.

10          Are you making that argument or are you absolutely

11  saying that if certain factors are in play, the tribal court

12  has no jurisdiction over the case?

13          MR. RUDD:  I think when you analyze this individual

14  capacity claim under those cases at -- our position is that the

15  tribal court does not have jurisdiction.  At a minimum, I think

16  one would see that there are serious questions about whether

17  the tribal court has jurisdiction, and therefore, from the

18  plaintiff's perspective, given the nucleus of operative facts

19  and notions of concurrent jurisdiction, we think it's ripe for

20  this Court to keep the case here.  There was a comity aspect --

21          THE COURT:  Serious questions means keep the case

22  here.  You mean at least long enough to develop better

23  information about jurisdiction to be analyzed later?

24          MR. RUDD:  No, I think there is no -- I think there

25  is no question that this Court has jurisdiction, and we think

1    the Court should keep that jurisdiction, and we're asking the

2    Court to do that.  You're asking me if -- I'm not saying this

3    well enough, Your Honor.  Are you asking me a comity question,

4    are there reasons here to --

5              THE COURT:  You've said that there might be serious

6    questions about jurisdiction, and therefore I'd keep it.

7    Typically, in a straight-up diversity case, for example, if

8    there are as-yet-unanswered questions about jurisdiction, a

9    court might keep the case, but only long enough to answer those

10   questions, and then make a decision down the line.  So, for

11   example, if we don't know of the place of incorporation of a

12   business, then to defeat or grant diversity jurisdiction, then

13   we'd send people out to get the answer and come back.

14             Here are you suggesting that if there are serious

15   questions, the presence of uncertainty means I can conclude

16   that I have jurisdiction or that we go out and we, you know,

17   learn more and come back and decide later whether I have

18   jurisdiction?

19             MR. RUDD:  I think the record before the Court shows

20   that this Court has jurisdiction now because of the identity of

21   the parties and the location of the harm off reservation.  I

22   think it's also true that this Court is -- in what it does

23   monitors its own jurisdiction and can revisit it whenever it

24   has its own doubts.  Those are my thoughts about that.

25             THE COURT:  All right.  Thank you.

1       So it does focus then primarily on the identity of

2 the parties and the location of harm, right?

3       MR. RUDD:  I believe that's correct.

4       THE COURT:  The holdings of the cases you're relying

5 on, those are the two main inquiries, right?

6       MR. RUDD:  As to whether the tribal court has

7 jurisdiction --

8       THE COURT:  Certainly.

9       MR. RUDD:  -- not whether this Court has

10 jurisdiction.

11       THE COURT:  On the record in front of me right now,

12 what do I know about the identities of the parties?

13       MR. RUDD:  I believe you know that Defendant

14 Aryanfard is non-enrolled.  I believe you know that he's a

15 citizen of the state of Oregon.  I believe you know that minor

16 child E.J.T. is not enrolled, a citizen of the state of Oregon,

17 domiciled off reservation within the state of Oregon.

18       THE COURT:  Do I know whether your client -- whether

19 the minor child is an Indian or not?  Do I know the answer one

20 way or the other?

21       MR. RUDD:  You know if he's non-enrolled.  I

22 understand that to be -- I understand that to be undisputed.

23 The question of whether he's an Indian, I'm choosing that

24 phrase "non-enrolled."

25       THE COURT:  You view those as the same, coterminous?

1    MR. RUDD:  There's case law that suggests they may

2  not be the same.  I view them as the same.

3    THE COURT:  All right.  And as to the location of the

4  operative facts, what do I know on this record in front of me

5  right now?

6    MR. RUDD:  I think the clearest thing to look to is

7  where the abuse that resulted in the harm to the child

8  occurred, which I understand to be undisputedly in Jefferson

9  County, not within the Warm Springs Indian Reservation.

10    THE COURT:  All right.  Thank you very much.

11    So we've moved past exclusivity and now we're just

12  taking up the question of futility.

13    MR. HENDERSON:  Sure.

14    THE COURT:  Could this plaintiff bring this case in

15  tribal court?

16    MR. HENDERSON:  Yes.  And our position is not only

17  could he, but he's required to for the reasons we said before.

18  But I'm going to address the identity portion first, and

19  that --

20    THE COURT:  Do you agree that those two factors are

21  important to decide whether this case can be brought in tribal

22  court?

23    MR. HENDERSON:  Under the tribal code, yes.

24    THE COURT:  All right.

25    MR. HENDERSON:  So the provision I cited to you

before regarding non-Indians is the piece that I would say, for the reasons I stated before, would allow a claim by this individual. And then the location -- we're not talking about an auto accident between two non-Indians. We're talking about a tribal police officer --

THE COURT: I'm sorry, I don't mean to interrupt, but I want to go back to 200.025(3), just so I make sure I know where you're coming from. Judge Russo took the position that there are only three types of litigants that can bring an action in tribal court, and then she's quoting 200.025(3). So first do you agree that that's the place to look to find the types of litigants that can bring an action in tribal court?

MR. HENDERSON: Well, yes. I mean --

THE COURT: All right. And so the first one is, A, Indians. Do you agree this plaintiff doesn't meet that subsection?

MR. HENDERSON: Well, it's not --

THE COURT: When I say "plaintiff," I mean the minor child.

MR. HENDERSON: It's not alleged exactly that he's an Indian. It's alleged that he's not enrolled.

THE COURT: Do you agree that it's undisputed that the minor child is not enrolled, on this record?

MR. HENDERSON: On this record, it's undisputed.

THE COURT: Do you agree or not that that means the

minor child is not an Indian?

MR. HENDERSON:  I don't agree to that.  I don't think that means that.  We haven't --

THE COURT:  Do you take a position whether this minor child is an Indian or not on behalf of your client?

MR. HASSON:  Your Honor, Dan Hasson.

I think that would be subject to further development, but the issue of enrollment is not coextensive with the issue of whether a child is considered an Indian under Confederated Tribes of Warm Springs substantive law.

THE COURT:  I'm going to pause you for just a minute. I'll get right back to you.

I'm just curious whether as amicus you can represent whether your client takes a position one way or the other whether this minor child is an Indian.

MR. NEWTON:  The short answer is yes.

THE COURT:  I guess that was a bad question.  That means I now know you take a position.

MR. NEWTON:  Yeah, okay.  I do take a position.  What is the position is what you're asking.

Based on the pleadings, Your Honor, as I understand them -- and I'm not as involved as the parties, but what I understand that is before the Court is that the minor child who is the plaintiff, that in the pleadings, the plaintiff alleges that the father is an enrolled member of the Warm Springs Tribe

1  living on the reservation, and that the child is the biological

2  child of the father.

3      THE COURT:  That's in the complaint, you're right.

4      MR. NEWTON:  Based on those facts, the tribe takes a

5  position for purposes of its code and its substantive law that

6  the plaintiff is an Indian.

7      Is the plaintiff an enrolled member of the tribe?  I

8  don't know the answer to that, and that is not in the record.

9      THE COURT:  Let's assume for the moment that the

10  answer is no.  Just assume for a moment no.  Does that change

11  your answer that the minor child is an Indian for purposes of

12  Warm Springs Tribal Code?

13      MR. NEWTON:  No.  Nor does it change our answer for

14  purposes of the jurisdiction of the tribal court or the

15  applicable Supreme Court precedent that doesn't distinguish

16  between enrolled tribal members of the Warm Springs Tribe

17  versus enrolled tribal members of the Yakama Tribe for purposes

18  of tribal court jurisdiction, as an example.  The question

19  is --

20      THE COURT:  Just so I make sure my hypothetical's

21  required assumption helps.  I'm asking you to assume that the

22  minor child is not an enrolled member of any tribe.

23      MR. NEWTON:  That's correct.

24      THE COURT:  And if that's the case, but you also

25  assume that the minor child is the child of an enrolled member,

1  the father, biological father enrolled member of the Warm

2  Springs Confederated Tribes and a non-Indian mother, is it

3  still your position that this minor child in this case is an

4  Indian under, at a minimum, 200.25(3)?

5          MR. NEWTON:  Yes, Your Honor.

6          THE COURT:  You don't need more factors?  You don't

7  need to know where the child was principally domiciled or

8  anything like that?

9          MR. NEWTON:  No.  And if this would help the parties

10  and the Court -- and it's a supplemental jurisdictional fact

11  that we can actually provide in a declaration -- my colleague,

12  Ms. Monkton, actually handles the Indian Child Welfare Act

13  cases for the tribe.  My understanding is that the child is

14  eligible for membership in the Warm Springs Tribe and may have

15  been enrolled, but we don't know that sitting here today.

16          THE COURT:  Thank you very much.

17          MR. HENDERSON:  Judge, can we interject real quickly?

18          THE COURT:  I'm sorry, who is talking?

19          MR. HENDERSON:  This is Jonathan.

20          The term "Indian" is actually a statutorily defined

21  term under the tribal code.  That's under 200.010(1).  I'll

22  read you that definition.  It says, "Indian means, unless

23  otherwise specified, a member of the Confederated Tribes of

24  Warm Springs Reservation of Oregon, or any other person of

25  Indian blood who is a member" --

1          THE COURT:  Slow down a little bit, please.  Would

2    you slow down a little bit.

3          MR. HENDERSON:  Sure.

4          -- "or any other person of Indian blood who is a

5    member of a federally recognized Indian tribe or any other

6    person on the reservation who is recognized by the community as

7    an Indian, including a Canadian Indian or an Alaska native."

8          So the code provision defines Indian as not being

9    just enrolled members of the tribe.

10          THE COURT:  Doesn't it require some knowledge of what

11    the community thought and/or where the child was domiciled?

12          MR. HENDERSON:  Or just --

13          MR. NEWTON:  Your Honor, there's no requirement for

14    any domicile.  I don't --

15          THE COURT:  You can say that, but I just had read to

16    me language that didn't use the word "domiciled" but was the

17    next best thing.  So I don't know what to make of that.

18          MR. HENDERSON:  It says "persons on the reservation."

19          THE COURT:  So if the minor child lived off the

20    reservation, what does that mean?

21          MR. HENDERSON:  I don't know that it's referring to

22    where they live, especially when it refers to Canadian Indians

23    and Alaska natives.

24          THE COURT:  Well, you know, when called upon, I can

25    engage in incredibly subtle thinking, but when not called upon,

I take the phrase "on the reservation" to be a geographical statement. So I'm not sure we've advanced the ball much here. But we'll punt on this one. Right now you think the minor child in this case may or may not qualify as an Indian, you say may, and we'll see.

Second is (b), but doesn't apply, the Confederated Tribes, right?

MR. HENDERSON: That's right.

THE COURT: And then (c) is the one you relied on earlier.

MR. HENDERSON: That's right.

THE COURT: So if the litigant is a non-Indian, do you agree that if that's the case, there are a couple of other factors that have to be present? You have to be suing an Indian and it has to arise on the reservation. That's all before you get to the disjunctive.

MR. HENDERSON: So that it has to arise on the reservation. I agree with that.

THE COURT: In which an Indian is a defendant.

MR. HENDERSON: Or one authorized by --

THE COURT: I said before the disjunctive. So do you agree so far?

MR. HENDERSON: Yes.

THE COURT: All right. Is the "or" -- does the "or" include anything? Does the "or" include a non-Indian when

1 authorized by specific tribal enactment, or just anybody?

2     MR. HENDERSON: Yes.

3     THE COURT: Of any type, just when authorized by a

4 specific tribal enactment?

5     MR. HENDERSON: Yes.

6     THE COURT: Well, I asked you two different things.

7 You can't say yes to both.

8     So I'm asking what the phrase after "or" modifies.

9     MR. HENDERSON: It means the tribal council is free

10 to allow in its courts whatever basically it wants. It could

11 be non-Indians, it could be basically anyone.

12     THE COURT: All right. So "or" doesn't modify

13 anything prior to "or." It's just an independent statement of

14 who can be a litigant in tribal court?

15     MR. HENDERSON: Yes.

16     THE COURT: Anyone when authorized by a specific

17 tribal enactment?

18     MR. HENDERSON: Yes. And that's what they've done

19 here through the implementation of --

20     THE COURT: I know we've been down this road once,

21 but help me one more time. What is the specific tribal

22 enactment that this plaintiff would rely on to say I can sue in

23 Warm Springs Tribal Court?

24     MR. HENDERSON: It's 390.130.

25     THE COURT: And that says you can sue the tribe,

1  etc., officers, agents, employees --

2      MR. HENDERSON:  Under Chapter 205.

3      THE COURT:  -- for tort claims that are -- well, it's

4  not so much under Chapter 205.  You can sue for tort claims

5  subject to limitations and conditions set forth in 205.  Right?

6      MR. HENDERSON:  Yes.

7      THE COURT:  And 205 simply says it's got to be the

8  tribe or its officers, agents or employees, when otherwise

9  authorized.  So here they sort of depend on each other to

10  exist, right?

11      MR. HENDERSON:  Yes.

12      THE COURT:  Neither one gets all the way there

13  without the other, but you contend both of them say you can

14  bring a tort claim in tribal court against the tribe, its

15  subordinate organizations, officers, agents, servants and

16  employees, subject to certain limitations and conditions,

17  right?

18      MR. HENDERSON:  Yes.

19      THE COURT:  So is a tort claim brought against this

20  officer in his individual capacity, does that satisfy 390.130?

21  Is it being brought against the tribe, its officers, agents,

22  servants, employees, including a tribal official arising from

23  the State's law enforcement authority?

24      MR. HENDERSON:  Yes.

25      THE COURT:  You contend this case, even though framed

as individual capacity, cannot escape being the sort of claim that's covered by 390.130?

MR. HENDERSON:  That's correct.

412 is absolutely critical to their claims.  They've said as much in their papers here.  So this -- I mean, that is the claim they're asserting.  This is what this provision, this code provision contemplates.

THE COURT:  Thank you very much.

Does amicus wish to be heard any further on this other than what I've already heard?

MR. NEWTON:  Yes, Your Honor.

THE COURT:  So the question we began with is where would I go to learn that this plaintiff in this case could bring this claim in Warm Springs Tribal Court?

MR. NEWTON:  Correct.

Can I provide a little bit of a different lens? Because you opened it with I think the right question, the futility question.  It's not necessarily is there a reasonable argument as to whether jurisdiction exists or not.  The question is can this Court conclude, based on the record before it, that there's no chance of tribal court jurisdiction.  And if the answer is no --

THE COURT:  Well, I'll get to the proper sort of burden of persuasion or burden of proof in a minute.  Thank you for that.  I don't want to forget that, so don't let me.

1       Let's get to whether it can be done or not.  Just

2  sort of what's your argument that, in fact, it can be done?

3       MR. NEWTON:  It can be done, Your Honor, and we

4  talked about Chapter 390, which I just had in front of me that

5  like vanished.  I don't know --

6       MALE SPEAKER:  I've got a copy.

7       MR. NEWTON:  I've got it right here.

8       So 390 is Ordinance No. 93 that adopts 390 and it's

9  intended to implement the requirements of 412, the

10  applicability of which is limited only to activities conducted

11  by Warm Springs Police Department when carrying out activities

12  under the authority of Senate Bill 412, which I think there's

13  no dispute among the parties that, as alleged in the complaint,

14  Officer Aryanfard was carrying out his duties as a Senate Bill

15  412-certified officer.  The allegation is in so doing, he

16  committed a tort.

17       Now, that's disputed, of course, right?  But then we

18  get into these issues about, okay, so where is the remedy and

19  where do you bring the action?  And you still go back to Senate

20  Bill 412, and Senate Bill 412 says, you, tribe, you Warm

21  Springs can opt into this statutory scheme if you do a few

22  things, one of which is provide a remedy in your tribal court

23  for causes of action arising out of your state-certified tribal

24  officer's tort acts, tort claims.

25       Warm Springs accepted that bargain, and it adopted

Ordinance 93, which enacted Chapter 390, which says -- and you had read it, Your Honor -- that any tort claim brought against a state-certified tribal officer, which we would say any tort claim brought against Officer Aryanfard arising from his authority under Senate Bill 412 must be asserted in accordance with Chapter 205.

THE COURT:  All right.  Thank you.

And do you agree with your colleagues' analysis of 200.025, that the phrase after the disjunctive "or" stands by itself and says anyone authorized by tribal enactment -- I'm sorry, I'm losing the language here.

MR. NEWTON:  Yeah.

THE COURT:  That anyone can bring a claim when such claim is authorized by specific tribal council enactment?

MR. NEWTON:  I think that disjunctive does not carry the geographic limitation that's in the earlier part of the sentence, if that's what you're asking.

THE COURT:  I am.  Thank you.  Thank you very much.

Your response?

MR. RUDD:  A couple.

THE COURT:  The question I'm dealing with is could this claim be brought in tribal court.  What's your argument for why it could not be brought in tribal court?

MR. RUDD:  It cannot be brought in tribal court because the tribal court's jurisdiction is constrained by

federal law, not just -- as opposed to solely defined by the

ordinance of the tribal council. I think that's --

      THE COURT: I want to come back to that argument, and

I'm going to come back to it after we deal with the textual

argument that we've been having a minute ago.

      Do you disagree with that? If your federal law

argument doesn't work, do you disagree that absent that

restriction on tribal jurisdiction arising from some sort of

federal common law, that the tribe has otherwise enacted

provisions that would allow this case to be brought in tribal

court?

      MR. RUDD: Our reading of the tribe's ordinance and

the positive law describing their own jurisdiction does not

create jurisdiction for the facts of this case for the reasons

we've set forth in our brief, Your Honor. That is our

position.

      THE COURT: All right. So I'd like to walk through

that briefly.

      So the tribes contend that when Judge Russo points

out three types of litigants who can bring actions in tribal

court, that one such type of litigant found in (c) after the

disjunctive "or" is anyone bringing a tort claim against a

state-certified law enforcement officer.

      What's wrong with that reading of their own

enactments? And to be -- to load the question up just a

little, specifically rejecting the idea that that's a type of
claim that has to be arising upon the reservation or any of the
other limitations found elsewhere in 200.025(3), but rather
just says if you're bringing a tort claim against a
state-certified law enforcement officer, you know, then you
can -- then those can be brought in tribal court.

What's wrong with that analysis?

MR. RUDD:  I have not followed all of the back and
forth about the textual analysis that you've engaged in with
the other lawyers, Your Honor, so I am not sure that I can
follow you on your question on periods, comma, disjunctive
level at this moment.  I have focused in my analysis of that
question on the structural limitations on the authority of
tribal government and tribal courts in our analysis of this
claim, and that is the emphasis that we have before the Court.

I believe in our brief primarily -- and I think what
you see if you look at that is this reality:  If there was a
tribal ordinance that says, we create jurisdiction in our
tribal courts for quiet title actions in Arizona, that would be
overbroad and it wouldn't -- it wouldn't create that
jurisdiction in the tribal court.

THE COURT:  All right.  Thank you.

Then let's turn to your other argument that this is
the sort of case that a variety of federal cases tell me
require looking at federal law to decide whether the tribe's

1  own efforts to exercise jurisdiction here should be rejected.

2  Help me with that argument.  Rephrase that argument for me.

3         MR. RUDD:  I'd be happy to, Your Honor.  Would you

4  try the question on me again?

5         THE COURT:  You're arguing that sort of independent

6  of the tribe's own enactments and whether they actually create

7  an avenue for such a claim to be brought in tribal court, that

8  sort of standing above those enactments is the body of federal

9  law, found in federal cases that says even if that's the

10  tribe's intention, they cannot do it.

11        MR. RUDD:  Yes.

12        THE COURT:  What do those cases teach?

13        MR. RUDD:  Those cases show that the jurisdiction of

14  tribal courts is constrained by federal common law.  You see

15  that in cases like *A-1 v. Strate*.  I think you see that in

16  cases like *Nevada v. Hicks*.  You see that in cases like *Plains*

17  *Commerce*, where a litigant that started out in tribal court had

18  to travel all the way to the United States Supreme Court to be

19  told that as a matter of federal common law, that court didn't

20  have jurisdiction, and to fight it -- and have to fight it all

21  the way only to hear that at the end.

22        So from a plaintiff's perspective, because there is

23  clear jurisdiction here, and the tribal court jurisdiction is

24  constrained by those federal cases, we think the case has a

25  home here in this court.

1          THE COURT:  I'm not sure it matters to the legal

2    analysis, but those cases involve plaintiffs seeking to prevail

3    over defendants, which defendants were challenging the ability

4    of the tribal courts to give plaintiffs the rewards they

5    sought, right?

6          MR. RUDD:  If that's true, as I remember the -- those

7    cases, they're procedurally complex and they have different

8    litigants in different courts presenting as plaintiffs or

9    defendants in different courts as they fight about the

10   jurisdiction that was disputed on the way to the Supreme Court.

11   So I don't think you can make a clear distinction like that.

12          I do think, if it's okay, Your Honor, it is

13   noteworthy for a comity reason to emphasize that there is no

14   case pending in tribal court.  There was not an exhaustion

15   comity argument presented to Judge Russo.  And we have seen

16   that as untimely, and at least in my recollection of it, it

17   would be unique to find a comity argument and an exhaustion

18   argument that prevailed in that circumstance.

19          THE COURT:  In the circumstances of not having been

20   raised in front of a magistrate judge?

21          MR. RUDD:  And it would be, I would say, unusual.

22   Unique might be too strong a word.  It would be unusual to

23   find -- to find that when there is no pending tribal court

24   matter.

25          THE COURT:  In addition to the idea that this case in

1  the complaint necessarily will take place at least in large

2  part not in tribal court, no matter how this defendant turns

3  out, right?

4  MR. RUDD:  If I follow you, I think that's correct,

5  Your Honor.  And, you know, to some extent, if we're looking

6  for cases that show that in the wake of *Lewis v. Clarke* that

7  that sort of thing is appropriate.  I think the *Cain v. Salish*

8  *Kootenai College* case shows that.  I think there are practical

9  considerations, too, here.  The Court in *Cain* spoke about the

10  nexus of operative facts in all the plaintiff's claims against

11  various defendants as a factor that informed why a federal

12  court should have supplemental and pendent jurisdiction.

13  THE COURT:  That's all I'm saying, is that Jefferson

14  County and Tyler Anderson are never going to end up in tribal

15  court.

16  MR. RUDD:  I believe that's correct, Your Honor.  I

17  believe *Nevada v. Hicks* says that.

18  THE COURT:  Thank you.

19  Those are my questions.  I'll start with you,

20  Mr. Rudd.  Is there anything further you want to add to the

21  mix?

22  MR. RUDD:  Just as there are -- as I've tried to

23  articulate -- limits under federal law on the jurisdiction of

24  the tribal court and the tribal council to promulgate law that

25  would aggregate jurisdiction that they do not have under

1   federal law, there are limits on the Oregon legislature's

2   jurisdiction to constrain this individual capacity claim that

3   E.J.T. brings against Aryanfard.  As I've heard a lot of the

4   argument today from defendants, that there's characterizations

5   of the intent of the Oregon legislature and an effort to

6   persuade the Court that if the Court can discern that intent,

7   it should be fully effectuated.

8           But there are limits on the authority of the Oregon

9   legislature to destroy causes of action.  For instance, if in

10  Senate Bill 412 it said, "and there shall be no 1983 cause of

11  action against anybody involved in a cooperative law

12  enforcement scheme," that provision of the legislation would be

13  overbroad.

14          That's the one thing that comes to mind that I'd like

15  to note.

16          THE COURT:  What provision of this legislation is

17  overbroad in your view?

18          MR. RUDD:  I'm not saying that a provision of the

19  legislation is overbroad.  What I'm saying is I've heard

20  arguments that characterize it in a way that I understand to be

21  beyond the authority of the Oregon legislature.

22          THE COURT:  Thank you very much.

23          Same question, Mr. Henderson.

24          MR. HENDERSON:  Sure.  I've got a couple points I'd

25  like to make.  Regarding the issue you asked counsel before we

1  got to the final remarks, I just want to point out that the

2  facts of this case are not like the cases that the plaintiff

3  cites, and it's not a quiet title action in Arizona.  We're

4  talking about a tribal police officer conducting an

5  investigation on the reservation, and it's perfectly within the

6  possibility of a tribe to prescribe that those claims be

7  brought in federal court.  So this is not -- it's not a wild

8  quiet title action from some other state.  It relates to the

9  functions of the law enforcement officers of the tribe.

10         THE COURT:  Mr. Rudd has asserted that one of the

11  things I can take to the bank about this case is that it's

12  about the events perpetrated off the reservation by a

13  non-Indian, and I ought to view the case in that way.  And that

14  is sort of the culminating aspect of the complaint.

15         So what do you make of that?

16         MR. HENDERSON:  Well, so that might be the

17  culminating aspect of the complaint, but the allegations are

18  relating to a tribal officer performing a tribal investigation

19  relating to a tribal crime committed on the reservation.

20         THE COURT:  Where do I learn that Mr. Aryanfard knew

21  that the crime was committed on the -- actually that's even

22  better -- was told that the crime had been committed on the

23  reservation?  Where do I learn that?

24         MR. HENDERSON:  Well, so in the complaint, that's

25  the -- what you have is Nurse -- you have E.J.T. --

1          THE COURT:  I've read the complaint.  So why don't

2     you tell me which paragraph you're thinking about when you say

3     he learned this from anybody.

4          MR. HENDERSON:  So it begins with chapter --

5     paragraph 17, where that's -- this is the St. Charles Hospital

6     staff notifying E.J.T.'s mother that they're going to have to

7     call --

8          THE COURT:  Right.  I said I've read it.  I'm asking

9     you to show me the language that says your client learned that

10    the crime had been committed on the reservation -- your client,

11    not Anderson.

12         MR. HENDERSON:  So it doesn't expressly say that.

13    That's the inference you have to take from the conversation

14    from Nurse Mellor to Officer Aryanfard, and then Aryanfard

15    speaks with --

16         THE COURT:  Typically when you speak of inferences

17    from complaints at this stage of the proceedings, the inference

18    is typically -- I'm commanded to weigh them in favor of the

19    nonmoving party.  So why would I give you the inference you

20    want?

21         MR. HENDERSON:  Well, there is nothing -- there isn't

22    anything there to go the other direction for an inference in

23    the other direction.  Just by omission in these allegations,

24    that doesn't get them home.  What you have is allegations that

25    Nurse Mellor contacts Aryanfard and then Aryanfard is saying he

1  spoke with Thomas, and he wants E.J.T. to come down, to finish

2  the investigation and to take pictures and ask questions.  And

3  so that's where we get he's told it's Thomas, it's Thomas's

4  residence, and that's why he went and interviewed Thomas before

5  ever speaking with EJT.

6       THE COURT:  Those are all inferences you want me to

7  make?

8       MR. HENDERSON:  Well, that's what's in the complaint.

9       THE COURT:  I don't read anywhere in the complaint

10  that anyone told him Thomas was the perpetrator and it happened

11  on the reservation.

12       MR. HENDERSON:  They don't expressly allege that.

13       THE COURT:  All right.  Okay.

14       MR. HENDERSON:  So the other -- one of the other

15  things I wanted to address -- I've got two more things I want

16  to address quickly here is in the beginning of this case, when

17  we talked about the caps and I heard counsel say there is no --

18  there is no cap for this claim, I want to point the Court to

19  ORS 181A.690 again, in which the Oregon legislature made clear

20  that what it wanted was tribal officers to be afforded the same

21  protection as all other officers in the state.

22       And so if we were to hold or find here that Officer

23  Aryanfard is not entitled to that protection, our position is

24  you're running counter to the clear intent of the legislature

25  that enacted this process.  And so I just wanted to point that

1  out.

2        And then the final point I wanted to make is we had

3  an argument both in the motion to dismiss and in our objections

4  relating to the -- a different issue under the failure to state

5  a claim relating to when and under what circumstances Oregon

6  law applies.  And that is a different issue than simply the

7  jurisdictional issue or which court should hear this.  And that

8  is our argument that Senate Bill -- that Aryanfard under the

9  facts was not actually engaged in Senate Bill 412 activity.  He

10  had not invoked his authority under 412.  He was instead

11  investigating a purely tribal matter.  And when -- if that's

12  what he was doing, which is the only fair reading of the

13  complaint, then Oregon law doesn't apply.  It's a purely tribal

14  issue.  And so that's because Oregon wouldn't have criminal

15  jurisdiction over the matter if it was a -- if it was an abuse

16  committed by a member of the tribe while on the reservation,

17  Oregon wouldn't have jurisdiction over that.  And this is what

18  he was investigating.

19        And so our position is Senate Bill 412 was never

20  triggered.  And if it wasn't triggered, then Oregon law doesn't

21  apply, and if Oregon law doesn't apply, you fail to state a

22  claim.  That was our -- that was a separate argument from our

23  position that this -- if it is 412 activity, then it belongs in

24  tribal court.

25        THE COURT:  So certainly you're allowed to do so, but

1  you acknowledge that those two arguments are completely

2  inconsistent with each other.  You've told me that 412 --

3  excuse me, 390.130 applies because the claim necessarily is

4  against a tribal official arising from the tribal state law

5  authority.  But you also want me to say -- actually, that's not

6  really what happened here.  He wasn't exercising his state law

7  authority at all.  It was tribal criminal law authority he was

8  exercising, and so sovereign immunity doesn't apply, tort

9  claims don't apply, there's no state law claim at all.

10         MR. HENDERSON:  So our view is it's either one or the

11  other, and if it doesn't apply, then you don't have a claim at

12  all, whether it's in this court or tribal court, and if it is

13  412 activity, then you might have a claim, but it's in tribal

14  court for the reasons we just went through for the last hour or

15  so.

16         THE COURT:  Thank you very much.

17         Mr. Newton, anything further you wish to add?

18         MR. NEWTON:  A few points, Your Honor.  Again, hoping

19  to clarify.

20         I guess I would start, Your Honor, with Senate Bill

21  412 itself.  I think the only reasonable way to read Senate

22  Bill 412 is that the State of Oregon was asking the tribal

23  governments if you want to participate in the scheme, you got

24  to create a judicial remedy in your court for torts.  It

25  doesn't say, in your court for torts that arise within your

1    territory.  It just says in your court.

2         Now, it's a fair point that plaintiff makes that the

3    Oregon legislature doesn't have the constitutional authority to

4    increase tribal jurisdiction.  I don't think we would dispute

5    that.  But I think it's important to say Oregon wasn't trying

6    to do something other than say create a remedy in your court.

7         And to reinforce that, Your Honor -- it's in our

8    briefing, but I just wanted to mention it -- there is a savings

9    clause in Senate Bill 412, which is 181.690(9) -- excuse me,

10   (9)(b), as in boy, which says nothing in the act "affects the

11   existing status and sovereignty of tribal governments whose

12   traditional lands and territories lie within the borders of the

13   state of Oregon, as established under the laws of the United

14   States."

15        So I think just the first point I want to make is I

16   don't think there's anything that can reasonably be read to say

17   the Oregon legislature was attempting to create or to force

18   tribes to make their officers available to be sued for tort

19   actions in Oregon state court.  There's no statutory cause of

20   action.  And I'm not sure if plaintiff's assumption that that

21   cause of action or that that jurisdiction existed before Senate

22   Bill 412 is well-founded, because before Senate Bill 412, had

23   the exact same facts occurred, and Officer Aryanfard was merely

24   a tribal law enforcement officer employed by the tribe, there

25   would be no state cause of action.  They traveled to the

reservation, contacted Officer Aryanfard on the reservation, a

place reserved by the Treaty of 1855 for the exclusive use and

occupation of the tribe and its members and which Congress has

exempted from state civil law under Public Law 280.  So there's

no state civil jurisdiction on the reservation.

Now, there's reasons why in those circumstances --

THE COURT:  That's supportive of Mr. Henderson's idea

that there's either no state claim at all because it's not

encapsulated in waiver of sovereign immunity, or if there's a

state claim, it's got to come under SB 412 390, and had the

specific structures of the tort claim, the tribal tort claims

act, I'll call it.

MR. NEWTON:  That's correct, Your Honor.  And the

tribe is not taking -- trying not to take a position on the

underlying merits.  That's for the parties to figure out.  The

tribe's interest here is really its territorial integrity and

its inherent sovereignty.

THE COURT:  There's an argument that Mr. Rudd has

made that sort of rising above the enactments of the tribe and

even the bargains struck by SB 412 is a body of federal case

law suggesting that in a case like this one, characterized by

Mr. Rudd, at least, as a crime occurring off the reservation

involving a non-Indian child and a non-Indian perpetrator, that

tribal court jurisdiction cannot extend that far, see a variety

of cases.

1          What's your position on that?

2          MR. NEWTON:  I don't think Mr. -- or counsel for

3  plaintiff has referenced the *Strate v. A-I Contractors* case and

4  *Nevada v. Hicks*, both of which are distinguishable on their

5  facts.  The *Strate* case was dealing with a public right-of-way

6  and whether that remained sort of Indian territory for purposes

7  of jurisdiction.

8          This is a different issue, Your Honor.  I do think

9  that the pleadings do frame fairly clearly that plaintiff and

10  his mother and grandmother went to the reservation and

11  contacted the officer there.  And our position is, look, the

12  law is presumptively state court jurisdiction over Indians or

13  activities on Indian lands, and the activities are the

14  interaction with the officer at the reservation.  Those

15  activities on Indian lands would interfere with tribal

16  sovereignty and government.  State courts are generally

17  divested of jurisdiction as matter of federal law.  "Where

18  tribes possess the authority to regulate activities of

19  nonmembers, civil jurisdiction over disputes arising out of

20  such activities presumptively lies in the tribal courts."

21  That's a Ninth Circuit decision from 2019, *FMC Corporation v.*

22  *Shoshone-Bannock Tribes*.

23          Our position is this:  It's immaterial whether

24  Officer Aryanfard was an enrolled member of Warm Springs, an

25  Indian, a non-Indian.  The dispositive question for us is did

the tribe possess the authority to regulate his activity.  And

undeniably it did because it was his employer.  It could

condition his employment and regulate his activity.  It had

authority over him.

THE COURT:  Thank you very much.

I appreciate the parties' thoughtfulness and helpful

oral arguments here today.  I'm reluctant to do what I'm about

to do, but I am going to delay the issue somewhat.  I think

there's a powerful case for exclusive tribal jurisdiction, but

I think the case is currently sitting on a record that's

fragile or shaky or weak in ways that I don't like for

ultimately resolving it.

And there are two questions I think are useful to

resolve before I ultimately decide my jurisdiction.  And I

embark on this path because it's a well-established principle

of jurisdictional law that I have jurisdiction to determine my

jurisdiction.

So one is is the minor child an Indian.  And I've

heard arguments that, quite frankly, don't quite match up with

the authorities cited for those arguments, and I think more

careful thought might be useful here.  I don't know if more

factual information is needed or not.  For example, there's

some reference for how the child is viewed by the community.

That sounds like discovery to me.  Does the community widely

view this as the biological father's child?  I don't know the

1    answer to that.

2          If the child is an Indian, then that's a very simple

3    resolution to the question is this the type of litigant that

4    can bring an action in tribal court as compared to a

5    complicated answer to that question.  So I think it's useful to

6    close that gap in the record.  I'm not telling you how to do

7    it.  I expect subsequent briefing at some point on is this

8    child an Indian, premised on probably some discovery at least

9    or at least further thought.

10         The second is where are the operative facts.  And

11   that has to do with Mr. Rudd's characterization of this case as

12   a crime by a non-tribal member, non-Indian, committed off the

13   reservation.  And that's a fair reading of the ultimate message

14   of the complaint, but doesn't match up with the entire

15   complaint, as you and I have discussed.  What the complaint

16   actually says that might contradict that message is really

17   uncertain.  So I'll be interested post discovery to learn what

18   did Officer Aryanfard hear.  It seems to me -- that's why I say

19   there's a strong case here.  It seems to me that it's almost

20   impossible to see these actions playing out in the way the

21   complaint describes without Officer Aryanfard believing that he

22   was dealing with a crime committed on the reservation by a

23   tribal member, but I've been surprised before by the difference

24   between what complaints say and what discovery shows.

25         So I'd like discovery to tell me whether Officer

1  Aryanfard, at least, was acting in what capacity based on what

2  he'd been told.  Nobody today knows the answer to that.

3          So those two things I'd like to know the answer to,

4  and then I think I'll know the jurisdictional answer when I'm

5  done with that, and the answer that I think is present in this

6  case will be on much more solid footing.

7          I'll leave it to the parties how much to go and do

8  before you come back to me again.  It might be that it's at the

9  close of discovery at summary judgment with other claims as

10  well, but I'm not requiring you to wait that long if you think

11  you have your ducks in a row before then.

12          My apologies for all this work without resolving it,

13  but I feel that discretion is the better part of valor here, in

14  the sense of tightening up this record and getting answers to

15  important questions before I rule.

16          Thank you.  We'll be in recess.

17          I do have a question of amicus and defendant.  It's

18  an informal question only.  We can be off the record.

19          (Proceedings concluded at 12:02 p.m.)

20

21

22

23

24

25

--oOo--

I certify, by signing below, that the foregoing is a correct transcript of the record of proceedings in the above-entitled cause.  A transcript without an original signature or conformed signature is not certified.


*/s/Bonita J. Shumway*                    *May 25, 2022*
BONITA J. SHUMWAY, CSR, RMR, CRR        DATE
Official Court Reporter

**MALE SPEAKER: [1]** 42/6
**MR. HASSON: [2]** 3/12 34/6
**MR. HENDERSON: [60]** 3/10
11/23 12/13 12/17 12/23 13/12
13/15 13/24 14/3 14/24 15/2
15/6 15/9 15/25 16/9 16/12
16/17 16/24 32/13 32/16 32/23
32/25 33/13 33/17 33/20 33/24
34/2 36/17 36/19 37/3 37/12
37/18 37/21 38/8 38/11 38/17
38/20 38/23 39/2 39/5 39/9
39/15 39/18 39/24 40/2 40/6
40/11 40/18 40/24 41/3 49/24
50/16 50/24 51/4 51/12 51/21
52/8 52/12 52/14 54/10
**MR. NEWTON: [30]** 3/14
17/16 17/22 17/25 18/5 20/10
22/6 22/8 23/7 23/12 23/22
24/10 24/19 34/16 34/19 35/4
35/13 35/23 36/5 36/9 37/13
41/11 41/15 42/3 42/7 43/12
43/15 54/18 56/13 57/2
**MR. RUDD: [35]** 3/8 7/23 8/18
9/15 10/12 11/9 25/11 25/18
26/6 26/18 28/1 28/22 29/13
29/24 30/19 31/3 31/6 31/9
31/13 31/21 32/1 32/6 43/20
43/24 44/12 45/8 46/3 46/11
46/13 47/6 47/21 48/4 48/16
48/22 49/18
**MS. MONKTON: [1]** 3/16
**MS. OLSON: [1]** 3/9
**THE COURT: [122]**
**THE COURTROOM DEPUTY:
[1]** 3/4

**-**
**--o0o [1]** 61/2

**/**
**/s/Bonita [1]** 61/9

**1**
**1000 [1]** 2/22
**10:32 [1]** 3/2
**12:02 [1]** 60/19
**1631 [1]** 2/4
**17 [1]** 51/5
**1800 [1]** 2/14
**181.685 [1]** 12/24
**181.690 [1]** 55/9
**181A.685 [1]** 19/15
**181A.690 [1]** 52/19
**1855 [1]** 56/2

**1983 [1]** 49/10

**2**
**200 [4]** 2/14 12/5 14/18 23/7
**200.010 [1]** 36/21
**200.025 [6]** 6/9 14/5 33/7 33/10
43/9 45/3
**200.25 [1]** 36/4
**2019 [1]** 57/21
**2022 [3]** 1/7 3/2 61/9
**205 [12]** 20/11 20/19 22/14
22/15 23/1 23/7 23/9 40/2 40/4
40/5 40/7 43/6
**205.001 [1]** 22/16
**24/7 [1]** 26/22
**25 [1]** 61/9
**280 [1]** 56/4

**3**
**301 [1]** 2/22
**326-8188 [1]** 2/23
**337 [1]** 2/7
**360 [1]** 2/19
**365 [1]** 26/21
**390 [7]** 20/14 23/8 42/4 42/8
42/8 43/1 56/10
**390.130 [7]** 20/14 22/3 22/4
39/24 40/20 41/2 54/3
**3:20-cv-01990-JR [1]** 1/5
**3:20-cv-199O-JR [1]** 3/5

**4**
**400 [1]** 2/19
**412 [37]** 10/8 12/24 12/25
14/11 15/10 15/10 16/18 16/25
18/15 19/7 19/20 20/6 20/13
21/13 22/12 23/15 24/11 41/4
42/9 42/12 42/20 42/20 43/5
49/10 53/9 53/10 53/19 53/23
54/2 54/13 54/21 54/22 55/9
55/22 55/22 56/10 56/20
**412-certified [1]** 42/15

**5**
**503 [1]** 2/23
**5065 [1]** 2/10

**8**
**816 [1]** 2/4
**8188 [1]** 2/23
**82520 [1]** 2/7

**9**
**93 [5]** 20/12 21/23 22/25 42/8
43/1
**97201 [1]** 2/14

**97204 [1]** 2/22
**97232 [1]** 2/4
**97702 [1]** 2/19
**97708 [1]** 2/10

**A**
**a.m [1]** 3/2
**ability [2]** 4/4 47/3
**able [3]** 13/1 17/4 17/20
**about [33]** 4/19 6/17 7/4 7/19
8/22 9/17 9/23 12/12 12/16
13/18 13/23 18/18 20/21 24/14
29/16 29/23 30/6 30/8 30/24
31/12 33/3 33/4 42/4 42/18
45/9 47/9 48/9 50/4 50/11
50/12 51/2 52/17 58/7
**above [3]** 46/8 56/19 61/6
**above-entitled [1]** 61/6
**absent [1]** 44/7
**absolutely [2]** 29/10 41/4
**abundantly [1]** 10/25
**abuse [3]** 26/21 32/7 53/15
**accepted [1]** 42/25
**accident [1]** 33/4
**accomplish [1]** 18/16
**accordance [4]** 20/3 22/13
22/25 43/5
**account [1]** 24/17
**accountable [1]** 18/6
**acknowledge [1]** 54/1
**act [5]** 13/4 21/12 36/12 55/10
56/12
**acting [5]** 20/22 26/8 26/13
26/16 60/1
**action [42]** 4/23 6/1 6/2 6/2 6/8
6/19 6/24 7/2 7/3 7/5 7/10 7/13
8/2 8/3 8/12 9/8 19/5 19/5 19/6
19/12 19/18 19/18 20/21 21/11
21/12 21/18 25/3 25/7 25/19
27/14 33/10 33/12 42/19 42/23
49/9 49/11 50/3 50/8 55/20
55/21 55/25 59/4
**actions [6]** 14/21 20/6 44/20
45/19 55/19 59/20
**activities [7]** 42/10 42/11 57/13
57/13 57/15 57/18 57/20
**activity [5]** 53/9 53/23 54/13
58/1 58/3
**acts [1]** 42/24
**actually [9]** 19/4 36/11 36/12
36/20 46/6 50/21 53/9 54/5
59/16
**add [2]** 48/20 54/17
**addition [1]** 47/25
**additional [1]** 19/12

# A

address [3] 32/18 52/15 52/16
adjacent [1] 18/12
adjudicate [1] 18/10
adopt [1] 19/16
adopted [1] 42/25
adopts [2] 20/14 42/8
advanced [1] 38/2
affects [1] 55/10
afforded [1] 52/20
after [6] 7/17 14/20 39/8 43/9 44/4 44/21
again [7] 7/7 16/20 21/23 46/4 52/19 54/18 60/8
against [27] 8/12 9/1 9/18 9/19 15/3 15/12 19/18 20/16 20/22 21/11 22/9 23/23 25/19 26/11 26/20 26/25 40/14 40/19 40/21 43/2 43/4 44/22 45/4 48/10 49/3 49/11 54/4
agents [6] 20/17 22/18 40/1 40/8 40/15 40/21
aggregate [1] 48/25
ago [2] 18/4 44/5
agree [13] 9/13 9/15 12/18 32/20 33/11 33/15 33/22 33/25 34/2 38/13 38/18 38/22 43/8
agreeing [1] 24/18
agreement [1] 17/8
al [1] 3/6
Alaska [2] 37/7 37/23
all [40] 3/18 4/15 8/22 11/18 12/8 16/23 17/2 17/6 17/14 19/4 23/21 24/1 25/10 27/3 28/14 30/25 32/3 32/10 32/24 33/14 38/15 38/24 39/12 40/12 43/7 44/17 45/8 45/22 46/18 46/20 48/10 48/13 52/6 52/13 52/21 54/7 54/9 54/12 56/8 60/12
allegation [1] 42/15
allegations [3] 50/17 51/23 51/24
allege [1] 52/12
alleged [3] 33/20 33/21 42/13
alleges [1] 34/24
allow [7] 15/10 21/15 24/6 25/13 33/2 39/10 44/10
allowed [2] 15/16 53/25
allowing [2] 4/16 24/11
almost [2] 5/6 59/19
alone [2] 26/4 26/6
already [1] 41/10
also [8] 9/9 9/11 14/3 16/19

26/1 30/22 35/24 54/5
although [3] 3/20 5/9 20/22
am [3] 43/18 45/10 58/8
amicus [5] 2/16 17/15 34/13 41/9 60/17
among [2] 13/2 42/13
analysis [7] 8/21 43/8 45/7 45/9 45/12 45/14 47/2
analyze [2] 28/16 29/13
analyzed [1] 29/23
ANDERSON [3] 1/7 48/14 51/11
another [1] 23/1
answer [20] 6/21 18/11 18/11 19/25 24/21 30/9 30/13 31/19 34/16 35/8 35/10 35/11 35/13 41/22 59/1 59/5 60/2 60/3 60/4 60/5
answers [2] 11/14 60/14
any [26] 8/1 8/10 8/22 8/23 9/23 10/24 11/7 12/15 19/9 20/3 21/7 22/9 23/18 26/10 27/1 27/1 35/22 36/24 37/4 37/5 37/14 39/3 41/9 43/2 43/3 45/2
anybody [4] 15/7 39/1 49/11 51/3
anyone [6] 39/11 39/16 43/10 43/13 44/22 52/10
anything [10] 12/12 12/16 13/18 36/8 38/25 39/13 48/20 51/22 54/17 55/16
anyway [1] 19/2
anywhere [1] 52/9
apart [1] 24/4
apologies [1] 60/12
appeal [2] 5/14 18/17
APPEARANCES [1] 2/2
applicability [1] 42/10
applicable [2] 20/3 35/15
applies [3] 4/3 53/6 54/3
apply [11] 6/12 7/4 19/8 26/19 38/6 53/13 53/21 53/21 54/8 54/9 54/11
appreciate [1] 58/6
appropriate [6] 5/5 5/15 12/1 12/1 28/18 48/7
are [66]
arguing [1] 46/5
argument [31] 1/14 3/5 3/19 7/19 8/7 11/20 22/2 23/16 25/23 27/4 28/1 28/23 28/24 29/10 41/19 42/2 43/22 44/3 44/5 44/7 45/23 46/2 46/2 47/15 47/17 47/18 49/4 53/3

53/8 53/22 56/18
arguments [7] 27/16 27/23 49/20 54/1 58/7 58/19 58/20
arise [8] 6/8 6/15 7/3 10/16 13/5 38/15 38/17 54/25
arisen [1] 27/19
arising [12] 8/3 10/1 14/8 19/19 22/11 40/22 42/23 43/4 44/8 45/2 54/4 57/19
Arizona [2] 45/19 50/3
ARJANG [2] 1/8 2/12
Arnett [2] 18/2 18/3
arose [2] 7/6 10/17
around [5] 10/1 18/16 24/9 24/10 24/13
articulate [1] 48/23
ARYANFARD [27] 1/8 2/12 3/11 3/13 22/10 24/24 25/19 26/11 26/20 26/25 31/14 42/14 43/4 49/3 50/20 51/14 51/14 51/25 51/25 52/23 53/8 55/23 56/1 57/24 59/18 59/21 60/1
as [64]
as-yet-unanswered [1] 30/8
aside [1] 17/13
ask [5] 3/24 7/8 9/12 12/9 52/2
asked [2] 39/6 49/25
asking [14] 7/23 9/12 11/15 16/11 24/22 30/1 30/2 30/3 34/20 35/21 39/8 43/17 51/8 54/22
aspect [4] 10/8 29/20 50/14 50/17
aspects [1] 11/9
assert [3] 5/13 5/21 24/7
asserted [5] 13/5 20/3 22/13 43/5 50/10
asserting [1] 41/6
assertion [1] 23/10
assume [9] 3/24 4/2 7/23 8/4 8/5 35/9 35/10 35/21 35/25
assumes [1] 23/12
assuming [3] 7/20 9/9 18/9
assumption [4] 4/2 8/7 35/21 55/20
attempt [1] 17/10
attempting [1] 55/17
Attorney [1] 2/9
authorities [1] 58/20
authority [26] 8/17 8/23 10/23 13/1 13/9 13/16 15/21 16/5 18/18 21/25 22/12 27/2 40/23 42/12 43/5 45/13 49/8 49/21 53/10 54/5 54/7 54/7 55/3 57/18 58/1 58/4

## A

**authorize [1]** 20/7
**authorized [13]** 13/6 14/9 14/22 20/15 22/20 22/23 38/20 39/1 39/3 39/16 40/9 43/10 43/14
**authorizing [1]** 14/11
**auto [1]** 33/4
**automatically [1]** 19/8
**avail [2]** 20/24 24/24
**available [1]** 55/18
**avenue [2]** 2/22 46/7
**avoid [3]** 17/5 17/10 17/13
**aware [1]** 8/23

## B

**back [13]** 21/23 23/1 24/10 27/12 30/13 30/17 33/7 34/12 42/19 44/3 44/4 45/8 60/8
**bad [1]** 34/17
**Baldwin [1]** 2/6
**ball [1]** 38/2
**bank [1]** 50/11
**Bannock [1]** 57/22
**bargain [12]** 13/10 15/20 16/2 16/4 16/13 16/14 18/23 19/2 19/3 19/11 21/15 42/25
**bargains [1]** 56/20
**based [5]** 28/6 34/21 35/4 41/20 60/1
**basically [3]** 17/7 39/10 39/11
**be [100]**
**bear [1]** 26/22
**because [27]** 5/9 5/19 6/13 7/11 8/16 8/19 8/20 10/16 11/24 17/8 18/24 19/23 20/20 24/5 26/7 26/20 27/10 30/20 41/17 43/25 46/22 53/14 54/3 55/22 56/8 58/2 58/15
**become [1]** 11/17
**becomes [3]** 5/18 7/12 12/21
**been [16]** 4/15 16/15 18/12 20/21 20/25 26/13 27/15 28/2 36/15 39/20 44/5 47/19 50/22 51/10 59/23 60/2
**before [26]** 1/16 8/14 11/24 12/10 14/19 25/20 26/18 28/10 30/19 32/17 33/1 33/2 34/23 38/16 38/21 41/20 45/15 49/25 52/4 55/21 55/22 58/14 59/23 60/8 60/11 60/15
**began [1]** 41/12
**beginning [2]** 14/4 52/16
**begins [1]** 51/4

**behalf [6]** 3/12 3/14 3/16 17/18 27/1 34/5
**being [11]** 3/18 5/12 5/14 5/20 8/17 15/24 19/2 20/23 37/8 40/21 41/1
**believe [8]** 26/6 31/3 31/13 31/14 31/15 45/16 48/16 48/17
**believing [1]** 59/21
**belongs [1]** 53/23
**below [1]** 61/4
**Bend [2]** 2/10 2/19
**benefit [1]** 25/8
**best [3]** 2/18 2/18 37/17
**better [3]** 29/22 50/22 60/13
**between [3]** 33/4 35/16 59/24
**beyond [1]** 49/21
**Bill [28]** 12/24 12/25 14/11 16/18 16/25 18/15 19/7 19/20 20/6 20/13 21/13 22/12 23/15 24/11 42/12 42/14 42/20 42/20 43/5 49/10 53/8 53/9 53/19 54/20 54/22 55/9 55/22 55/22
**binding [1]** 23/24
**biological [3]** 35/1 36/1 58/25
**bit [3]** 37/1 37/2 41/16
**blood [2]** 36/25 37/4
**body [4]** 1/7 9/7 46/8 56/20
**boils [1]** 3/21
**Bond [1]** 2/19
**bonita [4]** 2/21 2/23 61/9 61/10
**border [1]** 19/13
**borders [1]** 55/12
**both [7]** 13/18 15/11 28/16 39/7 40/13 53/3 57/4
**boundaries [1]** 9/2
**Box [1]** 2/10
**boy [1]** 55/10
**brief [3]** 10/12 44/15 45/16
**briefed [1]** 4/19
**briefing [3]** 11/10 55/8 59/7
**briefly [1]** 44/18
**Brigid [2]** 2/9 2/9
**bring [26]** 4/22 5/1 5/25 6/2 6/2 6/19 7/1 7/10 7/13 9/8 14/21 20/7 21/18 27/10 27/13 27/17 27/24 32/14 33/9 33/12 40/14 41/14 42/19 43/13 44/20 59/4
**bringing [2]** 44/22 45/4
**brings [1]** 49/3
**broad [1]** 9/20
**broader [1]** 21/5
**Broadway [1]** 2/4
**brought [25]** 4/7 5/8 5/23 8/25 9/9 12/6 13/21 14/15 17/10 19/18 20/21 22/5 22/9 32/21

40/19 40/21 43/2 43/4 43/22 43/23 43/24 44/10 45/6 46/7 50/7
**bump [1]** 23/23
**burden [2]** 41/24 41/24
**business [1]** 30/12

## C

**Cain [2]** 48/7 48/9
**call [2]** 51/7 56/12
**called [2]** 37/24 37/25
**came [1]** 18/23
**can [69]**
**can't [4]** 8/19 16/20 20/24 39/7
**Canadian [2]** 37/7 37/22
**cannot [8]** 5/13 5/21 7/11 27/10 41/1 43/24 46/10 56/24
**cap [1]** 52/18
**capacity [22]** 1/8 1/9 3/25 5/12 5/21 9/19 18/10 20/23 24/3 24/5 24/15 25/1 25/20 26/9 26/13 26/16 26/25 29/14 40/20 41/1 49/2 60/1
**caps [5]** 17/6 17/11 26/10 26/19 52/17
**careful [1]** 58/21
**carry [1]** 43/15
**carrying [2]** 42/11 42/14
**case [82]**
**cases [35]** 4/1 4/24 5/8 8/11 9/13 9/13 9/15 10/9 10/11 14/7 18/10 27/7 28/4 28/5 28/5 28/8 28/9 28/16 29/2 29/14 31/4 36/13 45/24 46/9 46/12 46/13 46/15 46/16 46/16 46/24 47/2 47/7 48/6 50/2 56/25
**category [1]** 4/24
**cause [10]** 8/1 21/10 21/12 25/2 25/19 49/10 55/19 55/21 55/25 61/6
**caused [1]** 9/1
**causes [4]** 8/3 8/12 42/23 49/9
**center [1]** 26/24
**central [3]** 11/17 19/23 28/1
**certain [4]** 13/16 13/20 29/11 40/16
**certainly [6]** 6/16 8/8 9/20 9/23 31/8 53/25
**certified [7]** 22/10 42/15 42/23 43/3 44/23 45/5 61/7
**certify [1]** 61/4
**cetera [1]** 14/22
**chairman [1]** 17/25
**challenging [1]** 47/3
**chance [1]** 41/21

**C**

**change [2]** 35/10 35/13
**chapter [14]** 12/5 20/10 20/14 20/19 22/14 22/15 23/7 23/8 40/2 40/4 42/4 43/1 43/6 51/4
**characterization [1]** 59/11
**characterizations [1]** 49/4
**characterize [1]** 49/20
**characterized [1]** 56/21
**Charles [1]** 51/5
**child [30]** 26/21 31/16 31/19 32/7 33/19 33/23 34/1 34/5 34/9 34/15 34/23 35/1 35/2 35/11 35/22 35/25 35/26 36/3 36/7 36/12 36/13 37/11 37/19 38/4 56/23 58/18 58/23 58/25 59/2 59/8
**chooses [1]** 21/25
**choosing [1]** 31/23
**chose [1]** 21/20
**circling [1]** 24/10
**Circuit [7]** 5/10 5/16 24/6 24/14 24/16 24/23 57/21
**circumstance [2]** 8/1 47/18
**circumstances [3]** 47/19 53/5 56/6
**cited [2]** 32/25 58/20
**cites [1]** 50/3
**citizen [2]** 31/15 31/16
**civil [8]** 4/1 4/10 9/14 9/16 18/10 56/4 56/5 57/19
**claim [55]** 8/25 10/5 11/22 15/3 15/8 15/13 17/10 20/3 20/5 21/21 21/22 21/24 21/24 22/1 22/9 22/16 25/3 25/8 25/15 26/3 26/11 26/20 26/24 26/25 27/10 27/17 27/18 29/14 33/2 40/14 40/19 41/1 41/6 41/14 43/2 43/4 43/13 43/14 43/22 44/22 45/2 45/4 45/15 46/7 49/2 52/18 53/5 53/22 54/3 54/9 54/11 54/13 56/8 56/10 56/11
**claimants [1]** 10/18
**claims [34]** 8/2 9/17 9/19 9/20 10/1 11/24 12/6 12/18 13/4 13/4 13/8 13/20 14/11 14/15 14/16 15/14 17/5 17/6 20/3 20/8 20/16 21/12 23/14 25/17 25/18 40/3 40/4 41/4 42/24 48/10 50/6 54/9 56/11 60/9
**clarify [1]** 54/19
**Clarke [5]** 8/11 21/1 21/3 24/23 48/6

**clause [3]** 14/18 14/19 55/9
**clear [14]** 5/11 7/24 10/25 12/6 12/10 12/21 17/1 23/19 26/23 28/10 46/23 47/11 52/19 52/24
**clearest [1]** 32/6
**clearly [3]** 11/12 24/21 57/9
**client [7]** 17/23 27/24 31/18 34/5 34/14 51/9 51/10
**close [2]** 59/6 60/9
**code [23]** 10/7 10/13 12/4 12/5 14/4 14/17 15/18 17/4 17/7 17/9 17/11 20/14 20/19 22/1 22/16 25/17 25/18 32/23 35/5 35/12 36/21 37/8 41/7
**coextensive [1]** 34/8
**colleague [2]** 18/2 36/11
**colleagues' [1]** 43/8
**College [1]** 48/8
**come [10]** 6/24 17/4 26/10 30/13 30/17 44/3 44/4 52/1 56/10 60/8
**comes [3]** 24/23 26/22 49/14
**coming [1]** 33/8
**comity [7]** 4/16 29/8 29/20 30/3 47/13 47/15 47/17
**comma [1]** 45/11
**commanded [1]** 51/18
**Commerce [2]** 28/9 46/17
**committed [8]** 42/16 50/19 50/21 50/22 51/10 53/16 59/12 59/22
**common [5]** 11/10 11/16 44/9 46/14 46/19
**community [4]** 37/6 37/11 58/23 58/24
**compared [1]** 59/4
**competent [2]** 22/19 23/9
**complaint [19]** 6/14 6/16 6/17 27/8 27/13 35/3 42/13 48/1 50/14 50/17 50/24 51/1 52/8 52/9 53/13 59/14 59/15 59/21
**complaints [2]** 51/17 59/24
**completely [1]** 54/1
**complex [2]** 18/7 47/7
**complexities [1]** 3/20
**complicated [2]** 5/8 59/5
**comply [1]** 12/25
**concerns [1]** 18/18
**conclude [3]** 28/18 30/15 41/20
**concluded [1]** 60/19
**concurrent [10]** 7/8 7/21 7/25 8/4 8/8 8/9 8/15 8/17 11/21 29/19

**condition [2]** 23/18 58/3
**conditions [3]** 20/18 40/5 40/16
**conduct [2]** 13/6 28/14
**conducted [1]** 42/10
**conducting [1]** 50/4
**CONFEDERATED [11]** 2/16 3/15 3/17 6/3 6/11 17/18 19/9 34/9 36/2 36/23 38/6
**conformed [1]** 61/7
**confronted [1]** 10/19
**Congress [1]** 56/3
**consent [1]** 23/14
**Conservator [1]** 1/3
**consider [1]** 22/3
**considerations [1]** 48/9
**considered [1]** 34/9
**considering [1]** 28/24
**constitutional [1]** 55/3
**constrain [4]** 11/2 11/4 25/19 49/2
**constrained [3]** 43/25 46/14 46/24
**constraints [1]** 10/24
**contacted [2]** 56/1 57/11
**contacts [1]** 51/25
**contemplated [1]** 16/19
**contemplates [1]** 41/7
**contemplation [8]** 12/6 12/10 12/11 12/22 14/12 14/13 14/14 15/15
**contend [3]** 40/13 40/25 44/19
**continuum [1]** 29/5
**contract [1]** 13/10
**Contractors [1]** 57/3
**contradict [1]** 59/16
**contrary [1]** 24/22
**control [1]** 23/17
**conversation [1]** 51/13
**cooperative [1]** 49/11
**copy [1]** 42/6
**Corporation [1]** 57/21
**corporations [2]** 6/5 14/6
**correct [9]** 26/16 31/3 35/23 41/3 41/15 48/4 48/16 56/13 61/5
**correctly [1]** 27/15
**coterminous [2]** 11/6 31/25
**could [22]** 4/7 4/22 5/1 9/9 9/21 11/1 11/4 11/17 15/20 15/22 15/23 21/19 23/13 27/24 32/14 32/17 39/10 39/11 41/13 43/21 43/23 58/2
**council [11]** 14/9 14/10 14/14 17/25 20/12 22/21 22/23 39/9

**C**

council... **[3]** 43/14 44/2 48/24
counsel **[6]** 3/7 11/19 11/23 49/25 52/17 57/2
counter **[1]** 52/24
country **[1]** 10/2
county **[7]** 1/7 3/6 9/10 9/10 10/17 32/9 48/14
couple **[6]** 5/3 25/11 27/16 38/13 43/20 49/24
course **[5]** 6/10 15/23 19/23 20/22 42/17
court **[168]**
court's **[2]** 11/13 43/25
Courthouse **[1]** 2/21
courts **[15]** 4/4 8/13 9/21 9/25 11/3 28/12 39/10 45/14 45/14 46/14 47/4 47/8 47/9 57/16 57/20
covered **[1]** 41/2
create **[9]** 8/3 28/5 44/14 45/18 45/20 46/6 54/24 55/6 55/17
crime **[7]** 50/19 50/21 50/22 51/10 56/22 59/12 59/22
criminal **[2]** 53/14 54/7
critical **[1]** 41/4
Crocker **[1]** 2/6
cross **[2]** 19/13 23/1
cross-border **[1]** 19/13
cross-reference **[1]** 23/1
CRR **[2]** 2/21 61/10
CSR **[2]** 2/21 61/10
culminating **[2]** 50/14 50/17
curious **[1]** 34/13
currently **[2]** 8/14 58/10
cv **[2]** 1/5 3/5

**D**

damage **[2]** 14/7 25/16
Dan **[2]** 3/12 34/6
Daniel **[1]** 2/12
DATE **[1]** 61/10
David **[1]** 19/16
Davis **[1]** 2/13
day **[1]** 6/17
deal **[5]** 13/11 15/20 16/9 16/10 44/4
dealing **[3]** 43/21 57/5 59/22
decide **[6]** 7/5 29/4 30/17 32/21 45/25 58/14
decision **[4]** 4/8 4/13 30/10 57/21
declaration **[1]** 36/11
decline **[1]** 4/21

defeat **[1]** 30/12
defendant **[22]** 2/12 3/10 5/12 5/13 5/19 5/20 6/13 7/3 11/19 14/8 24/4 24/7 25/7 25/15 25/23 25/24 26/11 26/25 31/13 38/19 48/2 60/17
defendants **[10]** 1/10 21/8 25/4 26/2 26/15 47/3 47/3 47/9 48/11 49/4
defendants' **[1]** 26/8
deference **[1]** 4/16
defined **[2]** 36/20 44/1
defines **[1]** 37/8
definition **[1]** 36/22
definitive **[1]** 16/22
delay **[1]** 58/8
denial **[1]** 29/1
Department **[1]** 42/11
depend **[1]** 40/9
depending **[3]** 10/2 11/14 13/20
depends **[1]** 6/16
described **[1]** 4/15
describes **[2]** 10/14 59/21
describing **[2]** 16/15 44/13
destroy **[2]** 9/21 49/9
determine **[1]** 58/16
develop **[1]** 29/22
developed **[2]** 11/11 28/3
development **[1]** 34/7
did **[7]** 6/15 10/16 19/8 21/19 57/25 58/2 59/18
didn't **[2]** 37/16 46/19
difference **[1]** 59/23
different **[12]** 4/13 8/3 26/12 26/14 39/6 41/16 47/7 47/8 47/9 53/4 53/6 57/8
differently **[2]** 4/15 26/14
direction **[2]** 51/22 51/23
disagree **[2]** 44/6 44/7
disagreeing **[1]** 24/13
disagreement **[1]** 10/25
discern **[1]** 49/6
discovery **[7]** 11/11 58/24 59/8 59/17 59/24 59/25 60/9
discretion **[1]** 60/13
discretionary **[1]** 28/24
discussed **[2]** 18/13 59/15
discussion **[1]** 20/21
disjunctive **[6]** 38/16 38/21 43/9 43/15 44/22 45/11
dismiss **[1]** 53/3
displace **[1]** 9/24
dispositive **[1]** 57/25
dispute **[2]** 42/13 55/4

disputed **[2]** 42/17 47/10
disputes **[1]** 57/19
distinction **[1]** 47/11
distinguish **[1]** 35/15
distinguishable **[1]** 57/4
DISTRICT **[4]** 1/1 1/2 1/17 2/21
diversity **[5]** 4/21 11/7 25/14 30/7 30/12
divested **[1]** 57/17
do **[53]** 4/21 7/5 8/16 9/13 11/1 11/4 15/16 15/21 16/21 17/12 17/24 20/9 21/17 24/9 24/12 25/10 25/18 30/2 31/12 31/18 31/19 32/4 32/20 33/11 33/15 33/22 33/25 34/4 34/19 38/12 38/21 42/19 42/21 43/8 44/6 44/7 46/10 46/12 47/12 48/25 50/15 50/20 50/23 53/25 55/6 57/8 57/9 58/7 58/8 59/6 59/11 60/7 60/17
doctrine **[1]** 20/25
does **[17]** 9/19 11/25 12/12 13/22 29/15 30/22 31/1 35/10 35/13 37/20 38/24 38/25 40/20 41/9 43/15 44/13 58/24
doesn't **[25]** 6/12 7/4 10/15 21/7 23/4 23/10 23/20 27/17 28/19 33/15 35/15 37/10 38/6 39/12 44/7 51/12 51/24 53/13 53/20 53/21 54/8 54/11 54/24 55/3 59/14
doing **[3]** 14/15 42/15 53/12
domicile **[1]** 37/14
domiciled **[4]** 31/17 36/7 37/11 37/16
don't **[39]** 6/21 6/22 8/23 10/24 11/6 16/2 17/12 17/12 23/24 24/17 26/10 28/9 30/11 33/6 34/2 34/2 35/8 36/6 36/6 36/15 37/14 37/17 37/21 41/25 41/25 42/5 47/11 51/1 52/9 52/12 54/9 54/11 55/4 55/16 57/2 58/11 58/19 58/21 58/25
done **[5]** 39/18 42/1 42/2 42/3 60/5
doubts **[1]** 30/24
down **[8]** 3/21 4/13 22/3 30/10 37/1 37/2 39/20 52/1
drafters **[1]** 12/11
ducks **[1]** 60/11
during **[1]** 26/9
duties **[3]** 20/23 27/1 42/14

**E**

E.J.T **[6]** 1/3 3/5 31/16 49/3

**E**

E.J.T... [2] 50/25 52/1
E.J.T.'s [1] 51/6
each [2] 40/9 54/2
Earle [1] 2/13
earlier [2] 38/10 43/16
easily [1] 17/13
effectuated [1] 49/7
effort [1] 49/5
efforts [1] 46/1
either [9] 4/7 4/16 6/13 10/3 13/21 22/20 26/14 54/10 56/8
EJT [1] 52/5
eligible [1] 36/14
elsewhere [3] 9/9 9/9 45/3
embark [1] 58/15
emphasis [1] 45/15
emphasize [1] 47/13
employed [1] 55/24
employees [9] 20/17 22/18 22/22 22/25 23/2 40/1 40/8 40/16 40/22
employer [1] 58/2
employment [1] 58/3
enabling [1] 12/3
enacted [5] 12/23 19/7 43/1 44/9 52/25
enactment [10] 14/9 14/10 14/23 20/13 39/1 39/4 39/17 39/22 43/10 43/14
enactments [5] 12/2 44/25 46/6 48/8 56/19
encapsulated [1] 56/9
end [2] 46/21 48/14
ends [1] 27/11
enforce [2] 15/11 21/15
enforcement [21] 13/1 13/9 13/16 15/21 16/5 18/18 19/13 19/19 21/10 21/11 22/11 24/3 25/2 25/6 27/2 40/23 44/23 45/5 49/12 50/9 55/24
enforcing [1] 19/20
engage [1] 37/25
engaged [2] 45/9 53/9
enough [5] 27/9 29/6 29/22 30/3 30/9
enrolled [22] 8/25 9/1 9/6 9/7 28/7 28/15 31/14 31/16 31/21 31/24 33/21 33/23 34/25 35/7 35/16 35/17 35/22 35/25 36/1 36/15 37/9 57/24
enrollment [1] 34/8
enterprises [2] 20/17 22/18
entire [1] 59/14

entirely [2] 14/19 27/12
entities [3] 6/5 14/7 15/4
entitled [2] 52/23 61/6
envision [1] 14/1
era [1] 18/15
Erin [3] 2/3 2/3 3/9
escape [1] 41/1
especially [3] 16/25 26/7 37/22
essentially [2] 15/1 24/6
established [2] 55/13 58/15
et [2] 3/6 14/22
et cetera [1] 14/22
etc [1] 40/1
evaluate [1] 19/10
even [9] 4/17 4/23 11/17 12/17 28/19 40/25 46/9 50/21 56/20
events [1] 50/12
ever [1] 52/5
every [1] 5/6
everyone's [1] 5/2
evidence [1] 16/11
exact [1] 55/23
exactly [1] 33/20
example [6] 15/8 25/24 30/7 30/11 35/18 58/22
exceptions [2] 5/6 5/7
exchange [2] 16/14 16/14
exclusive [23] 4/5 4/11 4/13 7/8 7/21 8/5 8/16 8/20 8/24 9/14 9/16 9/24 10/5 11/21 16/3 16/7 16/21 18/11 19/25 21/10 27/7 56/2 58/9
exclusively [5] 10/9 10/11 12/14 12/18 20/6
exclusivity [7] 12/12 12/16 13/18 13/23 16/16 23/11 32/11
excuse [6] 8/5 19/15 20/12 23/7 54/3 55/9
exempted [1] 56/4
exercise [6] 4/4 4/14 8/9 13/1 15/20 46/1
exercising [2] 54/6 54/8
exhaustion [3] 4/17 47/14 47/17
exist [1] 40/10
existed [1] 55/21
existing [1] 55/11
exists [1] 41/19
expect [1] 59/7
explicitly [1] 22/20
express [1] 23/19
expressed [1] 13/4
expressly [3] 23/8 51/12 52/12
extend [3] 9/19 10/15 56/24
extent [2] 10/22 48/5

**F**

fact [4] 10/16 27/10 36/10 42/2
factor [1] 48/11
factors [13] 4/8 4/18 5/24 10/3 13/21 28/2 28/13 29/3 29/6 29/11 32/20 36/6 38/14
facts [12] 26/18 28/15 29/18 32/4 35/4 44/14 48/10 50/2 53/9 55/23 57/5 59/10
factual [1] 58/22
fail [1] 53/21
fails [1] 24/16
failure [1] 53/4
fair [5] 6/14 21/13 53/12 55/2 59/13
fairly [2] 9/3 57/9
fall [1] 24/4
far [3] 18/13 38/22 56/24
father [4] 34/25 35/2 36/1 36/1
father's [1] 58/25
favor [2] 25/5 51/18
feature [1] 26/22
federal [31] 4/21 8/13 9/25 9/25 10/4 11/9 11/9 11/16 11/16 13/19 17/4 17/10 21/6 22/20 25/14 28/11 44/1 44/6 44/9 45/24 45/25 46/8 46/9 46/14 46/19 46/24 48/11 48/23 49/1 50/7 56/20 57/17
federally [1] 37/5
feel [2] 19/1 60/13
few [2] 42/21 54/18
fight [3] 46/20 46/20 47/9
figure [1] 56/15
filed [3] 15/14 15/14 15/15
final [2] 50/1 53/2
find [13] 8/2 9/24 10/2 12/13 12/15 12/22 20/9 20/10 33/11 47/17 47/23 47/23 52/22
finish [1] 52/1
first [19] 3/23 3/23 4/10 7/7 7/8 7/14 7/16 7/18 8/19 9/12 11/20 12/9 17/19 18/9 25/13 32/18 33/11 33/14 55/15
fit [1] 23/18
FMC [1] 57/21
focus [3] 4/19 12/9 31/1
focused [1] 45/12
folks [1] 15/13
follow [2] 45/11 48/4
followed [1] 45/8
footing [1] 60/6
force [1] 55/17
foregoing [1] 61/4

## F

**forget** [1] 41/25
**form** [1] 4/16
**forth** [4] 20/18 40/5 44/15 45/9
**forums** [1] 8/2
**found** [5] 26/12 26/15 44/21 45/3 46/9
**founded** [1] 55/22
**fragile** [1] 58/11
**frame** [1] 57/9
**framed** [2] 11/12 40/25
**frankly** [1] 58/19
**free** [1] 39/9
**front** [7] 5/19 6/21 11/12 31/11 32/4 42/4 47/20
**fully** [1] 49/7
**functions** [1] 50/9
**fundamental** [2] 21/15 23/16
**fundamentally** [2] 3/21 25/14
**further** [7] 3/19 4/2 34/7 41/9 48/20 54/17 59/9
**futile** [6] 4/22 7/9 27/9 27/10 27/24 28/18
**futility** [2] 32/12 41/18

## G

**gap** [1] 59/6
**Garcia** [1] 8/12
**Garfield** [1] 2/7
**general** [3] 3/25 3/25 9/21
**generally** [1] 57/16
**generous** [1] 21/22
**geographic** [1] 43/16
**geographical** [2] 27/20 38/1
**get** [19] 12/10 12/11 13/14 13/15 13/24 16/2 23/13 24/9 24/10 24/13 29/3 30/13 34/12 38/16 41/23 42/1 42/18 51/24 52/3
**gets** [1] 40/12
**getting** [2] 16/4 60/14
**give** [3] 8/2 47/4 51/19
**given** [2] 7/6 29/18
**giving** [3] 16/5 16/7 17/19
**Glendon** [1] 18/2
**go** [11] 4/17 12/19 21/23 22/8 25/23 30/16 33/7 41/13 42/19 51/22 60/7
**goal** [2] 18/5 18/5
**going** [13] 4/19 13/24 15/14 20/20 21/9 21/17 28/20 32/18 34/11 44/4 48/14 51/6 58/8
**good** [1] 24/21
**got** [10] 15/21 17/25 40/7 42/6

42/7 49/24 50/1 52/15 54/23 56/10
**governing** [1] 4/1
**government** [7] 11/1 11/4 13/19 20/4 20/6 45/14 57/16
**government's** [1] 13/5
**governments** [2] 54/23 55/11
**grandmother** [1] 57/10
**grant** [2] 29/1 30/12
**great** [1] 24/19
**guess** [8] 6/14 6/23 9/4 9/12 16/14 26/13 34/17 54/20
**guide** [1] 7/17

## H

**had** [16] 9/6 12/4 14/4 19/11 22/4 37/15 42/4 43/2 46/17 50/22 51/10 53/2 53/10 55/22 56/10 58/3
**handle** [1] 4/1
**handles** [1] 36/12
**happen** [1] 23/20
**happened** [2] 52/10 54/6
**happy** [1] 46/3
**harm** [6] 9/1 28/8 29/4 30/21 31/2 32/7
**has** [35] 3/24 5/10 5/16 6/7 6/8 7/9 9/14 9/16 11/8 15/7 18/9 20/15 21/9 23/13 23/16 24/6 24/14 27/5 29/12 29/17 29/25 30/20 30/24 31/6 31/9 38/15 38/17 44/9 45/2 46/24 50/10 56/3 56/18 57/3 59/11
**Hasson** [3] 2/12 3/12 34/6
**have** [60] 3/24 4/18 5/19 8/17 8/21 8/21 9/22 10/12 11/7 13/19 15/3 15/13 16/21 17/5 18/1 19/16 21/22 22/24 22/24 24/15 24/18 24/21 25/8 25/15 25/25 26/3 26/12 27/6 27/19 28/2 29/2 29/15 30/16 30/17 36/14 38/14 38/14 45/8 45/12 45/15 46/20 46/20 47/7 47/15 48/12 48/25 50/25 50/25 51/6 51/13 51/24 53/14 53/17 54/11 54/13 55/3 58/16 59/15 60/11 60/17
**haven't** [1] 34/3
**having** [4] 11/21 14/18 44/5 47/19
**he** [20] 20/24 25/25 26/1 26/1 26/4 26/6 26/8 32/17 42/15 51/3 51/25 52/1 52/4 53/9 53/10 53/12 53/18 54/6 54/7 59/21

**he'd** [1] 60/2
**he's** [12] 24/25 26/12 26/14 26/15 26/16 31/14 31/21 31/23 32/17 33/20 33/21 52/3
**hear** [7] 3/19 3/19 7/17 18/24 46/21 53/7 59/18
**heard** [7] 25/23 41/9 41/10 49/3 49/19 52/17 58/19
**hearing** [1] 17/20
**help** [4] 18/7 36/9 39/21 46/2
**helpful** [1] 58/6
**helps** [1] 35/21
**Henderson** [3] 2/13 3/10 49/23
**Henderson's** [1] 56/7
**here** [35] 3/4 3/14 4/20 5/8 8/8 10/21 13/22 13/24 15/10 17/5 17/9 20/11 29/20 29/22 30/4 30/14 36/15 38/2 39/19 40/9 41/5 42/7 43/11 46/1 46/23 46/25 48/9 52/16 52/22 54/6 56/16 58/7 58/21 59/19 60/13
**Hicks** [5] 8/21 28/5 46/16 48/17 57/4
**him** [2] 52/10 58/4
**himself** [2] 20/24 24/24
**his** [24] 1/3 1/8 1/8 5/12 5/20 20/23 20/23 24/3 24/4 24/25 25/19 26/9 26/20 27/1 40/20 42/14 43/4 53/10 54/6 57/10 58/1 58/2 58/3 58/3
**hold** [3] 18/6 20/11 52/22
**holdings** [1] 31/4
**home** [3] 10/2 46/25 51/24
**Honor** [38] 8/18 9/17 10/21 17/16 18/5 19/7 19/15 20/10 20/20 21/7 21/19 22/9 22/15 23/3 24/19 25/6 25/11 26/20 28/2 30/3 34/6 34/21 36/5 37/13 41/11 42/3 43/2 44/15 45/10 46/3 47/12 48/5 48/16 54/18 54/20 55/7 56/13 57/8
**HONORABLE** [1] 1/16
**hook** [1] 9/10
**hope** [1] 24/20
**hopefully** [1] 18/6
**hoping** [1] 54/18
**Hospital** [1] 51/5
**hour** [1] 54/14
**how** [8] 4/8 7/5 24/9 24/12 48/2 58/23 59/6 60/7
**Howie** [1] 18/2
**hypothetical** [1] 9/5
**hypothetical's** [1] 35/20

**I**

**I'll [12]** 3/19 4/15 7/17 11/19 34/12 36/21 41/23 48/19 56/12 59/17 60/4 60/7

**I'm [50]** 4/19 7/4 8/23 9/12 12/8 12/8 14/3 16/4 16/5 16/6 16/11 18/20 18/25 18/25 19/1 20/20 25/21 25/22 28/9 28/20 28/24 28/25 28/25 30/2 31/23 32/18 33/6 34/11 34/13 34/22 35/21 36/18 38/2 39/8 43/10 43/11 43/21 44/4 47/1 48/13 49/18 49/19 51/8 51/18 55/20 58/7 58/7 59/6 60/4 60/10

**I've [13]** 17/25 41/10 42/6 42/7 48/22 49/3 49/19 49/24 51/1 51/8 52/15 58/18 59/23

**idea [4]** 10/4 45/1 47/25 56/7

**identified [1]** 15/4

**identities [1]** 31/12

**identity [6]** 10/3 28/7 29/3 30/20 31/1 32/18

**immaterial [1]** 57/23

**immunity [32]** 5/6 5/7 5/9 5/13 5/21 13/3 13/7 13/13 13/17 13/20 13/22 14/15 15/22 15/23 16/6 16/6 19/17 19/21 20/11 20/24 20/25 21/5 21/6 23/17 23/20 24/2 24/7 24/8 24/9 24/25 54/8 56/9

**implement [1]** 42/9

**implementation [3]** 15/17 16/25 39/19

**implementing [1]** 14/11

**implicated [1]** 19/22

**implication [1]** 21/2

**important [11]** 5/10 5/19 10/21 18/14 18/17 19/21 21/2 24/17 32/21 55/5 60/15

**impossible [1]** 59/20

**Inc [1]** 1/4

**include [2]** 38/25 38/25

**including [4]** 6/4 23/20 37/7 40/22

**inconsistent [1]** 54/2

**incorporation [1]** 30/11

**incorrect [1]** 10/6

**increase [1]** 55/4

**incredibly [1]** 37/25

**independent [2]** 39/13 46/5

**Indian [51]** 6/7 6/8 6/12 6/13 6/20 7/1 7/3 7/15 10/1 10/18 10/18 14/8 15/8 31/19 31/23 32/9 33/21 34/1 34/5 34/9

34/15 35/6 35/11 36/2 36/4 36/12 36/20 36/22 36/25 37/4 37/5 37/7 37/7 37/8 38/4 38/12 38/15 38/19 38/25 50/13 56/23 56/23 57/6 57/13 57/15 57/25 57/25 58/18 59/2 59/8 59/12

**Indians [12]** 6/3 6/4 6/6 14/6 14/22 15/12 33/1 33/4 33/15 37/22 39/11 57/12

**individual [17]** 1/8 1/9 5/12 5/21 6/6 9/19 24/4 24/7 24/14 25/20 26/19 26/25 29/13 33/3 40/20 41/1 49/2

**individuals [2]** 8/13 24/14

**indulge [1]** 17/22

**inference [4]** 51/13 51/17 51/19 51/22

**inferences [2]** 51/16 52/6

**inform [1]** 4/8

**informal [1]** 60/18

**information [2]** 29/23 58/22

**informed [2]** 28/2 48/11

**informs [1]** 10/22

**infringe [1]** 8/10

**inherent [1]** 56/17

**initial [1]** 7/7

**injury [1]** 14/7

**inquiries [1]** 31/5

**instance [2]** 8/19 49/9

**instead [1]** 53/10

**integrity [1]** 56/16

**intended [1]** 42/9

**intent [5]** 12/11 12/20 49/5 49/6 52/24

**intention [1]** 46/10

**interaction [1]** 57/14

**interest [1]** 56/16

**interested [1]** 59/17

**interfere [1]** 57/15

**interject [1]** 36/17

**interrupt [1]** 33/6

**intervenors [2]** 17/15 17/15

**interviewed [1]** 52/4

**introduce [1]** 17/23

**InTrustment [1]** 1/4

**investigating [2]** 53/11 53/18

**investigation [4]** 26/9 50/5 50/18 52/2

**invoked [1]** 53/10

**involve [1]** 47/2

**involved [4]** 19/4 23/6 34/22 49/11

**involvement [1]** 26/9

**involves [1]** 10/17

**involving [1]** 56/23

**is [281]**

**isn't [2]** 9/20 51/21

**issue [10]** 5/14 34/8 34/8 49/25 53/4 53/6 53/7 53/14 57/8 58/8

**issues [3]** 18/7 18/8 42/18

**it [141]**

**it's [59]** 4/6 4/14 5/5 5/8 6/11 6/14 7/24 8/15 8/16 9/23 13/11 14/11 16/21 18/14 18/25 19/15 19/22 19/23 21/7 22/23 27/5 27/8 29/19 30/22 33/17 33/20 33/21 33/22 33/24 36/10 37/7 39/13 39/24 40/3 40/7 41/18 42/8 47/12 50/3 50/5 50/7 50/11 52/3 52/3 53/13 54/10 54/12 54/13 55/2 55/5 55/7 56/8 56/10 57/23 58/15 59/5 59/19 60/8 60/17

**its [18]** 10/23 20/16 21/25 22/1 22/17 23/15 23/17 30/23 30/24 35/5 35/5 39/10 40/8 40/14 40/21 56/3 56/16 56/17

**itself [4]** 9/18 19/23 43/10 54/21

**J**

**JEFFERSON [6]** 1/7 3/5 9/10 10/17 32/8 48/13

**Jonathan [3]** 2/13 3/10 36/19

**Josh [2]** 2/17 3/14

**JR [2]** 1/5 3/5

**judge [6]** 1/17 33/8 36/17 44/19 47/15 47/20

**judgment [1]** 60/9

**judicial [1]** 54/24

**jurisdiction [99]**

**jurisdictional [7]** 9/10 10/2 28/23 36/10 53/7 58/16 60/4

**just [35]** 6/22 12/4 12/9 14/4 17/4 17/5 17/7 25/1 25/22 28/20 32/11 33/7 34/11 34/13 35/10 35/20 37/9 37/12 37/15 39/1 39/3 39/13 42/1 42/4 44/1 44/25 45/4 48/22 50/1 51/23 52/25 54/14 55/1 55/8 55/15

**K**

**keep [5]** 29/20 29/21 30/1 30/6 30/9

**Kelly [2]** 2/6 3/8

**kind [1]** 5/23

**knew [1]** 50/20

**know [33]** 5/15 5/15 6/21 6/22 9/5 18/3 22/22 30/11 30/16 31/12 31/13 31/14 31/15 31/18

**K**

**know...** [19]  31/19 31/21 32/4 33/7 34/18 35/8 36/7 36/15 37/17 37/21 37/24 39/20 42/5 45/5 48/5 58/21 58/25 60/3 60/4
**knowledge** [1]  37/10
**knows** [1]  60/2
**Kootenai** [1]  48/8
**Krieger** [2]  2/18
**Kurtz** [1]  18/17

**L**

**lack** [1]  26/1
**laid** [2]  17/3 17/11
**Lander** [1]  2/7
**lands** [3]  55/12 57/13 57/15
**language** [9]  12/13 12/15 12/20 16/20 16/22 22/7 37/16 43/11 51/9
**large** [1]  48/1
**last** [3]  25/12 25/22 54/14
**later** [2]  29/23 30/17
**law** [75]
**laws** [4]  8/1 11/2 21/16 55/13
**laws of** [1]  11/2
**lawyers** [1]  45/10
**learn** [6]  22/4 30/17 41/13 50/20 50/23 59/17
**learned** [2]  51/3 51/9
**least** [15]  5/17 6/9 6/13 8/21 10/13 18/22 21/22 27/5 29/22 47/16 48/1 56/22 59/8 59/9 60/1
**leave** [1]  60/7
**legal** [4]  6/5 14/6 18/8 47/1
**legislation** [3]  49/12 49/16 49/19
**legislative** [9]  17/1 18/23 19/2 19/3 19/5 19/5 19/6 19/12 20/13
**legislature** [11]  19/8 20/1 24/11 26/23 49/5 49/9 49/21 52/19 52/24 55/3 55/17
**legislature's** [1]  49/1
**lens** [1]  41/16
**less** [1]  5/18
**let** [4]  9/12 23/23 24/12 41/25
**let's** [5]  9/20 22/15 35/9 42/1 45/23
**level** [1]  45/12
**Lewis** [5]  8/11 21/1 21/3 24/23 48/6
**liability** [1]  25/25

**lie** [1]  55/12
**lies** [1]  57/20
**light** [1]  18/7
**like** [43]  4/3 4/5 4/6 4/11 4/12 4/24 5/11 6/12 6/18 7/16 8/11 9/9 9/22 11/22 15/9 16/22 17/5 17/22 19/1 23/10 23/24 25/1 27/7 28/4 28/5 28/9 29/5 29/5 36/8 42/5 44/17 46/15 46/16 46/16 47/11 49/14 49/25 50/2 56/21 58/11 58/24 59/25 60/3
**limit** [5]  25/8 25/16 26/10 26/17 26/18
**limitation** [3]  25/25 27/20 43/16
**limitations** [7]  20/18 28/6 28/12 40/5 40/16 45/3 45/13
**limited** [2]  27/1 42/10
**limiting** [1]  5/24
**limits** [7]  21/21 21/22 21/24 25/3 48/23 49/1 49/8
**line** [3]  28/13 29/6 30/10
**listing** [2]  12/24 14/20
**litigant** [12]  5/25 6/19 7/13 14/25 15/1 15/5 27/17 38/12 39/14 44/21 46/17 59/3
**litigants** [9]  6/2 10/18 14/21 28/7 29/3 33/9 33/12 44/20 47/8
**little** [5]  24/12 37/1 37/2 41/16 45/1
**live** [1]  37/22
**lived** [1]  37/19
**living** [1]  35/1
**LLC** [1]  2/9
**LLP** [1]  2/18
**load** [1]  44/25
**location** [6]  28/8 29/4 30/21 31/2 32/3 33/3
**logical** [1]  15/12
**long** [4]  18/3 29/22 30/9 60/10
**look** [18]  5/22 8/20 12/2 12/3 12/19 12/20 13/25 14/2 14/5 14/10 16/17 28/8 28/15 29/2 32/6 33/11 45/17 57/11
**looking** [5]  14/3 28/25 28/25 45/25 48/5
**looks** [2]  6/12 6/18
**losing** [1]  43/11
**lost** [1]  25/15
**lot** [3]  11/15 15/19 49/3
**luxury** [1]  24/18

**M**

**made** [4]  4/9 5/10 52/19 56/19

**magistrate** [1]  47/20
**main** [2]  27/23 31/5
**make** [15]  10/20 17/1 21/23 24/16 30/10 33/7 35/20 37/17 47/11 49/25 50/15 52/7 53/2 55/15 55/18
**makes** [6]  10/9 15/9 15/19 16/1 16/15 55/2
**making** [1]  29/10
**mandatory** [1]  26/21
**manner** [1]  13/3
**March** [2]  1/7 3/2
**Market** [1]  2/14
**mask** [1]  18/25
**match** [2]  58/19 59/14
**matter** [9]  9/23 11/4 11/13 46/19 47/24 48/2 53/11 53/15 57/17
**matters** [1]  47/1
**Maxwell** [1]  8/11
**may** [10]  17/16 20/2 22/18 24/15 32/1 36/14 38/4 38/4 38/5 61/9
**maybe** [1]  3/25
**me** [50]  5/19 6/21 7/23 8/5 9/12 10/6 12/12 12/15 13/18 13/22 15/19 16/1 16/7 17/22 18/6 18/24 19/15 20/12 22/3 22/4 23/8 23/23 23/24 24/6 24/12 29/2 30/2 30/3 31/11 32/4 37/16 39/21 41/25 42/4 45/24 46/2 46/2 46/4 51/2 51/9 52/6 54/2 54/3 54/5 55/9 58/24 59/18 59/19 59/25 60/8
**mean** [14]  5/1 5/7 6/25 15/20 16/6 19/6 24/15 28/24 29/22 33/6 33/13 33/18 37/20 41/5
**meaning** [4]  12/11 14/25 15/7 23/5
**meaningful** [1]  21/16
**meaningless** [1]  17/8
**means** [8]  5/17 29/21 30/15 33/25 34/3 34/18 36/22 39/9
**meet** [1]  33/15
**Mellor** [2]  51/14 51/25
**member** [14]  9/6 9/7 34/25 35/7 35/22 35/25 36/1 36/23 36/25 37/5 53/16 57/24 59/12 59/23
**members** [4]  35/16 35/17 37/9 56/3
**membership** [1]  36/14
**mention** [2]  23/8 55/8
**mentioned** [2]  12/4 14/4
**mentions** [1]  23/9

**M**

**merely** [1] 55/23
**merits** [1] 56/15
**message** [2] 59/13 59/16
**MICHAEL** [1] 1/16
**middle** [1] 18/1
**might** [14] 4/24 5/4 6/24 9/22 15/13 29/8 30/9 47/22 50/16 54/13 58/21 59/16 60/8
**mind** [1] 49/14
**minimum** [2] 29/15 36/4
**minor** [16] 1/3 31/15 31/19 33/18 33/23 34/1 34/4 34/15 34/23 35/11 35/22 35/25 36/3 37/19 38/3 58/18
**minus** [1] 16/4
**minute** [3] 34/11 41/24 44/5
**mix** [1] 48/21
**modifies** [1] 39/8
**modify** [1] 39/12
**moment** [4] 20/20 35/9 35/10 45/12
**monitors** [1] 30/23
**Monkton** [3] 2/18 3/16 36/12
**more** [12] 11/7 11/17 24/12 27/12 29/5 30/17 36/6 39/21 52/15 58/20 58/21 60/6
**MOSMAN** [1] 1/16
**most** [2] 9/17 15/12
**mother** [3] 36/2 51/6 57/10
**motion** [2] 10/19 53/3
**moved** [1] 32/11
**moving** [1] 6/16
**Mr** [5] 2/6 2/12 2/13 2/17 57/2
**Mr.** [10] 18/3 48/20 49/23 50/10 50/20 54/17 56/7 56/18 56/22 59/11
**Mr. Arnett** [1] 18/3
**Mr. Aryanfard** [1] 50/20
**Mr. Henderson** [1] 49/23
**Mr. Henderson's** [1] 56/7
**Mr. Newton** [1] 54/17
**Mr. Rudd** [4] 48/20 50/10 56/18 56/22
**Mr. Rudd's** [1] 59/11
**Ms** [3] 2/3 2/9 2/18
**Ms.** [1] 36/12
**Ms. Monkton** [1] 36/12
**much** [16] 11/18 17/14 19/22 25/9 32/10 36/16 38/2 40/4 41/5 41/8 43/18 49/22 54/16 58/5 60/6 60/7
**multiple** [1] 8/2
**must** [6] 9/8 16/7 16/8 22/12

27/19 43/5
**my** [28] 3/23 4/2 4/10 4/20 5/10 5/15 6/9 6/25 7/7 7/12 8/21 9/4 9/17 11/20 16/14 17/23 18/5 24/20 30/24 35/20 36/11 36/13 45/12 47/16 48/19 58/14 58/16 60/12

**N**

**N.E** [1] 2/4
**name** [1] 3/7
**narrower** [1] 21/7
**native** [1] 37/7
**natives** [1] 37/23
**necessarily** [6] 7/21 16/3 27/19 41/18 48/1 54/3
**need** [4] 11/11 13/7 36/6 36/7
**needed** [1] 58/22
**neither** [5] 23/2 23/5 23/6 23/7 40/12
**Nevada** [5] 8/20 28/5 46/16 48/17 57/4
**never** [3] 13/18 48/14 53/19
**nevertheless** [1] 27/8
**Newton** [3] 2/17 3/14 54/17
**next** [2] 22/8 37/17
**nexus** [1] 48/10
**nine** [1] 18/21
**Ninth** [7] 5/10 5/16 24/6 24/13 24/16 24/23 57/21
**no** [34] 1/5 2/4 3/5 16/21 19/15 20/12 20/15 21/5 26/16 26/18 26/19 29/12 29/24 29/24 29/25 35/10 35/10 35/13 36/9 37/13 41/21 41/22 42/13 47/13 47/23 48/2 49/10 52/17 52/18 54/9 55/19 55/25 56/5 56/8
**No.** [1] 42/8
**No. 93** [1] 42/8
**nobody** [2] 24/7 60/2
**non** [28] 6/4 6/6 6/7 6/12 8/25 9/1 10/18 14/6 14/22 15/8 15/12 28/14 28/15 31/14 31/21 31/24 33/1 33/4 36/2 38/12 38/25 39/11 50/13 56/23 56/23 57/25 59/12 59/12
**non-enrolled** [6] 8/25 9/1 28/15 31/14 31/21 31/24
**non-Indian** [12] 6/12 10/18 15/8 36/2 38/12 38/25 50/13 56/23 56/23 57/25 59/12
**non-Indians** [8] 6/4 6/6 14/6 14/22 15/12 33/1 33/4 39/11
**non-reservation** [1] 28/14
**non-tribal** [1] 59/12

**nondiscretionarily** [1] 22/13
**nonmembers** [1] 57/19
**nonmoving** [1] 51/19
**normally** [1] 28/24
**Northwest** [1] 1/4
**not** [101]
**not taking** [1] 56/14
**note** [1] 49/15
**noteworthy** [1] 47/13
**nothing** [6] 8/16 9/23 11/1 11/3 51/21 55/10
**notifying** [1] 51/6
**notions** [1] 29/19
**now** [15] 11/12 19/21 23/3 24/5 24/5 24/7 30/20 31/11 32/5 32/11 34/18 38/3 42/17 55/2 56/6
**nuances** [1] 4/25
**nucleus** [2] 28/15 29/18
**number** [2] 3/20 4/18
**Nurse** [3] 50/25 51/14 51/25

**O**

**o0o** [1] 61/2
**objections** [1] 53/3
**objective** [1] 17/1
**obligation** [2] 26/21 26/24
**occasionally** [1] 15/21
**occupation** [1] 56/3
**occurred** [2] 32/8 55/23
**occurring** [1] 56/22
**off** [9] 15/11 28/14 30/21 31/17 37/19 50/12 56/22 59/12 60/18
**off-reservation** [1] 28/14
**offered** [2] 21/4 21/5
**Office** [1] 2/3
**officer** [34] 3/11 3/12 13/6 17/2 20/22 21/10 21/11 22/10 22/10 23/25 24/24 25/2 25/7 33/5 40/20 42/14 42/15 43/3 43/4 44/23 45/5 50/4 50/18 51/14 52/22 55/23 55/24 56/1 57/11 57/14 57/24 59/18 59/21 59/25
**officer's** [1] 42/24
**officers** [15] 13/16 15/11 17/3 18/19 20/17 21/14 22/18 40/1 40/8 40/15 40/21 50/9 52/20 52/21 51/18
**officers'** [1] 19/19
**official** [6] 24/3 24/3 27/1 40/22 54/4 61/11
**officials** [1] 9/18
**often** [1] 9/17
**okay** [6] 18/24 21/14 34/19 42/18 47/12 52/13

**O**

**Olson [3]** 2/3 2/3 3/9
**omission [1]** 51/23
**once [2]** 19/7 39/20
**one [29]** 4/3 4/19 4/20 5/10 5/25 6/3 6/12 6/15 13/1 14/21 23/1 27/16 29/16 31/19 33/14 34/14 38/3 38/9 38/20 39/21 40/12 42/22 44/21 49/14 50/10 52/14 54/10 56/21 58/18
**ones [1]** 23/5
**only [23]** 4/20 5/7 5/11 5/19 6/18 7/12 12/14 15/24 16/21 21/13 22/20 23/13 23/22 25/7 25/24 30/9 32/16 33/9 42/10 46/21 53/12 54/21 60/18
**only reasonable [1]** 23/22
**opened [1]** 41/17
**operative [4]** 29/18 32/4 48/10 59/10
**opportunity [1]** 17/19
**opposed [2]** 11/21 44/1
**opt [3]** 19/12 21/19 42/21
**opting [2]** 20/2 23/15
**opts [1]** 20/13
**oral [3]** 1/14 3/4 58/7
**ord.uscourts.gov [1]** 2/23
**order [4]** 12/25 12/25 13/14 13/15
**ordered [1]** 24/6
**ordinance [10]** 20/12 21/23 22/21 22/24 22/24 42/8 43/1 44/2 44/12 45/18
**ordinarily [1]** 23/3
**OREGON [46]** 1/2 1/10 2/17 3/15 3/17 9/22 11/3 11/8 12/2 13/4 13/19 14/13 15/11 18/15 18/15 18/16 18/22 18/23 19/8 19/10 20/1 21/9 21/12 26/21 26/23 31/15 31/16 31/17 36/24 49/1 49/5 49/8 49/21 52/19 53/5 53/13 53/14 53/17 53/20 53/21 54/22 55/3 55/5 55/13 55/17 55/19
**organizations [3]** 20/16 22/17 40/15
**original [1]** 61/6
**ORS [1]** 52/19
**other [45]** 5/22 6/5 6/6 7/5 10/3 10/10 10/20 11/16 13/2 13/17 13/21 14/6 14/20 16/17 17/6 19/9 21/8 21/21 22/19 23/9 25/4 25/25 26/2 31/20 34/14 36/24 37/4 37/5 38/13 40/9

40/13 41/10 45/3 45/10 45/23 50/8 51/22 51/23 52/14 52/14 52/21 54/2 54/11 55/6 60/9
**otherwise [6]** 10/8 15/18 29/8 36/23 40/8 44/9
**ought [2]** 4/8 50/13
**our [39]** 4/22 5/1 6/5 6/11 6/18 6/20 7/12 8/1 8/6 9/5 10/12 11/10 12/2 17/9 18/1 18/5 25/20 26/7 28/12 28/13 29/14 32/16 35/13 44/12 44/15 44/15 45/14 45/16 45/18 52/23 53/3 53/8 53/19 53/22 53/22 54/10 55/7 57/11 57/23
**ours [1]** 18/2
**out [23]** 5/17 6/10 11/17 17/3 17/7 17/11 19/19 23/4 27/11 29/8 30/13 30/16 42/11 42/14 42/23 44/20 46/17 48/3 50/1 53/1 56/15 57/19 59/20
**outlined [1]** 10/12
**outside [1]** 9/1
**over [14]** 4/5 4/11 8/25 9/22 11/7 11/22 23/17 29/12 47/3 53/15 53/17 57/12 57/19 58/4
**overbroad [4]** 45/20 49/13 49/17 49/19
**overlooked [1]** 21/3
**own [8]** 10/14 10/23 30/23 30/24 44/13 44/24 46/1 46/6

**P**

**P.C [2]** 2/3 2/6
**p.m [1]** 60/19
**P.O [1]** 2/10
**papers [1]** 41/5
**par [1]** 21/24
**paragraph [2]** 51/2 51/5
**parameters [1]** 28/3
**parity [2]** 21/14 25/3
**part [7]** 16/2 19/14 19/22 23/15 43/16 48/2 60/13
**participate [2]** 17/20 54/23
**particular [4]** 4/3 8/1 25/15 27/2
**parties [16]** 4/18 10/3 15/4 16/20 18/20 18/20 19/4 28/16 30/21 31/2 31/12 34/22 36/9 42/13 56/15 60/7
**parties' [1]** 58/6
**party [2]** 19/24 51/19
**past [1]** 32/11
**path [2]** 22/3 58/15
**pattern [1]** 10/16
**pause [3]** 20/20 28/20 34/11

**PC [1]** 2/13
**pendent [2]** 11/14 48/12
**pending [2]** 47/14 47/23
**people [1]** 30/13
**perfect [2]** 16/1 16/15
**perfectly [2]** 5/15 50/5
**performing [1]** 50/18
**perhaps [1]** 9/18
**periods [1]** 45/11
**perpetrated [1]** 50/12
**perpetrator [2]** 52/10 56/23
**person [5]** 8/25 9/1 36/24 37/4 37/6
**personal [3]** 14/7 20/23 24/25
**persons [1]** 37/18
**perspective [3]** 28/13 29/18 46/22
**persuade [1]** 49/6
**persuasion [1]** 41/24
**pertinent [1]** 10/13
**phrase [5]** 26/13 31/24 38/1 39/8 43/9
**pick [1]** 27/4
**pictures [1]** 52/2
**piece [2]** 10/10 33/1
**Pistor [1]** 8/12
**place [7]** 10/15 20/6 20/7 30/11 33/11 48/1 56/2
**Plains [2]** 28/9 46/16
**plaintiff [33]** 1/5 2/3 3/8 3/9 4/22 5/1 5/25 6/7 6/11 6/18 6/20 6/25 7/10 7/11 7/12 7/19 9/8 27/10 27/13 27/16 32/14 33/15 33/18 34/24 34/24 35/6 35/7 39/22 41/13 50/2 55/2 57/3 57/9
**plaintiff's [4]** 29/18 46/22 48/10 55/20
**plaintiffs [4]** 25/5 47/2 47/4 47/8
**play [3]** 4/20 6/24 29/11
**playing [1]** 59/20
**plays [1]** 11/17
**pleadings [3]** 34/21 34/24 57/9
**please [4]** 3/7 17/17 17/24 37/1
**pled [1]** 26/19
**plus [1]** 16/4
**point [18]** 10/20 10/21 16/20 19/2 19/14 21/8 24/15 24/16 24/18 24/19 25/12 50/1 52/18 52/25 53/2 55/2 55/15 59/7
**points [4]** 28/1 44/19 49/24 54/18
**police [5]** 13/6 18/19 33/5 42/11 50/4

## P

**policy [1]** 21/2
**portion [2]** 10/7 32/18
**portions [1]** 17/8
**Portland [4]** 1/10 2/4 2/14 2/22
**position [24]** 8/15 12/2 17/9
24/22 25/21 26/8 29/14 32/16
33/8 34/4 34/14 34/18 34/19
34/20 35/5 36/3 44/16 52/23
53/19 53/23 56/14 57/1 57/11
57/23
**positive [6]** 8/17 10/10 10/14
11/2 11/4 44/13
**possess [2]** 57/18 58/1
**possibility [1]** 50/6
**possible [2]** 4/6 10/1
**post [1]** 59/17
**posture [2]** 7/6 8/13
**potential [2]** 5/24 19/19
**powerful [2]** 24/15 58/9
**practical [1]** 48/8
**pre [1]** 18/14
**precedent [2]** 24/23 35/15
**predicate [2]** 3/23 6/24
**premised [1]** 59/8
**prescribe [2]** 25/2 50/6
**presence [1]** 30/15
**present [4]** 6/7 27/22 38/14
60/5
**presented [2]** 18/8 47/15
**presenting [1]** 47/8
**preserved [1]** 5/14
**presumption [1]** 5/18
**presumptively [2]** 57/12 57/20
**pretty [1]** 12/21
**prevail [1]** 47/2
**prevailed [1]** 47/18
**primarily [4]** 10/18 26/20 31/1
45/16
**principally [1]** 36/7
**principle [3]** 9/20 23/23 58/15
**principles [1]** 24/17
**prior [1]** 39/13
**probably [2]** 4/15 59/8
**probe [1]** 27/8
**problem [1]** 16/14
**procedural [2]** 7/6 25/16
**procedurally [1]** 47/7
**procedures [2]** 20/4 20/5
**proceed [3]** 4/13 8/13 25/13
**proceedings [4]** 1/15 51/17
60/19 61/5
**process [4]** 17/3 17/6 17/11
52/25
**profile [1]** 10/6
**promulgate [2]** 10/23 48/24
**prong [1]** 7/14
**proof [1]** 41/24
**proper [1]** 41/23
**properly [1]** 26/2
**property [1]** 14/7
**proposition [2]** 8/24 9/4
**propositions [1]** 3/22
**protection [4]** 21/4 21/5 52/21
52/23
**protections [6]** 17/2 25/16
25/16 25/17 25/25 26/2
**provide [4]** 21/14 36/11 41/16
42/22
**provided [2]** 17/3 20/1
**provision [10]** 12/4 14/4 19/16
32/25 37/8 41/6 41/7 49/12
49/16 49/18
**provisions [10]** 10/13 12/3
12/20 14/16 15/16 15/17 16/18
17/6 17/11 44/10
**public [4]** 1/7 18/18 56/4 57/5
**punt [1]** 38/3
**purely [2]** 53/11 53/13
**purpose [1]** 17/1
**purposes [6]** 6/5 35/5 35/11
35/14 35/17 57/6
**put [5]** 4/10 10/15 12/21 20/6
27/12
**puts [1]** 25/3

## Q

**qualified [2]** 7/1 13/16
**qualify [1]** 38/4
**qualifying [2]** 7/14 7/14
**question [39]** 3/23 4/10 5/3 5/9
5/18 6/10 6/22 7/5 7/16 7/17
7/18 8/7 9/4 11/20 11/25 18/9
19/24 25/21 29/25 30/3 31/23
32/12 34/17 35/18 41/12 41/17
41/18 41/20 43/21 44/25 45/11
45/13 46/4 49/23 57/25 59/3
59/5 60/17 60/18
**questions [14]** 4/14 8/22 11/5
11/16 29/16 29/21 30/6 30/8
30/10 30/15 48/19 52/2 58/13
60/15
**quibble [1]** 12/8
**quickly [2]** 36/17 52/16
**quiet [4]** 18/25 45/19 50/3 50/8
**quite [3]** 10/1 58/19 58/19
**quote [1]** 21/3
**quoting [1]** 33/10

## R

**raised [2]** 27/15 47/20
**rather [1]** 45/3
**Raymond [1]** 18/1
**read [10]** 15/13 21/13 36/22
37/15 43/2 51/1 51/8 52/9
54/21 55/16
**reading [8]** 6/25 7/7 14/18 22/3
44/12 44/24 53/12 59/13
**real [2]** 25/6 36/17
**reality: [1]** 45/17
**reality: If [1]** 45/17
**really [9]** 4/20 5/24 9/12 11/11
11/25 25/22 54/6 56/16 59/16
**reason [4]** 4/25 18/7 20/1
47/13
**reasonable [3]** 23/22 41/18
54/21
**reasonably [1]** 55/16
**reasons [7]** 18/12 30/4 32/17
33/2 44/14 54/14 56/6
**recess [1]** 60/16
**recognize [1]** 5/13
**recognized [3]** 18/17 37/5 37/6
**recollection [1]** 47/16
**record [14]** 3/7 6/21 30/19
31/11 32/4 33/23 33/24 35/8
41/20 58/10 59/6 60/14 60/18
61/5
**reference [2]** 23/1 58/23
**referenced [1]** 57/3
**referring [1]** 37/21
**refers [1]** 37/22
**regard [2]** 26/4 26/6
**regarding [2]** 33/1 49/25
**regulate [3]** 57/18 58/1 58/3
**reinforce [1]** 55/7
**rejected [1]** 46/1
**rejecting [1]** 45/1
**rejoinder [1]** 24/20
**relates [1]** 50/8
**relating [5]** 13/8 50/18 50/19
53/4 53/5
**relatively [1]** 3/21
**relevant [2]** 5/11 6/25
**relied [1]** 38/9
**reluctant [1]** 58/7
**rely [1]** 39/22
**relying [2]** 22/7 31/4
**remained [1]** 57/6
**remarks [2]** 14/5 50/1
**remedy [5]** 21/17 42/18 42/22
54/24 55/6
**remember [1]** 47/6

## R

**renders [1]** 17/8
**Rephrase [1]** 46/2
**reply [1]** 25/10
**report [1]** 26/21
**REPORTER [2]** 2/21 61/11
**represent [1]** 34/13
**representatives [1]** 17/23
**require [7]** 7/10 20/2 21/17 23/14 24/1 37/10 45/25
**required [4]** 19/4 19/10 32/17 35/21
**requirement [3]** 7/2 27/18 37/13
**requirements [3]** 12/25 13/2 42/9
**requires [2]** 6/6 19/17
**requiring [1]** 60/10
**reservation [40]** 2/17 3/15 3/17 6/8 6/15 7/4 9/2 10/17 14/8 15/12 27/20 28/14 28/14 30/21 31/17 32/9 35/1 36/24 37/6 37/18 37/20 38/1 38/15 38/18 45/2 50/5 50/12 50/19 50/23 51/10 52/11 53/16 56/1 56/1 56/5 56/22 57/10 57/14 59/13 59/22
**reserved [1]** 56/2
**residence [1]** 52/4
**resolution [3]** 22/21 22/24 59/3
**resolve [1]** 58/14
**resolving [2]** 58/12 60/12
**respected [1]** 19/3
**response [1]** 43/19
**restating [1]** 25/22
**restrict [1]** 11/5
**restriction [1]** 44/8
**resulted [1]** 32/7
**retain [1]** 29/7
**revisit [1]** 30/23
**rewards [1]** 47/4
**right [46]** 11/6 11/8 11/12 11/18 14/24 15/2 15/6 16/23 17/14 18/24 18/25 22/6 23/12 23/21 27/3 30/25 31/2 31/5 31/11 32/3 32/5 32/10 32/24 33/14 34/12 35/3 38/3 38/7 38/8 38/11 38/24 39/12 40/5 40/10 40/17 41/17 42/7 42/17 43/7 44/17 45/22 47/5 48/3 51/8 52/13 57/5
**ripe [1]** 29/19
**rise [1]** 8/2

**rising [1]** 56/19
**risk [1]** 25/6
**RMR [2]** 2/21 61/10
**road [1]** 39/20
**robustly [1]** 26/23
**room [2]** 2/22 10/24
**Rothwell [1]** 2/13
**rounds [1]** 19/4
**row [1]** 60/11
**Rudd [7]** 2/6 2/6 3/8 48/20 50/10 56/18 56/22
**Rudd's [1]** 59/11
**rule [4]** 9/19 23/4 25/5 60/15
**running [1]** 52/24
**Russo [3]** 33/8 44/19 47/15

## S

**S.W [3]** 2/14 2/19 2/22
**safety [1]** 18/18
**said [13]** 5/16 11/23 15/9 21/9 21/14 21/21 24/14 30/5 32/17 38/21 41/5 49/10 51/8
**Salish [1]** 48/7
**same [7]** 9/22 31/25 32/2 32/2 49/23 52/20 55/23
**Sarah [2]** 2/18 3/16
**satisfied [1]** 9/11
**satisfy [2]** 27/18 40/20
**savings [1]** 55/8
**say [30]** 6/23 8/19 9/20 10/9 12/9 12/19 18/20 21/7 23/2 23/3 26/15 33/1 33/18 37/15 38/4 39/7 39/22 40/13 43/3 47/21 51/2 51/12 52/17 54/5 54/25 55/5 55/6 55/16 59/18 59/24
**saying [11]** 13/7 16/10 16/13 24/24 25/1 29/11 30/2 48/13 49/18 49/19 51/25
**says [26]** 8/16 9/7 10/11 12/14 14/6 16/20 20/15 21/4 22/9 22/17 22/25 36/22 37/18 39/25 40/7 42/20 43/1 43/10 45/4 45/18 46/9 48/17 51/9 55/1 55/10 59/16
**SB [3]** 10/8 56/10 56/20
**scheme [7]** 15/10 19/12 19/13 20/2 42/21 49/12 54/23
**scope [1]** 20/23
**second [8]** 6/15 6/23 7/9 7/17 27/4 28/21 38/6 59/10
**secretary [1]** 18/1
**secretary-treasurer [1]** 18/1
**see [13]** 8/10 12/5 13/25 27/9 28/10 29/16 38/5 45/17 46/14

46/15 46/16 56/24 59/20
**seeking [1]** 47/2
**seems [3]** 24/3 59/18 59/19
**seen [1]** 47/15
**sees [1]** 23/18
**semi [1]** 27/20
**semi-geographical [1]** 27/20
**Senate [28]** 12/24 12/25 14/11 16/18 16/24 18/14 19/7 19/20 20/6 20/13 21/13 22/12 23/15 24/11 42/12 42/14 42/19 42/20 43/5 49/10 53/8 53/9 53/19 54/20 54/21 55/9 55/21 55/22
**send [4]** 27/24 29/7 29/8 30/13
**sending [1]** 27/9
**SENIOR [1]** 1/17
**sense [5]** 15/10 15/19 16/1 16/15 60/14
**sentence [2]** 22/8 43/17
**separate [2]** 14/19 53/22
**serious [5]** 8/21 29/16 29/21 30/5 30/14
**servants [4]** 20/17 22/18 40/15 40/22
**set [5]** 4/14 20/18 28/4 40/5 44/15
**settings [1]** 13/18
**shaky [1]** 58/11
**shall [2]** 22/13 49/10
**she's [1]** 33/10
**shed [1]** 18/6
**shoes [1]** 5/15
**short [2]** 19/25 34/16
**Shoshone [1]** 57/22
**Shoshone-Bannock [1]** 57/22
**should [7]** 4/14 26/13 30/1 46/1 48/12 49/7 53/7
**shouting [1]** 19/1
**show [3]** 46/13 48/6 51/9
**shows [3]** 30/19 48/8 59/24
**shumway [4]** 2/21 2/23 61/9 61/10
**signature [2]** 61/7 61/7
**significant [2]** 17/8 28/6
**signing [1]** 61/4
**similar [2]** 8/14 13/3
**simple [2]** 20/1 59/2
**simply [3]** 4/10 40/7 53/6
**sitting [4]** 4/21 11/7 36/15 58/10
**slightly [1]** 18/12
**slow [2]** 37/1 37/2
**Smith [1]** 18/2
**so [106]**
**sole [1]** 21/10

**S**

**solely [2]** 20/22 44/1
**solid [1]** 60/6
**some [22]** 3/19 3/21 4/16 4/25 5/7 9/13 9/15 10/13 11/15 18/7 20/21 24/1 26/13 26/16 28/25 37/10 44/8 48/5 50/8 58/23 59/7 59/8
**something [4]** 13/23 21/17 29/5 55/6
**Sometimes [1]** 18/24
**somewhat [1]** 58/8
**somewhere [1]** 29/1
**sorry [3]** 33/6 36/18 43/11
**sort [19]** 6/19 15/20 16/3 27/5 27/17 27/20 29/1 40/9 41/1 41/23 42/2 44/8 45/24 46/5 46/8 47/2 50/14 56/19 57/6
**sorts [1]** 13/11
**sought [1]** 47/5
**sound [1]** 23/10
**sounds [2]** 29/5 58/24
**sources [1]** 8/3
**sovereign [34]** 5/5 5/6 5/9 5/13 5/21 10/23 13/3 13/7 13/13 13/17 13/20 13/22 14/15 15/22 15/23 16/5 16/6 19/17 19/21 20/11 20/24 20/25 21/5 21/6 21/25 23/17 23/19 24/2 24/7 24/8 24/8 24/25 54/8 56/9
**sovereigns [3]** 18/21 18/21 18/22
**sovereignty [5]** 8/10 19/3 55/11 56/17 57/16
**speak [2]** 8/18 51/16
**speaking [1]** 52/5
**speaks [1]** 51/15
**specific [10]** 14/9 14/22 19/14 24/12 39/1 39/4 39/16 39/21 43/14 56/11
**specifically [1]** 45/1
**specified [1]** 36/23
**spoke [2]** 48/9 52/1
**SPRINGS [37]** 2/17 3/15 3/17 6/1 6/20 7/2 7/10 7/13 9/6 9/6 17/18 19/9 19/24 20/7 20/18 21/19 21/20 21/23 21/25 25/17 25/18 27/14 27/21 32/9 34/10 34/25 35/12 35/16 36/2 36/14 36/24 39/23 41/14 42/11 42/21 42/25 57/24
**St [1]** 51/5
**staff [1]** 51/6
**stage [1]** 51/17

**standing [1]** 46/8
**stands [3]** 26/4 26/6 43/9
**start [7]** 7/16 11/19 18/14 22/16 25/12 48/19 54/20
**started [2]** 22/3 46/17
**Starting [1]** 7/19
**starts [1]** 5/17
**state [69]**
**State's [1]** 40/23
**state-certified [4]** 42/23 43/3 44/23 45/5
**stated [1]** 33/2
**statement [2]** 38/2 39/13
**statements [1]** 28/10
**STATES [7]** 1/1 1/17 2/21 28/4 28/11 46/18 55/14
**status [2]** 28/15 55/11
**statute [2]** 17/1 19/14
**statutes [5]** 12/3 12/23 14/13 16/19 16/25
**statutorily [1]** 36/20
**statutory [4]** 21/12 25/2 42/21 55/19
**step [1]** 17/13
**still [2]** 36/3 42/19
**straight [1]** 30/7
**straight-up [1]** 30/7
**straightforward [2]** 3/22 9/4
**Strate [5]** 8/20 28/5 46/15 57/3 57/5
**Street [2]** 2/4 2/7 2/14 2/19
**strong [2]** 47/22 59/19
**struck [4]** 16/9 16/11 19/11 56/20
**structural [2]** 10/21 45/13
**structures [1]** 56/11
**subject [8]** 5/16 9/23 14/16 17/2 20/17 34/7 40/5 40/16
**subordinate [3]** 20/16 22/17 40/15
**subsection [3]** 15/17 20/15 33/16
**subsequent [2]** 19/6 59/7
**substantive [2]** 34/10 35/5
**subtle [1]** 37/25
**succinctly [1]** 27/13
**such [8]** 6/2 9/8 15/7 16/21 43/13 44/21 46/7 57/20
**sue [8]** 15/5 15/5 16/7 21/9 27/21 39/22 39/25 40/4
**sued [12]** 5/12 5/20 15/22 15/23 20/23 22/19 22/22 22/25 23/2 24/14 24/25 55/18
**suggest [2]** 16/19 29/6
**suggesting [3]** 29/2 30/14

56/21
**suggests [1]** 32/1
**suing [8]** 6/7 9/6 23/25 23/25 24/2 24/4 24/5 38/14
**Suite [2]** 2/14 2/19
**summary [1]** 60/9
**supplemental [4]** 11/13 11/25 36/10 48/12
**supportive [1]** 56/7
**suppose [1]** 21/18
**Supreme [6]** 28/4 28/11 29/2 35/15 46/18 47/10
**sure [15]** 11/23 13/12 17/21 18/25 28/10 28/22 32/13 33/7 35/20 37/3 38/2 45/10 47/1 49/24 55/20
**surprised [1]** 59/23
**synonymous [1]** 22/12
**system [1]** 8/1

**T**

**take [12]** 19/12 24/16 24/22 34/4 34/18 34/19 38/1 48/1 50/11 51/13 52/2 56/14
**takes [3]** 10/8 34/14 35/4
**taking [3]** 27/11 32/12 56/14
**talked [2]** 42/4 52/17
**talking [6]** 6/17 18/20 33/3 33/4 36/18 50/4
**target [1]** 6/16
**taught [1]** 21/1
**teach [1]** 46/12
**tell [6]** 12/12 13/22 22/4 45/24 51/2 59/25
**telling [1]** 59/6
**tells [2]** 12/15 13/18
**tentative [2]** 3/19 7/7
**term [2]** 36/20 36/21
**terms [1]** 11/1
**territorial [1]** 56/16
**territories [1]** 55/12
**territory [2]** 55/1 57/6
**text [3]** 12/9 12/12 29/1
**textual [2]** 44/4 45/9
**than [5]** 11/8 21/5 41/10 53/6 55/6
**thank [22]** 3/18 11/18 17/14 17/16 17/19 18/3 25/9 27/3 30/25 32/10 36/16 41/8 41/24 43/7 43/18 43/18 45/22 48/18 49/22 54/16 58/5 60/16
**that [433]**
**that's [70]**
**their [8]** 10/14 24/14 41/4 41/5 44/13 44/24 55/18 57/4

# T

**them [8]** 4/19 19/11 24/1 32/2 34/22 40/13 51/18 51/24

**themselves [1]** 6/4

**then [42]** 3/19 4/3 4/7 4/12 4/13 4/23 5/2 5/22 6/12 6/23 7/4 7/17 15/4 16/17 16/18 17/5 17/7 19/6 19/11 27/11 30/10 30/12 30/12 31/1 33/3 33/10 38/9 42/17 45/5 45/6 45/23 51/14 51/25 53/2 53/13 53/20 53/23 54/11 54/13 59/2 60/4 60/11

**theory [2]** 26/5 26/7

**there [72]**

**there's [28]** 8/16 8/22 9/23 10/21 11/3 20/21 21/2 21/3 23/18 26/16 26/18 29/4 32/1 37/13 41/21 42/12 49/4 54/9 55/16 55/19 56/4 56/6 56/8 56/9 56/18 58/9 58/22 59/19

**therefore [3]** 20/24 29/17 30/6

**these [14]** 10/11 11/15 11/23 12/6 12/20 13/25 15/16 18/7 20/8 23/2 23/14 42/18 51/23 59/20

**they [25]** 13/21 14/1 14/1 14/14 15/14 16/3 17/5 17/9 18/17 19/11 21/13 21/14 21/21 23/1 32/1 37/22 40/9 46/6 46/10 47/4 47/7 47/9 48/25 52/12 55/25

**they'll [1]** 15/15

**they're [5]** 13/7 15/16 41/6 47/7 51/6

**they've [3]** 10/15 39/18 41/4

**thing [7]** 16/4 16/5 21/21 32/6 37/17 48/7 49/14

**things [12]** 5/4 6/6 13/2 13/25 14/2 21/16 39/6 42/22 50/11 52/15 52/15 60/3

**think [68]**

**thinking [3]** 9/17 37/25 51/2

**third [2]** 2/22 6/12

**this [144]**

**Thomas [4]** 52/1 52/3 52/4 52/10

**Thomas's [1]** 52/3

**those [39]** 5/7 6/10 10/8 11/6 13/2 15/13 15/14 16/18 16/19 19/10 27/23 28/1 28/5 28/8 28/13 28/16 29/6 29/14 30/9 30/24 31/5 31/25 32/20 35/4 45/6 46/8 46/12 46/13 46/24

**though [2]** 4/24 40/25

**thought [3]** 37/11 58/21 59/9

**thoughtfulness [1]** 58/6

**thoughts [2]** 25/11 30/24

**three [5]** 4/15 6/1 6/4 33/9 44/20

**through [6]** 1/3 7/17 18/8 39/19 44/17 54/14

**throughout [1]** 18/19

**thus [1]** 18/13

**tightening [1]** 60/14

**time [2]** 5/2 39/21

**title [3]** 45/19 50/3 50/8

**today [7]** 3/4 10/19 18/5 36/15 49/4 58/7 60/2

**together [4]** 12/21 13/25 14/2 18/23

**told [6]** 46/19 50/22 52/3 52/10 54/2 60/2

**too [3]** 18/25 47/22 48/9

**took [2]** 9/5 33/8

**tort [42]** 9/7 11/22 13/4 13/4 13/20 14/16 15/1 15/3 15/7 17/5 17/6 19/18 20/3 20/5 20/15 21/12 21/21 21/22 21/24 21/24 22/1 22/9 22/16 25/3 25/8 25/17 25/18 40/3 40/4 40/14 40/19 42/16 42/24 42/24 43/2 43/3 44/22 45/4 54/8 55/18 56/11 56/11

**torts [3]** 19/20 54/24 54/25

**tosses [1]** 17/7

**total [1]** 23/17

**touched [1]** 11/10

**traditional [1]** 55/12

**transcript [3]** 1/15 61/5 61/6

**travel [1]** 46/18

**traveled [1]** 55/25

**treasurer [1]** 18/1

**Treaty [1]** 56/2

**tree [1]** 4/13

**tribal [197]**

**tribe [47]** 7/9 8/10 9/16 9/18 10/14 13/2 13/14 19/9 19/18 19/23 20/2 20/15 20/16 21/18 21/25 23/14 23/16 23/16 23/25 24/1 24/5 24/22 25/1 34/25 35/4 35/7 35/16 35/17 35/22 36/13 36/14 37/5 37/9 39/25 40/8 40/14 40/21 42/20 44/9 50/6 50/9 53/16 55/24 56/3 56/14 56/19 58/1

**tribe's [9]** 10/22 21/8 22/11

**tribes [19]** 2/16 3/15 3/17 5/20 6/4 6/11 17/18 18/16 19/9 19/10 22/17 34/10 36/2 36/23 38/7 44/19 55/18 57/18 57/22

**tribes' [1]** 22/22

**tried [1]** 48/22

**triggered [2]** 53/20 53/20

**true [4]** 5/6 26/4 30/22 47/6

**try [1]** 46/4

**trying [5]** 12/8 12/9 18/16 55/5 56/14

**Tsumpti [1]** 18/1

**turn [3]** 5/22 22/15 45/23

**Turner [2]** 2/9 2/9

**turns [2]** 5/3 48/2

**two [19]** 5/24 5/24 6/3 6/6 10/18 10/18 18/20 19/4 21/16 27/18 27/23 31/5 32/20 33/4 39/6 52/15 54/1 58/13 60/3

**TYLER [1]** 1/7 48/14

**type [9]** 5/25 7/13 13/8 14/25 15/4 39/3 44/21 45/1 59/3

**types [5]** 6/1 14/20 33/9 33/12 44/20

**typically [4]** 27/7 30/7 51/16 51/18

# U

**ultimate [1]** 59/13

**ultimately [2]** 58/12 58/14

**unanswered [1]** 30/8

**uncertain [1]** 59/17

**uncertainty [1]** 30/15

**uncommon [1]** 7/25

**undeniably [1]** 58/2

**under [39]** 4/1 7/14 10/22 11/24 12/23 12/24 14/5 14/13 15/16 15/16 15/17 19/20 20/25 21/11 22/1 22/12 26/3 26/4 26/18 28/16 29/14 32/23 34/9 36/4 36/21 36/21 40/2 40/4 42/12 43/5 48/23 48/25 53/4 53/5 53/8 53/10 55/13 56/4 56/10

**underlying [1]** 56/15

**understand [7]** 27/15 31/22 31/22 32/8 34/21 34/23 49/20

**understanding [3]** 6/9 25/21 36/13

**undisputed [3]** 31/22 33/22 33/24

**undisputedly [1]** 32/8

**unequivocal [1]** 23/19

**U**

**unique [2]** 47/17 47/22
**UNITED [7]** 1/1 1/17 2/21 28/4 28/11 46/18 55/13
**unless [2]** 23/18 36/22
**untimely [1]** 47/16
**unusual [2]** 47/21 47/22
**up [15]** 11/12 16/5 16/7 23/23 27/4 27/11 28/13 29/6 30/7 32/12 44/25 48/14 58/19 59/14 60/14
**upon [6]** 6/8 10/16 14/8 37/24 37/25 45/2
**us [4]** 7/17 17/19 21/24 57/25
**use [3]** 4/15 37/16 56/2
**useful [4]** 22/2 58/13 58/21 59/5
**using [1]** 21/25

**V**

**valor [1]** 60/13
**vanished [1]** 42/5
**variety [3]** 29/3 45/24 56/24
**various [1]** 48/11
**venue [1]** 23/20
**versus [2]** 3/5 35/17
**very [14]** 11/18 17/14 19/22 20/1 25/9 25/22 32/10 36/16 41/8 43/18 49/22 54/16 58/5 59/2
**view [11]** 3/23 4/20 5/10 6/25 7/12 31/25 32/2 49/17 50/13 54/10 58/25
**viewed [1]** 58/23
**views [2]** 3/19 7/18

**W**

**wait [1]** 60/10
**waive [3]** 13/7 13/13 15/22
**waived [2]** 13/19 15/24
**waiver [12]** 4/1 5/5 5/18 13/3 13/17 13/22 19/17 19/21 23/17 23/19 24/1 56/9
**waives [2]** 5/7 13/3
**waiving [3]** 14/15 24/8 24/8
**wake [1]** 48/6
**walk [1]** 44/17
**want [18]** 3/18 12/10 17/19 21/16 21/16 22/2 33/7 41/25 44/3 48/20 50/1 51/20 52/6 52/15 52/18 54/5 54/23 55/15
**wanted [6]** 21/14 52/15 52/20 52/25 53/2 55/8
**wants [2]** 39/10 52/1
**WARM [37]** 2/17 3/15 3/17 6/1

6/19 7/2 7/10 7/13 9/6 9/6 17/18 19/9 19/24 20/7 20/18 21/19 21/20 21/23 21/25 25/17 25/18 27/14 27/21 32/9 34/10 34/25 35/12 35/16 36/1 36/14 36/24 39/23 41/14 42/11 42/20 42/25 57/24
**was [52]** 7/21 9/1 9/11 12/6 13/24 14/12 14/12 14/13 14/15 16/9 16/19 18/17 19/2 19/3 19/5 19/7 19/11 22/4 26/8 28/18 29/20 34/17 36/7 37/11 37/16 42/14 45/17 47/10 47/14 50/21 50/22 52/10 52/20 53/9 53/10 53/12 53/15 53/15 53/18 53/19 53/22 53/22 54/7 54/7 54/22 55/17 55/23 57/5 57/24 58/2 59/22 60/1
**wasn't [4]** 9/5 53/20 54/6 55/5
**waste [1]** 5/2
**way [22]** 6/18 7/12 8/10 8/14 8/18 15/13 21/13 23/13 23/18 25/23 26/14 31/20 34/14 40/12 46/18 46/21 47/10 49/20 50/13 54/21 57/5 59/20
**ways [2]** 5/22 58/11
**we [47]** 5/4 8/4 8/5 8/6 9/4 10/12 12/10 12/18 12/19 17/12 17/12 17/19 18/1 21/15 21/16 21/16 22/22 22/24 22/24 25/1 29/19 29/25 30/11 30/16 30/16 32/17 34/3 36/11 36/15 36/17 41/12 42/3 42/17 43/3 44/4 45/15 45/18 46/24 47/15 49/25 52/3 52/17 52/22 53/2 54/14 55/4 60/18
**we'd [1]** 30/13
**we'll [4]** 22/15 38/3 38/5 60/16
**we're [11]** 3/4 10/19 11/12 21/17 24/24 30/1 32/11 33/3 33/4 48/5 50/3
**we've [7]** 11/10 20/25 32/11 38/2 39/20 44/5 44/15
**weak [1]** 58/11
**weigh [1]** 51/18
**Welfare [1]** 36/12
**well [23]** 5/5 6/23 9/3 12/4 16/10 16/12 16/17 23/3 29/6 30/3 33/13 33/17 37/24 39/6 40/3 41/23 50/16 50/24 51/21 52/8 55/22 58/15 60/10
**well-established [1]** 58/15
**well-founded [1]** 55/22
**went [1]** 52/4 54/14 57/10
**were [8]** 14/14 17/4 18/16 25/5

26/1 28/4 47/3 52/22
**what [56]** 5/15 9/12 12/5 12/11 13/6 13/14 13/24 14/1 14/2 14/14 16/2 16/10 16/19 16/24 16/24 18/15 19/6 22/22 23/1 23/5 24/13 25/1 30/22 31/12 32/4 34/19 34/20 34/22 37/10 37/17 37/20 39/8 39/18 39/21 41/6 41/10 43/17 45/16 46/12 49/16 49/19 50/15 50/25 51/24 52/20 53/5 53/12 53/17 54/6 58/7 59/15 59/17 59/24 59/24 60/1 60/1
**what's [10]** 11/20 18/12 22/7 27/15 42/2 43/22 44/24 45/7 52/8 57/1
**whatever [2]** 10/24 39/10
**when [35]** 12/9 12/21 13/25 14/2 14/9 14/10 14/22 15/10 18/20 22/20 23/24 23/25 24/2 24/4 28/13 28/24 29/13 33/18 37/22 37/24 37/25 38/25 39/3 39/16 40/8 42/11 43/13 44/19 47/23 51/2 51/16 52/16 53/5 53/11 60/4
**whenever [1]** 30/23
**where [27]** 5/11 6/24 7/5 9/13 9/16 10/13 12/22 15/13 15/14 20/9 22/4 27/6 32/7 33/8 36/7 37/11 37/22 41/12 42/18 42/19 46/17 50/20 50/23 51/5 52/3 57/17 59/10
**whether [27]** 5/22 7/20 7/21 8/22 19/10 26/15 29/16 30/17 31/6 31/9 31/18 31/18 31/23 32/21 34/4 34/9 34/13 34/14 34/15 41/19 42/1 45/25 46/6 54/12 57/6 57/23 59/25
**which [32]** 4/2 6/16 7/25 8/6 8/6 8/12 10/21 14/8 22/10 22/12 23/24 26/24 28/2 28/9 32/8 38/19 42/4 42/10 42/12 42/22 43/1 43/1 43/3 47/3 51/2 52/19 53/7 53/12 55/9 55/10 56/3 57/4
**while [1]** 53/16
**who [15]** 14/21 15/5 15/5 15/7 25/7 26/2 27/17 27/20 34/23 36/18 36/25 37/4 37/6 39/14 44/20
**whole [1]** 15/10
**whose [1]** 55/11
**why [13]** 5/2 12/19 13/22 16/3 16/6 27/23 43/23 48/11 51/1 51/19 52/4 56/6 59/18

# W

**widely [1]** 58/24
**wild [1]** 50/7
**will [9]** 12/15 17/2 21/15 24/20
25/7 25/15 48/1 60/6
**wise [1]** 29/7
**wish [3]** 25/10 41/9 54/17
**within [7]** 11/13 12/18 31/17
32/9 50/5 54/25 55/12
**without [6]** 24/13 25/24 40/13
59/21 60/12 61/6
**won't [2]** 8/9 12/13
**word [3]** 23/6 37/16 47/22
**words [3]** 4/16 10/10 14/20
**work [2]** 44/7 60/12
**worked [1]** 19/11
**workout [1]** 16/15
**works [3]** 23/24 23/25 24/2
**would [50]** 4/20 4/21 8/18 8/19
8/24 9/15 9/24 10/20 12/6
12/18 12/22 15/20 16/2 16/3
16/6 22/4 22/10 23/3 23/14
25/12 25/23 25/25 26/1 27/6
27/9 27/23 28/17 29/16 33/1
33/2 34/7 36/9 37/1 39/22
41/13 43/3 44/10 45/19 46/3
47/17 47/21 47/21 47/22 48/25
49/12 51/19 54/20 55/4 55/25
57/15
**wouldn't [5]** 29/7 45/20 45/20
53/14 53/17
**wrong [5]** 7/4 21/17 24/17
44/24 45/7
**WY [1]** 2/7

# X

**Xochihua [1]** 2/13

# Y

**Yakama [1]** 35/17
**Yeah [3]** 19/15 34/19 43/12
**yes [23]** 15/9 15/25 18/11
18/12 20/1 25/11 32/16 32/23
33/13 34/16 36/5 38/23 39/2
39/5 39/7 39/15 39/18 40/6
40/11 40/18 40/24 41/11 46/11
**yet [2]** 24/18 30/8
**you [192]**
**you'd [1]** 17/22
**you'll [1]** 12/5
**you're [26]** 6/17 11/15 13/13
14/18 16/10 16/13 17/15 21/9
22/7 23/25 23/25 24/2 24/4
24/5 29/2 30/2 31/4 33/8 34/20
35/3 43/17 45/4 46/5 51/2

52/24 53/25
**you've [5]** 15/21 16/15 30/5
45/9 54/2
**your [80]**