Erin K. Olson, OSB 934776
Law Office of Erin Olson, P.C.
1631 N.E. Broadway Street #816
Portland, OR  97232
Telephone:  (503) 546-3150
eolson@erinolsonlaw.com

Brigid K. Turner, OSB 065846
Brigid Turner, Attorney At Law, LLC
1307 N.E. 11th Street
Bend, OR  97701
Telephone:  (541) 241-6416
Brigid.turner@icloud.com

Kelly A. Rudd, OSB 054961
Baldwin, Crocker & Rudd, P.C.
P.O. Box 1229
Lander, WY  82520
Telephone:  (307) 332-3385
rudd@bcrattorneys.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| **E.J.T.,** a minor, by and through his Conservator, InTRUSTment, Northwest, Inc., <br><br> Plaintiff, <br><br> v. <br><br> **JEFFERSON COUNTY,** a public body; **TYLER W. ANDERSON,** in his individual capacity; and **ARJANG ARYANFARD**, in his individual capacity, <br><br> Defendants. | Case No.:  3:20-cv-01990-MO <br><br> **PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT AND FOR JOINDER OF PARTY** |

**PAGE 1 – PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED
COMPLAINT AND FOR JOINDER OF PARTY**

## L.R. 7-1 CERTIFICATE

Plaintiff's undersigned counsel certifies she conferred with Robert Franz, counsel for defendants Jefferson County and Tyler Anderson ("Jefferson County Defendants"), and with Daniel Hasson, counsel for proposed defendant Arjang Aryanfard ("Officer Aryanfard"), and both advise they oppose the relief requested in this motion.

## RELIEF REQUESTED

Plaintiff, by and through undersigned counsel, respectfully moves the court pursuant to FRCP 15, LR 15-1, FRCP 19(a)(1)(A) or FRCP 20(a)(2) for leave to file an amended complaint that includes the following proposed changes:

1. Joins Officer Aryanfard as a defendant pursuant to FRCP 19 or FRCP 20;

2. Amends plaintiff's First Claim for Relief for Negligence to distinctly allege common law negligence claims under special relationship, negligence *per se*, and general foreseeability theories (three counts) against all defendants. The proposed amendments to the Negligence claim include Officer Aryanfard for the sole purpose of preserving the record for appeal in light of his assertion that plaintiff's prior requests for leave to amend were inadequate and to demonstrate the requirement of joinder under FRCP 19;

3. Adds claims against Officer Aryanfard under 42 U.S.C. § 1983 alleging an equal protection violation.

A copy of the proposed First Amended Complaint that shows how the amended pleading differs from the initial Complaint is attached hereto as Exhibit A.

**PAGE 2 – PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT AND FOR JOINDER OF PARTY**

This motion is supported by the "Declaration of Erin K. Olson in Support of Plaintiff's Motion to File Amended Complaint" and its attached exhibits.

## **ARGUMENT**

## I.   **(Re)-Joinder of Officer Aryanfard.**

FRCP 19(a)(1)(A) require a party who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction to be joined as a party "if in that person's absence, the court cannot accord complete relief among existing parties."  FRCP 19(1)(1)(A).  This category of mandated joinder "is concerned with consummate rather than partial or hollow relief as to those already parties, and with precluding multiple lawsuits on the same cause of action." *Northrop Corp. v. McDonnell Douglas Corp.*, 710 F.2d 1030, 1043 (9th Cir. 1983) (citing *Advisor Committee's Note to Rule 19(a)(1)*, 39 F.R.D. 89, 91 (1966)).

This case involves two police agencies whose acts and omissions resulted in catastrophic harm to a child.  Officer Aryanfard expressly pleaded comparative fault in his answer to the complaint.  (ECF 6, p. 8)  While the Jefferson County defendants have not expressly alleged comparative fault as an affirmative defense, their answer does allege that E.J.T.'s "mother and E.J.T. went onto the reservation and had the matter investigated by a Warm Springs Police Officer," and their affirmative defenses allege that Deputy Anderson "obeyed the jurisdictional limits of his authority" and that "Defendants did not have jurisdiction over offenses committed by or against Indians in the areas of the Warm Springs Reservation[.]" (ECF 122, pp. 2, 5)

**PAGE 3 – PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED**
**            COMPLAINT AND FOR JOINDER OF PARTY**

Regardless of whether the Jefferson County defendants and Officer Aryanfard have pleaded comparative fault as affirmative defenses in their answers, plaintiff has sued both sets of defendants, and ORS 31.600 requires the trier of fact to "compare the fault of the claimant with the fault of any party against whom recovery is sought."  It does not matter that, as in this case, E.J.T. has zero fault, because E.J.T. is "seeking recovery" against both sets of defendants.  *See A.F. v. Evans*, 2022 U.S. Dist. LEXIS 88577 *6-7 (D. Or. May 16, 2022).  Complete relief cannot be afforded among E.J.T. and the Jefferson County defendants if Officer Aryanfard is not re-joined as a party in this case, and since Officer Aryanfard is subject to service of process and his joinder will not deprive the court of subject-matter jurisdiction, joinder is required by FRCP 19(a)(1)(A).

Even if the court determines that joinder is not <u>required</u>, permissive joinder under FRCP 20(a) is warranted because plaintiff has asserted a right to relief against both sets of defendants; the asserted right arises out of the same transaction, occurrence, or series of transactions and occurrences; and there are questions of law and fact common to all defendants.  *See Desert Empire Bank v. Insurance Co. of North America*, 623 F.2d 1371, 1375-76 (9th Cir. 1980).  As noted by the court in *Desert Empire Bank*, the rules governing both permissive joinder and amendment of the complaint are to be liberally construed "'in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits.'"  *Id.* (quoting *League to Save Lake Tahoe v. Tahoe Regional Planning Agency*, 558 F.2d 914, 918 (9th Cir. 1977)).

**PAGE 4 – PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT AND FOR JOINDER OF PARTY**

II.    **Amendment of the Complaint.**

Federal Rules of Civil Procedure 15(a) allows for amendments to pleadings by leave of the court.  The liberality of the rule is both expressly stated in the rule and well established in this jurisdiction.  FRCP 15(a)(2) (leave of the court to amend should be freely given when justice so requires); *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798 (9th Cir. 1991) (FRCP 15 represents a "strong policy permitting amendment."); *Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000) (citing *Doe v. United States (In re Doe)*, 58 F.3d 494, 497 (9th Cir. 1995)) (district court abused its discretion in dismissing tort claims with prejudice without leave to amend).

The court may consider the following factors in determining whether to grant leave for a party to amend its pleadings: (1) undue delay; (2) bad faith; (3) futility of amendment; and (4) undue prejudice to opposing party.  *Texaco, Inc. v. Ponsoldt,* 939 F.2d at 798–799 (9th Cir. 1991).  Application of all of the factors supports amendment, for the following reasons:

A.    **No Undue Delay**

Plaintiff has not unduly delayed seeking amendment and has requested leave to amend twice before.  He is formally moving for leave to amend at this time to address arguments by Officer Aryanfard that his prior requests to amend were inadequate, [1] to preserve the record for appeal, and to prevent later arguments of

---

[1]  Defendant Aryanfard wrote in his opposition: "It is undisputed that Plaintiff never filed a Fed. R. Civ. P. 15(a)(2) motion seeking leave to amend to add [negligence] claims. * * * If Plaintiff wanted to amend the Complaint to allege new

LAW OFFICE OF ERIN OLSON, P.C.
1631 NE BROADWAY STREET #816  PORTLAND, OREGON 97232-1425
TEL (503) 546-3150  EOLSON@ERINOLSONLAW.COM

undue delay and prejudice by defendants now that a dispositive motions deadline and trial date have been set.

Plaintiff specifically requested leave to amend his claims in his responses to both the Jefferson County defendants' motion to dismiss [ECF 22, p. 47] and Officer Aryanfard's motion to dismiss [ECF 49, pp. 58-59].  However, Plaintiff could not file a formal motion to amend the complaint between June 15, 2021, and February 6, 2023, because this case was stayed for all but a limited purpose[2] due to the certification of questions to the Oregon Supreme Court.  (ECF 113)

A brief procedural history of this case indicates that plaintiff has diligently litigated this case without delay:

| Date | Event |
| --- | --- |
| 11/17/2020 | Complaint (ECF 1) |
| 1/14/2021 | Dft Aryanfard - Answer and Affirmative Defenses (ECF 6) |
| 1/27/2021 | Jefferson County Dfts – Motion to Dismiss (ECF 8) |
| 3/26/2021 | Plaintiff – Motion to Certify Questions (ECF 23) |
| 6/15/2021 | F&R – Denying Jefferson Co Dfts Motion to Dismiss Granting Motion to Certify, and Staying Case (ECF 30) |
| 6/18/2021 | Dft Aryanfard – Motion to Stay Discovery (ECF 32) |
| 6/24/2021 | Dft Aryanfard – Motion to Dismiss (ECF 35) |

negligence theories following the Oregon Supreme Court's opinion, Plaintiff had ample time to file a motion seeking leave to do so."  (ECF 117, p. 3)

[2]  On July 19, 2021, Judge Russo lifted the stay in part to permit plaintiff and Officer Aryanfard to litigate Aryanfard's motion to dismiss based on tribal sovereign immunity.  (ECF 47)

**PAGE 6 – PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT AND FOR JOINDER OF PARTY**

| Date | Event |
|------|-------|
| 7/19/2021 | Order Adopting F&R re: Jefferson Co Dfts Motion to Dismiss, Granting Motion to Certify, and Staying Case (ECF 46) |
| 7/26/2021 | Jefferson County Dfts – Notice of Appeal to 9th Cir (ECF 51) |
| 10/12/2021 | Jefferson County Dfts – 9th Cir Appeal Dismissed (ECF 59) |
| 11/10/2021 | F&R – Denying Dft Aryanfard Motion to Dismiss (ECF 63) |
| 9/23/2022 | Oregon Supreme Court Opinion (ECF 85) |
| 2/6/2023 | Orders re: F&R re: Dft Aryanfard Motion to Dismiss, Dismissing Dft Aryanfard; Dismissing Claim 1 with Prejudice; Lifting Stay (ECF 111, 113) |
| 2/6/2023 | Partial Judgment Dismissing Officer Aryanfard (ECF 112) |
| 2/21/2023 | Plaintiff – Motion for Reconsideration and Entry of FRCP 54(b) Judgment (ECF 114) |
| 3/24/2023 | Answer – Jefferson County Dfts (ECF 122) |
| 4/20/2023 | Order Denying Plaintiff's Motion for Reconsideration and Entry of FRCP 54(b) Judgment (ECF 123) |
| 5/10/2023 | Plaintiff – Complaint and Motion to Determine Jurisdiction Filed in Warm Springs Tribal Court against Dft Aryanfard |
| 6/2/2023 | Dft Aryanfard filed his Answer and Affirmative Defenses |

Notably, plaintiff filed suit in Warm Springs Tribal Court 20 days after this court entered its final ruling requiring exhaustion of tribal court remedies. (Olson Decl., ¶ 3,)

**PAGE 7 – PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT AND FOR JOINDER OF PARTY**

Simultaneous with the filing of the complaint in Warm Springs Tribal Court, plaintiff filed a motion to determine jurisdiction and a motion for pro hac vice admission in that court.  (*Id.*)

One of this court's stated reasons for denying plaintiff's motion for reconsideration/entry of a Rule 54(b) judgment/stay of trial court proceedings pending appeal was "the length of time this case has already been litigated."  (ECF 123)  This case has been litigated for three years now, and indeed that is a significant period of time.  However, not only has the litigation of this case occurred entirely during the COVID crisis, but this case undisputedly has atypical, complex, novel, and undecided legal issues, many of which are unanswered, and some of which are critical to plaintiff's ability to recover compensation for the catastrophic injuries sustained by EJ.T.  Plaintiff has promptly and thoroughly raised and litigated these issues appropriately, and while there has been delay, by no means has that delay been undue.

To avoid claims of undue delay in seeking amendment and re-joinder of Officer Aryanfard as a party, plaintiff requests the court allow the amendments requested, including the addition back of Officer Aryanfard as a party.

**B.**    **No Bad Faith.**

Plaintiff is not seeking to amend in bad faith.  Plaintiff is not seeking to destroy diversity, or to otherwise destroy the jurisdiction of this court.  *See Sorosky v. Burroughs Corp*, 826 F.2d 794, 805 (9th Cir. 1987) (destroying diversity is bad faith motive to amend).  The court's recent dismissal of state law claims against

**PAGE 8 – PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT AND FOR JOINDER OF PARTY**

Officer Aryanfard has no bearing on plaintiff's motion to re-join Aryanfard in order to add civil rights claims, because the Warm Springs Tribal Court has no jurisdiction to hear claims under § 1983. *Nevada v. Hicks*, 533 U.S. 353, 366-67 (2001).

Plaintiff's requested amendment to add civil rights claims against Officer Aryanfard is based on information obtained for the first-time during depositions of Aryanfard and others that were conducted in August of 2022. The facts as obtained during those depositions are set forth in the accompanying Olson declaration, including relevant excerpts of deposition transcripts and documents referenced therein that are attached to the Olson declaration as Exhibits 1-6.

Plaintiff was prohibited from seeking to amend the complaint using information obtained during depositions until the stay was lifted by the court on February 6, 2023. The stay was lifted at the same time Officer Aryanfard was dismissed from this case, at which time plaintiff promptly focused efforts on reversing that dismissal. When the court rejected those efforts in its order of April 20, 2023 [ECF 123], plaintiff promptly filed a civil complaint in tribal court as directed by this court, and now files this motion to amend the complaint based on the new information obtained during Aryanfard's deposition.

Plaintiff's brief delay in seeking amendment to allege civil rights claims against Officer Aryanfard is far from being the sort of delay that is unjust or demonstrates bad faith. *See DCD Programs*, 833 F.3d at 187 (delay in naming a defendant was not unjust or evidence of bad faith when plaintiffs were waiting until they

**PAGE 9 – PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT AND FOR JOINDER OF PARTY**

developed sufficient evidence of conduct to support the claims).  Plaintiff is seeking

amendment to add a common law negligence claim against all defendants to

preserve the record for appeal, although such an amendment is otherwise timely.

Plaintiff can imagine no other conceivable "bad faith" grounds that could be

asserted.

### C.  Proposed Amendments Are Not Futile.

"An amendment should not be denied as futile if the underlying facts state a

claim upon which the court can grant relief."  *Brier v. N. Cal. Bowling Proprietor's*

*Ass'n*, 316 F.2d 787, 790 (9th Cir. 1963).

### 1.  Common Law Negligence Claim.

Plaintiff's requested amendments to specifically allege a common law

negligence claim with separate counts alleging special relationship, negligence *per*

*se*, and general foreseeability theories are supported by the facts alleged, and

consistent with the Oregon Supreme Court's ruling:

> "Nothing in this opinion should be read as foreclosing the
> possibility of a common-law claim under the circumstances that
> plaintiff has alleged."

*E.J.T. v. Jefferson County,* 370 Or 215, 239, 518 P.3d 568 (2022).  Indeed, in

Footnote 12 of its opinion, the court cited cases affirming the availability of common

law negligence claims under similar circumstances:

> "Although this court has never directly addressed whether a
> common-law negligence claim would provide recovery for a
> breach of the duties at issue in this case, the 1971 Legislative
> Assembly, or at least the 2007 Legislative Assembly, might have
> assumed that a common-law negligence claim would be

**PAGE 10 – PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED**
**COMPLAINT AND FOR JOINDER OF PARTY**

available under those circumstances. *See, e.g., Mezyk v. National Repossessions*, 241 Or 333, 337, 405 P2d 840 (1965) (recognizing a negligence claim for harm caused by third-party when the defendant negligently created a likelihood of that harm); *Blachly v. Portland Police Dept.*, 135 Or App 109, 117, 898 P2d 784 (1995) (holding that the plaintiffs stated a common-law negligence claim against DHS's predecessor based on allegations that the agency failed to investigate a report that children—including the plaintiffs—were being abused at a day care facility)."

*Id.* at 235, n. 12. The Oregon Supreme Court also cited with favor *Bellikka v. Green*, 306 Or. 630, 650, 762 P.2d 997 (1988), for the proposition that "claims based on statutory liability 'exist independent of any parallel common-law claim and can be pleaded independently, with or without an accompanying common-law claim.'" *Id.* at 239. *See also Shahtout v. Emco Garbage Co.*, 298 Or. 598, 601, 695 P.2d 897 (1985) ("Of course, a plaintiff may assert both statutory and common-law theories of liability on the same facts.").

The First Claim for Relief in plaintiff's proposed First Amended Complaint is still captioned "Negligence," and the duties alleged to have been breached still include duties imposed by law. The pleaded facts are sufficient under existing Oregon law—cited with favor by the Oregon Supreme Court—to state a claim for common law negligence. *Blachly v. Portland Police Dept.*, 135 Or App 109, 117, 898 P2d 784 (1995) (holding that the plaintiffs stated a common-law negligence claim against DHS's predecessor based on allegations that the agency failed to conduct a statutorily-required investigation of a report that children—including the plaintiffs—were being abused at a day care facility); *see also Restatement (Second)*

**PAGE 11 – PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT AND FOR JOINDER OF PARTY**

*of Torts § 323* (1965) (one who undertakes to render services to another may in some circumstances be held liable for doing so in a negligent fashion); W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on the Law of Torts* § 56 (5th ed. 1984) (discussing "special relationships" which may give rise to affirmative duties to act under the common law of tort).  The amendments are not, therefore, futile.

### 2.  Adding Civil Rights Claims Against Officer Aryanfard.

In its February 6, 2023, order granting Officer Aryanfard's motion to dismiss, this court found that Officer Aryanfard was acting only in his capacity as a tribal police officer, and dismissed the ORS 124.105 claim against him with prejudice "as to the theory that Officer Aryanfard was acting under SB 412 authority and there was waiver."  The court dismissed the same claim "without prejudice as to the theory that there is no tribal court jurisdiction," and noted that "Plaintiff's claim may be re-pled in tribal court."  (ECF 111, p. 2)

The question of whether Officer Aryanfard was acting under state law or tribal law is a question for the jury.  *Roberts v. Spalding*, 783 F.2d 867, 873 (9th Cir. 1986) (question of whether defendants acts were done under color of state law was one for the jury).  Whether Officer Aryanfard was acting under color of state law or tribal law is not appropriate for determination under Rule 12(b)(6).  *Evans v. McKay*, 869 F.2d 1341, 1348 (9th Cir. 1989) (dismissal improper where allegations in complaint alleged actions under color of state law).

The court's dismissal of plaintiff's state court claims on jurisdictional grounds does not foreclose amendment of the complaint by adding a § 1983 claim against

**PAGE 12 – PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED
COMPLAINT AND FOR JOINDER OF PARTY**

Officer Aryanfard.  Plaintiff's proposed Fifth Claim for Relief against Officer Aryanfard alleges violations of 42 U.S.C. § 1983 based on his violations of E.J.T.'s constitutional right to equal protection.   Officer Aryanfard testified unequivocally that his investigation was based upon his belief that E.J.T.'s injuries were caused by his father, a Native American, on the Warm Springs Reservation.  He also testified unequivocally that, as a mandatory reporter of child abuse under Oregon law, he is obligated to report suspected child abuse to appropriate authorities, which he did not do.  He also testified unequivocally that at the time of his contact with E.J.T., he was an authorized tribal police officer under Senate Bill 412 imbued with the authority of an Oregon law enforcement officer.  Oregon law enforcement officers are required to investigate child abuse by following particular procedures. While Officer Aryanfard testified that he at no time donned his SB 412 hat, that is a question for a factfinder to consider along with the testimony of Nurse Mellor, E.J.T.'s mother, and E.J.T.'s grandmother about their recollection of Officer Aryanfard's actions and statements on October 2, 2017.

A factfinder could conclude that Officer Aryanfard's handling of the investigation of E.J.T.'s abuse was different than what was required by law based upon the race or ethnicity of E.J.T. and/or E.J.T.'s father.  Plaintiff is entitled to assert a claim based on an equal protection violation where there is a genuine issue of material fact regarding discriminatory intent or motive.  *Navarro v. Block*, 72 F.3d 712, 716 (9th Cir. 1995).

**PAGE 13 – PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT AND FOR JOINDER OF PARTY**

**D.      Amendments Would Not Prejudice Opposing Parties.**

The Jefferson County defendants filed their answer in March 2023.  They

have not yet requested any discovery from plaintiff, and have not produced much of

the discovery requested by plaintiff in May of 2021.  While a discovery stay was in

place until February 6, 2023, no depositions have yet been scheduled, and discovery

is far from complete.[3]  The Jefferson County defendants will not be prejudiced by

the requested amendments.

Nor will Officer Aryanfard be prejudiced.  He was dismissed from this case in

February of this year and continued his participation in this case, objecting to the

motion for reconsideration, in March.  He is not the kind of "entering party" the

courts are reluctant to add to a long-filed case, because he was a party for 28 of the

31 months this case has been litigated.  *See DCD Programs, Ltd. V. Leighton*, 833

F.2d 183, 187-88 (9th Cir. 1987).

As noted above, discovery is still in its early stages due to the stay ordered by

the court upon certification of questions to the Oregon Supreme Court.  (ECF 30,

46).  Depositions, other than the limited depositions conducted at the court's request

to address jurisdictional questions, have not yet begun.  Dispositive motions are not

due until October 16, 2023, and the trial date is not until March 4, 2024.

Amendments clarifying and differentiating the negligence claim and adding a civil

rights claim against Aryanfard, as well as adding Aryanfard back to the case at this

---

[3]   Counsel have set aside two weeks in July and August to conduct depositions.

**PAGE 14 – PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED**
**COMPLAINT AND FOR JOINDER OF PARTY**

juncture, will not prejudice either Aryanfard or the Jefferson County defendants if done now. Indeed, plaintiff is promptly seeking to re-join Aryanfard as a defendant in this court before discovery begins in order to prevent undue delay.

**E.    Plaintiff Has Not Previously Amended His Complaint**.

A factor often considered when reviewing the denial of a motion for leave to amend is whether the plaintiff has previously amended his complaint. *DCD Programs*, 833 F.2d at 186. n. 3 (so stating). That factor favors plaintiff, who has not previously amended his complaint.

**F.    Principles of Estoppel and Law of the Case Do Not Foreclose Amendment to Plaintiff's Negligence Claim.**

In its order denying reconsideration and motion for entry of a Rule 54(b) judgment, the court wrote:

> "Plaintiff's first request for reconsideration of the court's dismissal with prejudice of Claim 1 is denied because of Plaintiff's own prior arguments in favor of certification. Plaintiff argued that the certified question would determine if Claim 1 could proceed against all defendants, and that argument was part of the decision to grant the motion to certify. See F&R [30] at 18 (adopted in full, Op. & Order [46]) (explicitly stating that "[t]he answer to the questions may dispose of the claims if answered in the negative). Plaintiff may not change the argument now. The law of the case doctrine also applies. See Askins v. U.S. Dep't of Homeland Sec., 899 F.3d 1035, 1042 (9th Cir. 2018) (noting that a court's decision "should continue to govern the same issues in subsequent stages in the same case")."

(ECF 123)

Plaintiff requested certification of the question posed and argued by the Jefferson County defendants in their motion to dismiss. Plaintiff stated in his

**PAGE 15 – PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT AND FOR JOINDER OF PARTY**

motion for certification:  "*The first question will determine whether plaintiff's First Claim for Relief for Negligence based on statutory liability for failing to make a mandatory report and/or conduct a mandatory investigation may proceed against all defendants.*"  (ECF 23, p. 3) (emphasis added.)  Plaintiff sought certification of that question because that is the question framed by the Jefferson County defendants in their motion to dismiss,[4] and plaintiff's claim for Negligence <u>did</u> include the elements of statutory liability. (ECF 1, pp. 11-20)  However, at no point did plaintiff agree or offer that his Negligence claim could be barred on any theory if the Oregon Supreme Court found no statutory liability theory existed.  Indeed, a few months later, plaintiff concluded his opposition to Officer Aryanfard's motion to dismiss by requesting leave to amend:

> "IV.  Plaintiff Should Be Allowed to Amend his Complaint If Any Claims are Inadequately Pleaded.
>
> Plaintiff's complaint contains sufficient factual allegations to state claims for negligence, negligence per se, and for violation of Or. Rev. Stat. § 124.105.  However, should the Court find any part of Plaintiff's complaint lacks factual allegations or specificity to plausibly state a claim, Plaintiff respectfully requests the Court afford him an opportunity to seek leave to amend.  *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."); *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (rule applies with liberality)."

---

[4]  Jefferson County defendants relied in their motion upon a decision of this court, *Lowry v. Univ. of Oregon Med. Sch.*, No. 3:16-CV-01049-YY, 2018 U.S. Dist. LEXIS 188675 (D. Or. Sept. 28, 2018), report and recommendation adopted, 2018 U.S. Dist. LEXIS 187788 (D. Or.  Nov. 1, 2018) (Brown, J.).  That case involved a statutory liability challenge to a claim alleging breach of fiduciary duty where the duty alleged to have been violated was the mandatory reporting law.

**PAGE 16 – PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT AND FOR JOINDER OF PARTY**

(ECF 49, pp. 58-59)

Plaintiff did not agree that he would forego any claim for negligence if the court certified the question of statutory liability to the Oregon Supreme Court, and plaintiff should not be estopped from amending his complaint to allege a viable claim for recovery where there is no prejudice to opposing parties in doing so since all have been well aware of plaintiff's intentions to seek amendment in exactly this manner for at least the last two years.

Nor does the "law of the case doctrine" apply to prevent plaintiff's requested amendments to the negligence claim. The applicable "law of the case" that was announced by the Oregon Supreme Court was that the legislature did not intend to create a statutory private right of action to address violations of a duty that Oregon's mandatory child-abuse-reporting statutes imposed on defendants. *E.J.T. v. Jefferson County*, 370 Or 215, 224, 238 (2022). The Oregon Supreme Court had slightly reframed the certified question in that way "because statutory liability is a legislative creation; '[s]tatutory liability arises when a statute either expressly or impliedly creates a private right of action for the violation of a statutory duty,' *i.e.*, a statutory claim 'that exists independently of' any claim for common-law negligence that might also exist." *Id.* at 224-225 (quoting *Deckard v. Bunch*, 358 Or 754, 757, 759 (2016)). The Court ended its opinion by declining plaintiff's request to clarify the grounds upon which statutory duties might be used to establish the elements of an existing common-law claim, stating, "Nothing in this opinion should be read as foreclosing the possibility of a common-law claim under the circumstances that

**PAGE 17 – PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT AND FOR JOINDER OF PARTY**

plaintiff has alleged.  But what plaintiff now requests goes significantly beyond the scope of the certified question, and we decline to answer more than the question that the district court has certified to us." *Id.* at 239.

The "law of the case doctrine" precludes a lower court from reconsidering an issue decided by the higher court. *Askins v. United States Dep't of Homeland Sec.*, 899 F.3d 1035, 1042 (9th Cir. 2018) ("The doctrine applies most clearly where an issue has been decided by a higher court; in that case, the lower court is precluded from reconsidering the issue and abuses its discretion in doing so except in the limited circumstances the district court identified.").  The issue decided by the Oregon Supreme Court was whether a claim for statutory liability exists for violation of the mandatory child abuse reporting laws.  Plaintiff is not seeking to add back a statutory liability claim.  Rather, plaintiff is seeking to clearly allege a common law negligence claim, the viability of which no court has ruled on, and which the Oregon Supreme Court has advised *is* viable based in part on its own precedent:

> "Although this court has never directly addressed whether a common-law negligence claim would provide recovery for a breach of the duties at issue in this case, the 1971 Legislative Assembly, or at least the 2007 Legislative Assembly, might have assumed that a common-law negligence claim would be available under those circumstances.  See, e.g., *Mezyk v. National Repossessions,* 241 Ore. 333, 337, 405 P2d 840 (1965) (recognizing a negligence claim for harm caused by third-party when the defendant negligently created a likelihood of that harm); *Blachly v. Portland Police Dept.,* 135 Ore. App. 109, 117, 898 P2d 784 (1995) (holding that the plaintiffs stated a common-law negligence claim against DHS's predecessor based on allegations that the agency failed to investigate a report that

**PAGE 18 – PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT AND FOR JOINDER OF PARTY**

children—including the plaintiffs—were being abused at a day
care facility)."

*E.J.T. v. Jefferson County*, 370 Or at 235 n. 12.

The law of the case doctrine does not bar plaintiff from amending

his complaint to explicitly allege a claim for common law negligence.  *See*

*Askins v. United States Dep't of Homeland Sec.*, 899 F.3d at 1042-1043.

## CONCLUSION

For all these reasons, the Court should rejoin Officer Aryanfard as a

defendant and allow plaintiff to file the proposed First Amended Complaint

attached hereto as Exhibit A.

Dated:   June 7, 2023.

LAW OFFICE OF ERIN OLSON, P.C.

Erin K. Olson, OSB 934776
eolson@erinolsonlaw.com

BRIGID TURNER, ATTORNEY AT LAW,
LLC

Brigid K. Turner, OSB 065846
Brigid.Turner@icloud.com

BALDWIN, CROCKER & RUDD, P.C.

/s/ Kelly A. Rudd
Kelly A. Rudd, OSB 054961
rudd@bcrattorneys.com

Attorneys for Plaintiff

**PAGE 19 – PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED
COMPLAINT AND FOR JOINDER OF PARTY**

## **<u>CERTIFICATE OF COMPLIANCE</u>**

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 4,356 words, including headings, footnotes, and quotations, but excluding the caption, signature block, exhibits, and any certificates of counsel.

Dated:  June 7, 2023.

LAW OFFICE OF ERIN OLSON, P.C.

Erin K. Olson, OSB 934776
eolson@erinolsonlaw.com

**PAGE 20 – PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED
COMPLAINT AND FOR JOINDER OF PARTY**

Erin K. Olson, OSB 934776
Law Office of Erin Olson, P.C.
~~2014~~1631 N.E. Broadway Street #816
Portland, OR  97232-1425
Telephone:  (503) 546-3150
eolson@erinolsonlaw.com

Brigid K. Turner, OSB 065846
~~Dwyer Williams Cherkoss Attorneys PC~~
~~1558 S.W. Nancy Way, Suite 101~~
Brigid Turner, Attorney At Law, LLC
1307 N.E. 11th Street
Bend, OR ~~97702~~  97701
Telephone: (541) ~~617-0984~~241-6416
~~brigid@rdwyer~~Brigid.turner@icloud.com

Kelly A. Rudd, OSB 054961
Baldwin, Crocker & Rudd, P.C.
P.O. Box 1229
Lander, WY  82520
Telephone:  (307) 332-3385
rudd@bcrattorneys.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **E.J.T.,** a minor, by and through his Conservator, InTRUSTment Northwest, Inc., | Case No.:  3:20-cv-1990-MO |
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| v. | **(Negligence; Violation of ORS 124.105; and Violation of 42 U.S.C. § 1983)** |
| **JEFFERSON COUNTY,** a public body; **TYLER W. ANDERSON,** in his individual capacity; and **ARJANG ARYANFARD**, in his individual capacity, | ~~(Jury Trial Demanded)~~(DEMAND FOR JURY TRIAL) |

**PAGE 1 – FIRST AMENDED COMPLAINT**

Defendants.

Plaintiff alleges:

## PARTIES

1.    Plaintiff E.J.T. is a ~~five year old boy~~minor, born in April 2015, who at all times relevant to the allegations herein was a resident of the State of Oregon.  He appears through InTRUSTment~~,~~ Northwest, Inc., a conservator duly appointed for him in Jefferson County Circuit Court Case No. 20PR00609.

2.    Defendant Jefferson County ("Jefferson County") is body politic and corporate under ORS 203.010 and a public body liable for the tortious acts of its officers, agents, and employees pursuant to ORS 30.260(4) and 30.265(1).

3.    Defendant Tyler W. Anderson ("Deputy Anderson") is a February 2016 graduate of the Department of Public Safety Standards and Training ("DPSST") Basic Police Class.  Deputy Anderson was at all times relevant a ~~Deputy Sheriff~~deputy sheriff appointed by the Jefferson County Sheriff and empowered pursuant to ORS 204.635 to perform any act or duty of the ~~Sheriff~~sheriff.  Deputy Anderson was at all times relevant acting within the course and scope of his employment as a ~~Deputy Sheriff.~~deputy sheriff. Deputy Anderson is named individually herein pursuant to ORS 30.265(4)

**PAGE 2 – FIRST AMENDED COMPLAINT**

due to the constitutionally inadequate limits of ORS 30.272(2)(g) as applied

to this case, and in his individual capacity under 42 U.S.C. § 1983.

        4.        Defendant Arjang "R.J." Aryanfard ("Officer Aryanfard") ~~was at~~

~~all times relevant~~is a non-Indian who is a March 2016 graduate of DPSST's

Basic Police Class.  Officer Aryanfard was at all times relevant to the

allegations in this complaint:

          (a) Certified as a police officer ~~employed~~by the Oregon State

          Department of Public Safety Standards and Training;

          (b) Employed by the Warm Springs Police Department.  ~~Officer~~

          ~~Aryanfard was~~ as a police officer;

          (c) A mandatory child abuse reporter under federal, state, and

          tribal law; and

          (d) Imbued with, and at ~~all times~~ relevant times acting ~~within the~~

          ~~course and scope of his employment as a Warm Springs Police~~

          pursuant to, authority under *former* ORS 181A.685, aka Senate

          Bill 412.

Officer.  ~~He~~ Aryanfard is named in his individual capacity herein, including

but not limited to, under 42 U.S.C. § 1983.

**PAGE 3 – FIRST AMENDED COMPLAINT**

## JURISDICTION

5.    This court has jurisdiction of ~~Plaintiff's~~E.J.T.'s claims of

violations of federal constitutional rights under 28 U.S.C. §§ 1331 and 1343.

6.    Pendent and supplemental jurisdiction ~~is sought~~exists under 28

U.S.C.

§ 1367 and FRCP 18(a) for ~~Plaintiff's~~E.J.T.'s state law claims.

## COMMON FACTUAL ALLEGATIONS ~~COMMON TO ALL CLAIMS~~

7.    E.J.T. ~~was born in April, 2015, to~~ is the son of Kaytlynne

Rogerson ("Rogerson~~"~~)"), a non-Indian, and Andre Thomas ("Thomas~~")~~.

~~8.    Thomas is~~"), an enrolled member of the Confederated Tribes of

the Warm Springs ~~who at all times relevant, resided on the Warm Springs~~

~~Indian~~ Reservation ~~in Jefferson County,~~of Oregon. ("Confederated Tribes").

~~9.    After Rogerson and Thomas separated in early 2017, E.J.T.~~

~~remained in Rogerson's custody, and lived with her in her~~8. Several months

prior to E.J.T.'s birth, Thomas established his residence ~~outside the city~~

~~limits of~~ in Madras, Oregon, ~~in Jefferson County.~~ where Rogerson lived, and

Thomas and Rogerson were living at the Madras residence when E.J.T. was

born.

10.    Thomas remained domiciled with Rogerson and E.J.T. in Madras

until the spring of 2017, when he and Rogerson broke up, after which Thomas

moved to live on the Warm Springs Reservation of Oregon ("Reservation"),

**PAGE 4 – FIRST AMENDED COMPLAINT**

and E.J.T. remained living with Roberson off-Reservation in Madras,

Jefferson County, Oregon.  At that time, Rogerson and Thomas agreed

informally to a visitation arrangement for Thomas and E.J.T.

10. 11. E.J.T. has never lived on the Reservation.

12.    E.J.T. has never received any benefits available only to Indians.

13.    E.J.T. has never participated in a Native American religious

ceremony.

14.    E.J.T. has never received benefits from the Confederated Tribes.

15.    E.J.T. has never been in the physical or legal custody of the

Confederated Tribes.

16.    Since early 2018, E.J.T. has been in the legal custody of the

Oregon Department of Human Services ("DHS") and in the physical custody

of Tina Jorgensen ("Jorgensen"), his maternal grandmother, who is a non-

Indian.

17.    Neither Jorgensen nor E.J.T. have received financial or other

assistance from the Confederated Tribes at any time.

18.    Rogerson and Josue Jair Mendoza-Melo ("Mendoza-Melo") began

dating in approximately March of 2017, and Mendoza-Melo moved in with

Rogerson and E.J.T. in early July of 2017.

19.    11.   After Mendoza-Melo moved in with her, Rogerson would

occasionally leave E.J.T. in Mendoza's Mendoza-Melo's care.

**PAGE 5 – FIRST AMENDED COMPLAINT**

~~12~~20. On July 2, 2017, Rogerson took E.J.T. to St. Charles Madras Hospital after E.J.T.'s right thumb was dislocated.  Rogerson reported to hospital staff that the injury had happened in a witnessed fall.  E.J.T. was treated and released.

~~13~~21. On August 27, 2017, Mendoza-Melo picked up E.J.T. from his regular babysitter, Brittany Fowler ("Fowler"), and took him to Rogerson's home.  When E.J.T. left Fowler's, he was uninjured.  The following morning, Rogerson dropped E.J.T. off at Fowler's while she went to work. Fowler called Rogerson a short time later and instructed her to come pick up E.J.T. and take him to the hospital because his right arm was injured. Rogerson did so, and St. Charles Madras Hospital staff diagnosed E.J.T. with nursemaid's elbow, a form of dislocation caused when a ligament slips out of place and gets caught between two bones of the elbow joint.  E.J.T. was treated and released.

~~14~~22. On September 30, 2017, Thomas picked E.J.T. up from Fowler's in the morning for a planned visit and delivered him to Rogerson's custody ~~at~~ around 9:10 p.m. that night while Rogerson was visiting with friends in Culver.  E.J.T. appeared happy when Thomas dropped him off and exhibited no signs of injury.

~~15~~23. The following morning, October 1, 2017, Rogerson left E.J.T. in ~~Mendoza's~~Mendoza-Melo's care in their home outside the city limits of

**PAGE 6 – FIRST AMENDED COMPLAINT**

Madras, Jefferson County, Oregon, when she went to work., during which time Mendoza-Melo assaulted E.J.T.

~~16~~24. On Monday, October 2, 2017, Rogerson dropped E.J.T. off at Fowler's on her way to work. When Fowler later went to change E.J.T.'s diaper, he expressed discomfort and pain, and she found severe bruising around his genitals. Fowler called Rogerson and instructed her to come take E.J.T. to the hospital. Rogerson did, arriving with E.J.T. at St. Charles Madras Hospital at approximately 9:57 a.m. Rogerson's mother, Tina ~~Jorgenson ("Jorgenson~~Jorgensen ("Jorgensen") arrived a short time later.

~~17~~25. St. Charles Madras Hospital staff examined E.J.T., describing his injuries in his medical record as "Scratches under both eyes, dry skin, bruising to scrotal/perineal area, small bruise noted to inner left thigh." The attending nurse, Briana Mellor ("Nurse Mellor"), advised Rogerson that the nature of E.J.T.'s injuries required hospital staff to notify law enforcement and the Oregon Department of Human Services ("DHS"). Nurse Mellor further advised Rogerson that DHS would likely want to come speak with her at her home and check on E.J.T.

~~18~~26. Nurse Mellor called Frontier Regional 9-1-1 dispatch center at 10:20 a.m. on October 2, 2017, to report possible child abuse of E.J.T., describing his injuries to the dispatcher as scrotal swelling and bruising.

**PAGE 7 – FIRST AMENDED COMPLAINT**

Frontier Regional 9-1-1 dispatched Jefferson County Sheriff's Deputy Tyler

W. Anderson ("Deputy Anderson") to the hospital at 10:23 a.m.

27.    E.J.T.'s injuries were, in fact, caused by child abuse.

28.    19.    Deputy Anderson was a February 2016 graduate of the

Department of Public Safety Standards and Training ("DPSST") Basic

Police Class. Deputy Anderson notified the dispatch center at 10:32 a.m.

via his mobile data terminal ("MDT") that he had spoken by phone with

Nurse Mellor, who told him Rogerson was waiting for him at the hospital,

and that the abuse had happened at E.J.T.'s father's place on Saturday.

20 29. When he arrived at St. Charles Madras Hospital, Deputy

Anderson contacted Rogerson, glanced at E.J.T., and asked where E.J.T.'s

father lived.  When Rogerson responded that he lived in Warm Springs,

Deputy Anderson raised his hands and told her this was out of his

jurisdiction, then turned and left.  He reported to dispatch via his MDT at

10:44 a.m. that "the abuse occurred in Warm Springs.  Dispatch is giving the

call to them.  Mom will wait at [St. Charles Madras]."

21 30. Deputy Anderson cleared the hospital at 10:45 a.m. without

speaking further with hospital staff, without requesting medical records of

the current or any previous injuries, without examining E.J.T., without

questioning Rogerson about E.J.T.'s whereabouts and activities in the

**PAGE 8 – FIRST AMENDED COMPLAINT**

preceding days, and without conducting any investigation whatsoever.  He did not take notes.  He did not write a report.  He did not notify DHS.

~~22~~31. Nurse Mellor thereafter contacted the Warm Springs Police Department and was advised they were shorthanded and someone would come to the hospital when they could get away.

32.    After a considerable ~~wait, Warm~~delay, Warms Springs Police Officer ~~Arjang "RJ"~~Aryanfard called ~~Rogerson~~Nurse Mellor and ~~interviewed her briefly over the phone.  He~~ advised her that he ~~had spoken with Thomas, and that he~~ wanted to see E.J.T. and take photographs.

~~23~~33. When ~~Warm Springs Police~~Officer Aryanfard had not arrived at the hospital by approximately 2:00, ~~Jorgenson~~Jorgensen, who was at the hospital along with E.J.T. and Rogerson, informed hospital staff that E.J.T. had not been fed and had been cooped up in the small examining room for several hours.  ~~After another call by Nurse Mellor to the Warm Springs Police Department in which she was again told they still could not get away, Nurse Mellor told Rogerson and Jorgenson that if they promised to take E.J.T. to the Warm Springs Police Department and speak to the officer named "R.J.," the hospital would release E.J.T.  After making the promise to Nurse Mellor, Rogerson and Jorgenson took E.J.T. and left.~~

34.    Nurse Mellor again called the Warm Springs Police Department and was again told Officer Aryanfard still could not get away.

**PAGE 9 – FIRST AMENDED COMPLAINT**

35.    24.    After leaving St. Charles Madras Hospital, Jorgensen drove Officer Aryanfard spoke to Nurse Mellor and told her that she could release E.J.T. from the hospital if he were taken directly to the Warm Springs Police Department.

36.    Nurse Mellor told Rogerson and E.J.T. to McDonalds to get food for Jorgensen that if they promised to take E.J.T. While waiting for the food, Jorgensen directly to the Warm Springs Police Department to speak to the officer named "R.J." (Officer Aryanfard), the hospital would discharge E.J.T.

37.    After making the above promise to Nurse Mellor, Rogerson and Jorgensen took E.J.T. and left the hospital at 4:00 p.m.

38.    Jorgensen spoke by phone with Officer Aryanfard and learned Officer Aryanfard had already spoken with Thomas about the report of abuse.

39.    After learning Officer Aryanfard had already spoken with Thomas, Jorgensen called the Jefferson County Sheriff's Office and asked to speak to the Sheriff. When Sheriff Jim James N. Adkins came on the line, Jorgensen Jorgensen described the sequence of events and expressed her concerns about the instructions they had received to take E.J.T. to the Warm Springs Police Department. Sheriff Adkins affirmed that Jorgensen should continue on to Warm Springs as instructed Jorgensen should continue to Warm Springs as instructed, but suggested she call Officer Aryanfard and express her concerns about bringing E.J.T. to Warm Springs when E.J.T.'s

**PAGE 10 – FIRST AMENDED COMPLAINT**

father was aware of the investigation.  Jorgensen did call Officer Aryanfard, and he assured her that E.J.T. would be safe at the police station.

2540. Rogerson and Jorgensen would not have taken E.J.T. to Warm Springs had they not been told they could not leave the hospital if they did not agree to do so and had they not been directed to take E.J.T. to Warms Springs by Sheriff Adkins and Officer Aryanfard.

41. Upon their arrival at the Warm Springs Police Department, Jorgenson and Rogerson Rogerson and Jorgensen observed E.J.T.'s paternal grandfather and other relatives of E.J.T.'s in the police department parking lot, then encountered E.J.T.'s grandfather in the reception area.

39. Jorgensen approached the front desk clerk and advised her that they were going to leave due to the presence of E.J.T.'s paternal relatives at the police station.

40. The front desk clerk informed Jorgensen that they could not leave, and then escorted them to an office in back where they were eventually contacted by Officer Aryanfard,.

41. Jorgensen immediately expressed her concerns to Officer Aryanfard about the presence of E.J.T.'s paternal relatives at the police station and told him they had considered leaving.

42. Officer Aryanfard advised her that it was a good thing they had not left, because he could arrest her either on or off the Reservation.

**PAGE 11 – FIRST AMENDED COMPLAINT**

43.   ~~March 2016 graduate of DPSST's Basic Police Class.~~ Thereafter, Officer Aryanfard spoke with Rogerson and ~~Jorgenson, took~~ Jorgensen, but asked no questions about who had access to E.J.T. in the preceding 36 hours.

44.   Officer Aryanfard asked no questions about prior injuries sustained by E.J.T., and requested no past medical history about E.J.T.

45.   Officer Aryanfard did ask if he could take photos of E.J.T~~.,~~ ~~promised Rogerson he would figure~~.'s injuries, and upon receiving permission from Rogerson, appeared to do so while Rogerson pulled down E.J.T.'s diaper to accommodate the picture-taking, revealing the injury to E.J.T.'s genital area.

46.   At the conclusion of his interaction with E.J.T., Rogerson, and Jorgensen, Officer Aryanfard assured Rogerson he would get to the bottom of the situation and find out what happened to E.J.T., and gave Rogerson his business card. ~~Jorgenson,~~

47.   Rogerson~~,~~ and Jorgensen then took E.J.T. ~~then~~and left the police station~~, and never~~; neither ever heard from Officer Aryanfard again.

~~26~~48. When Officer Aryanfard assured Rogerson he would determine how E.J.T. had been injured, he had no intention of conducting any further investigation.

49.   Officer Aryanfard did not further investigate E.J.T.'s injuries~~,~~ ~~having concluded that the injuries to E.J.T.'s genital area were caused by~~.

**PAGE 12 – FIRST AMENDED COMPLAINT**

50.    ~~E.J.T. leaning over a coffee table, which conclusion was palpably unreasonable.~~ Officer Aryanfard did not write a report~~,~~ at the conclusion of his investigation.

51.    Officer Aryanfard did not notify DHS~~, and~~ or any other child protective services officials or agency at any time concerning E.J.T.'s injuries.

52.    Officer Aryanfard did nothing with the photographs he had taken of E.J.T. for more than six weeks until they were requested of him by state and local police officers investigating catastrophic injuries sustained by E.J.T. on November 19, 2017.

~~27~~53. The eleven photographs taken by Officer Aryanfard on October 2, 2017, that were produced to the state and local police officers investigating E.J.T.'s subsequently sustained catastrophic injuries did not include a photograph of E.J.T.'s groin injuries, and Officer Aryanfard subsequently testified that he did not take any photographs of E.J.T.'s groin injuries because he concluded that the report of abuse was "unfounded."

54.    Rogerson expected to be contacted by DHS after leaving St. Charles Madras Hospital on October 2, 2017, as she had been told by Nurse Mellor she would be.  When she had not been contacted two days later, Rogerson called DHS.  Rogerson was told by the call-taker that DHS had not received a report and had nothing in their system about the injuries with which E.J.T. presented to St. Charles Madras Hospital on October 2, 2017.

**PAGE 13 – FIRST AMENDED COMPLAINT**

Rogerson left her phone number with DHS in the event they needed to contact her.

~~28~~55. Between October 2, 2017, and November 19, 2017, Rogerson continued to leave E.J.T. in ~~Mendoza's~~Mendoza-Melo's care on occasion at their home outside the city limits of Madras, Jefferson County, Oregon, during which time Mendoza-Melo inflicted physical injuries including bilateral facial bruising upon E.J.T.

~~29~~56. On the morning of November 19, 2017, E.J.T. was again left in ~~Mendoza's~~Mendoza-Melo's care at their home outside the city limits of Madras, Jefferson County, Oregon, and Mendoza again assaulted ~~him.~~ E.J.T., inflicting serious physical injuries including a traumatic brain injury.

57.    At 10:45 a.m., Rogerson carried E.J.T., who was unresponsive and stiff, into St. Charles Madras Hospital.  St. Charles Madras staff provided emergent care to E.J.T., including placing him on a ventilator, and then ordered him airlifted to Oregon Health Sciences University where he was admitted to Doernbecher Children's Hospital ~~with a traumatic brain injury.~~.

58.    At Doernbecher Children's Hospital, E.J.T. underwent emergent decompressive surgery to relieve a subdural brain hematoma, but nonetheless suffered permanent, catastrophic brain damage resulting in

**PAGE 14 – FIRST AMENDED COMPLAINT**

permanent physical, cognitive, and developmental disabilities—; pain; mental

suffering; and loss of enjoyment of life.

30.    Mendoza59.    E.J.T.'s injuries required a tracheostomy and

insertion of a tube to provide an alternative airway for breathing, which was

in place for several years and required frequent suctioning, cleaning, and

changing.

60.    E.J.T. frequently requires oxygen and ongoing monitoring via a

pulse oximeter.

61.    E.J.T.'s injuries required placement of a g-tube for feeding that

requires monitoring and care.

62.    E.J.T. cannot walk or talk and will never be able to do so.

63.    E.J.T. is highly susceptible to illness.

64.    E.J.T. requires 24-hour care and supervision, and he will for the

rest of his life.

65.    All of E.J.T.'s injuries as alleged above were inflicted by

Rogerson's boyfriend, Josue Jair Mendoza-Melo, at Rogerson's off-Reservation

home in Madras, Oregon.

66.    Mendoza-Melo was arrested and ultimately indicted by the

Jefferson County grand jury on charges of Attempted Aggravated Murder,

Assault in the First Degree, Assault in the Second Degree, and Criminal

Mistreatment in the First Degree for crimes committed November 19, 2017,

**PAGE 15 – FIRST AMENDED COMPLAINT**

and Criminal Mistreatment in the First Degree and Assault in the Third

Degree for crimes committed on or about October 1, 2017.

3167. Mendoza-Melo admitted to having caused E.J.T.'s groin injury on

October 1, 2017 in addition to the November 19, 2017 injuries and was

eventually convicted pursuant to a plea agreement of Attempted Aggravated

Murder and one count of Criminal Mistreatment in the First Degree.  He was

sentenced to a total of 144 months in prison.

32.    As a result of the injuries inflicted by Mendoza on November 19,

2017, 68.    Mendoza-Melo had a prior history of domestic violence, including

a criminal conviction and DHS assessments, information about which was

readily available to law enforcement and child protective services officials.

69.    E.J.T. would not have suffered child abuse after October 2, 2017,

if defendants had competently conducted a child abuse investigation on

October 2, 2017, or reported to appropriate child protective services workers

that E.J.T.'s injuries were likely the result of child abuse.

70.    As a result of the injuries inflicted by Mendoza-Melo after

October 2, 2017, E.J.T. has suffered E.J.T. required a tracheostomy which

must be regularly suctioned, changed, and cleaned.  E.J.T. frequently

requires oxygen and ongoing monitoring via a pulse oximeter.  He has a g-

tube for feeding, which requires monitoring and care.  He cannot walk or

talk.  He requires 24 hour care and supervision, and he will for the rest of his

**PAGE 16 – FIRST AMENDED COMPLAINT**

~~life, all to his~~ economic damage in an amount the jury determines in accordance with the law and the facts, not to exceed $20 million.

~~33~~71. In addition, E.J.T. has suffered and will continue to suffer physical pain and discomfort, emotional injury and mental anguish, trauma, an inability to form intimate relationships, nightmares and sleep disruption, ~~and~~ chronic malaise, and loss of enjoyment of life, all to his noneconomic damages in an amount the jury determines in accordance with the law and the facts, not to exceed $10 million.

### FIRST CLAIM FOR RELIEF – NEGLIGENCE

### (Count One – Special Relationship)

**(Against ~~Jefferson County,~~ All Defendants)**
**~~Tyler W. Anderson, and Arjang Aryanfard)~~**

~~34~~

72. Plaintiff realleges and incorporates herein as though set forth in full paragraphs 1-~~33~~71, above.

73. At all times relevant, defendants were in a special relationship with E.J.T. in one or more of the following ways:

(a) E.J.T. was in their constructive or actual custody from the point of Deputy Anderson's arrival at the hospital until Officer Aryanfard's release of him from the Warm Springs Police Department;

(b) Defendants were obligated under Oregon law, ORS 419A.020 *et seq.*, to provide affirmative protection to E.J.T. as a member of the class

**PAGE 17 – FIRST AMENDED COMPLAINT**

of children who are the suspected victims of child abuse; and

(c) Defendants knew E.J.T. was a suspected victim of child abuse at the

times they had custody of him.

74.    Defendants, including 35.    Jefferson County, by and through

its employees or agents acting within the course and scope of their duties,

including Deputy Anderson, and Officer Aryanfard, in his individual capacity,

were negligenttortiously breached the duty of care owed to E.J.T. in one or

more of the following ways on October 2, 2017, which caused the injuries

sustained by E.J.T. thereafter, up to and including those sustained on

November 19, 2017:

(a)    (a) By failing to make a mandatory cross-report conduct a

minimally competent investigation of child abuse or neglect to DHS, as

was required by ORS 419B.015the cause and perpetrator of E.J.T.'s

injuries;

(b) By failing to cause an investigation to be madephotograph or

otherwise document E.J.T.'s injuries;

(b)    (c) By failing to report E.J.T.'s injuries to child protective services

officials with jurisdiction to determineinvestigate the nature and cause

of the abuseand perpetrator of E.J.T., as required by ORS

419B.020(1)(a);.'s injuries;

**PAGE 18 – FIRST AMENDED COMPLAINT**

(c)    (d) By failing to ~~cause E.J.T.'s injuries to be photographed and sent to a~~arrange for an appropriate or designated medical professional ~~pursuant to ORS 419B.028;~~to conduct a forensic examination of E.J.T.; and

~~(d) By failing to ensure that a designated medical professional conducted a medical assessment of E.J.T. within 48 hours, as required by ORS 419B.023(2).~~

~~36~~(e) As to Officer Aryanfard, by falsely assuring E.J.T.'s family that he would continue to investigate E.J.T.'s injuries.

75.    As a result of the ~~negligence~~tortious conduct of ~~Jefferson County, Deputy Anderson, and Officer Aryanfard~~defendants as alleged ~~in this claim~~herein, an investigation into the nature and cause of the injuries sustained by E.J.T. on or about October 1, 2017, ~~that were treated at St. Charles Madras Hospital on October 2, 2017,~~ was not conducted~~.~~; Mendoza-Melo was not identified as E.J.T.'s actual assailant~~was not identified,~~; E.J.T. was not protected from Mendoza~~,~~-Melo; and ~~he~~E.J.T. suffered the harms and losses described in paragraphs ~~32~~57 to 64 and ~~33~~70-71.

~~37~~76. A timely notice of claim was sent to Jefferson County as required by ORS 30.275 within 270 days of the date of the discovery of E.J.T.'s cognizable injury by a person whose knowledge is imputed to E.J.T.

**PAGE 19 – FIRST AMENDED COMPLAINT**

**(Count Two – Negligence *Per Se*)**

**(Against All Defendants)**

77.    Plaintiff realleges and incorporates herein as though set forth in full paragraphs 1-76, above.

78.    Defendants violated the following statutes intended to protect children, causing E.J.T., a child, to suffer the type of injuries the statutes were enacted to prevent:

(a) ORS 419B.015, by failing to make a mandatory cross-report of child abuse or neglect to DHS;

(b) ORS 419B.020(1)(a), by failing to cause an investigation to be made to determine the nature and cause of the abuse of E.J.T.;

(c) ORS 419B.028, by failing to cause E.J.T.'s injuries to be photographed and sent to a designated medical professional; and

(d) ORS 419B.023(2), by failing to ensure that a designated medical professional conducted a medical assessment of E.J.T. within 48 hours.

**(Count Three – General Foreseeability)**

**(Against All Defendants)**

79.    Plaintiff realleges and incorporates herein as though set forth in full paragraphs 1-78, above.

**PAGE 20 – FIRST AMENDED COMPLAINT**

80.    Defendants' conduct unreasonably created a foreseeable risk of harm to E.J.T.

81. The risk of harm was to E.J.T.'s interest to be protected from child abuse, which is an interest that the law protects against negligent invasion.

82. Defendants' conduct was unreasonable in light of the risk of harm.

83. Defendants' conduct was a cause of plaintiff's harm.

84. Plaintiff was within the class of persons and plaintiff's injuries were the type of injuries that made defendants' conduct negligent.

**SECOND CLAIM FOR RELIEF – VIOLATION OF ORS 124.105**

**(Against Jefferson County~~,~~**
 **and Tyler W. Anderson~~, and Arjang Aryanfard~~)**
~~38~~

85.    Plaintiff realleges and incorporates herein as though set forth in full paragraphs 1-~~37~~84, above.

~~39~~86. E.J.T. was at all relevant times a vulnerable person within the meaning of ORS 124.100(1)(e) and entitled to the protection of ORS 124.100 *et seq.*, because he was an incapacitated person within the meaning of ORS 124.100(1)(e)(C) and ORS 125.005(5) since a condition existed in which his ability to receive and evaluate information effectively or to communicate decisions was impaired to such an extent that he did, at the relevant times, lack the capacity to meet the essential requirements for his physical health or safety, including those actions necessary to provide the health care, food,

**PAGE 21 – FIRST AMENDED COMPLAINT**

shelter, clothing, personal hygiene and other care without which serious

physical injury or illness was likely to occur. Specifically, conditions existed

such that E.J.T. lacked a wide range of cognitive and functional abilities

relating to receipt and evaluation of information and communication,

including:

(a) The ability to use and understand words, regardless of whether

they were written or spoken;

(b) The ability to communicate effectively with or otherwise engage

others, including those who may have been in a position to help E.J.T.

meet his basic needs;

(c) The ability to understand basic concepts related to self-care, medical

treatment, common dangers, and personal safety;

(d) The ability to manage money or purchase necessities;

(e) The ability to understand (i) that he had the need and right not to

be abused by others; (ii) that he had the right to emotional security

and bodily integrity; and (iii) an understanding that he was being

physically abused;

(f) The ability to make or to communicate any decision that would cause

his essential requirements for physical health and safety to be met;

(g) The ability to place phone calls, to communicate electronically, or in

any way to contact law enforcement or medical providers; and

**PAGE 22 – FIRST AMENDED COMPLAINT**

(h) The ability to receive and evaluate information effectively or to communicate decisions due to infancy.

4087. The conduct of Mendoza-Melo as alleged in paragraphs 29-3123 and 55-56 constituted physical abuse within the meaning of ORS 124.105(1)(a) and ORS 124.105(1)(d).

4188. Jefferson County, by and through its employees or agents acting within the course and scope of their duties, including Deputy Anderson, and Officer Aryanfard in his individual capacity, permitted Mendoza-Melo to engage in physical abuse of E.J.T. after October 2, 2017, by knowingly failing to act on and after October 2, 2017, under circumstances in which a reasonable person should have known of the physical abuse of E.J.T.

4289. As a result of the acts and omissions as alleged in this Second Claim for Relief, E.J.T. suffered the harms and damages alleged in paragraphs 3257 to 64 and 3370-71, and plaintiffE.J.T. is entitled to amounts equal to three times his economic and noneconomic damages, pursuant to ORS 124.100(2)(a) and (b).

90.    E.J.T.43.    Plaintiff is further entitled to recover reasonable attorney fees pursuant to ORS 124.100(2)(c) and reasonable fees for the services of the conservator pursuant to ORS 124.100(2)(d).

///

///

**PAGE 23 – FIRST AMENDED COMPLAINT**

## THIRD CLAIM FOR RELIEF – VIOLATION OF 42 U.S.C. § 1983

### (Against Deputy Anderson)

4491. Plaintiff realleges and incorporates herein as though set forth in full paragraphs 1-4384, above.

4592. At all times relevant, Deputy Anderson was acting under color of state law.

4693. When on October 2, 2017, Deputy Anderson chose not to investigate E.J.T.'s injuries based on his belief that E.J.T. was Native American, Deputy Anderson violated E.J.T.'s constitutional right to equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution.

4794. As a result of Deputy Anderson's deprivation of E.J.T.'s constitutional right to equal protection of the laws as alleged in this Third Claim for relief, E.J.T. suffered the harm and damages alleged in paragraphs 3257 to 64 and 3370-71.

48.    Deputy Anderson's actions as set forth herein demonstrated a wanton and callous indifference to E.J.T.'s constitutional rights warranting the imposition of punitive damages in such amount as the jury may deem appropriate to punish Deputy Anderson for his wanton misconduct and to deter other police officers from callously disregarding Native American citizens' constitutional right to equal protection of the laws.

**PAGE 24 – FIRST AMENDED COMPLAINT**

4995. Plaintiff is entitled to his reasonable and necessary litigation costs and attorney fees incurred herein pursuant to 42 U.S.C. § 1988.

## FOURTH CLAIM FOR RELIEF – VIOLATION OF 42 U.S.C. § 1983

### (Against Jefferson County)

5096. Plaintiff realleges and incorporates herein as though set forth in full paragraphs 1-4984.

5197. At all times relevant to the allegations herein, the Jefferson County SheriffSheriff's Office had the following policies, customs, or practices:

(a) A policy, custom, or practice of directing deputies to refer child abuse investigations involving Native American children to the Warm Springs Police Department without conducting any investigation to determine the location and source of the alleged abuse;

(b) A policy, custom, or practice of failing to investigate allegations of child abuse involving Native American children; and

(c) A policy, custom, or practice of failing to cross-report allegations of child abuse involving Native American children to DHS;

5298. At all times relevant to the allegations herein, the Jefferson County Sheriff failed to adopt necessary policies, customs, or practices as follows:

**PAGE 25 – FIRST AMENDED COMPLAINT**

(a)  A clear policy, custom, or practice for circumstances under which deputies should investigate allegations of child abuse involving Native American children; and

(b)  A clear policy, custom, or practice for when deputies should make a cross-referral of allegations of child abuse involving Native American children to DHS.

5399. At all times relevant to the allegations herein, the Jefferson County Sheriff inadequately trained his deputies to investigate allegations of child abuse involving Native American children, and his training failures amounted to deliberate indifference to the rights of Native American children to the equal protection of the laws intended to prevent child abuse.

54100.    On October 2, 2017, Sheriff JimJames N. Adkins, a final policymaker for Jefferson County in policies, customs, and practices concerning his deputies' responses to reports of child abuse involving Native American children, made the conscious, affirmative choice to ratify Deputy Anderson's violation of E.J.T.'s constitutional rights, as alleged in the Third Claim for Relief.

55101.    As a direct result of the misconduct of Jefferson County as set forth above, E.J.T. was deprived of the right to equal protection of the laws as guaranteed to him in the Fourteenth Amendment to the United States

**PAGE 26 – FIRST AMENDED COMPLAINT**

Constitution, and such deprivation caused E.J.T. to suffer the harm and

damages alleged in paragraphs 32~~57 to 64~~ and 33~~70-71~~.

56102.    Plaintiff is entitled to his reasonable and necessary

litigation costs and attorney fees incurred herein pursuant to 42 U.S.C. §

1988.

### FIFTH CLAIM FOR RELIEF – VIOLATION OF 42 U.S.C. § 1983

### (Against Officer Aryanfard)

103.   Plaintiff realleges and incorporates herein as though set forth in

full paragraphs 1-84.

104.   At all times relevant, Officer Aryanfard was acting under color of

state law by virtue of his designation as an authorized law enforcement

officer under *former* ORS 181A.685, aka Senate Bill 412.

105.   When on October 2, 2017, Officer Aryanfard investigated E.J.T.'s

reported abuse in a manner different than what was required of him under

Oregon law because of his belief that E.J.T. and/or his father was Native

American, Officer Aryanfard violated E.J.T.'s constitutional right to equal

protection of the laws as guaranteed by the Fourteenth Amendment to the

United States Constitution.

106.   As a result of Deputy Anderson's deprivation of E.J.T.'s

constitutional right to equal protection of the laws as alleged in this Third

Claim for relief, E.J.T. suffered the harm and damages alleged in paragraphs

**PAGE 27 – FIRST AMENDED COMPLAINT**

57 to 64 and 70-71.

107.   Plaintiff is entitled to his reasonable and necessary litigation

costs and attorney fees incurred herein pursuant to 42 U.S.C. § 1988.

### JURY DEMAND

108.   Plaintiff demands a trial by jury.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against defendants~~, and each of them~~ as follows:

A.    On the FIRST CLAIM FOR RELIEF FOR NEGLIGENCE against all

defendants:

(1) Economic damages in an amount the jury determines in accordance

with the law and the facts, not to exceed $20 million;

(2) Noneconomic damages in an amount the jury determines in accordance

with the law and the facts, not to exceed $10 million;

(3) Costs and disbursements necessarily incurred therein; and

(4) Such other relief as the court may deem equitable and just.

B.    On the SECOND CLAIM FOR RELIEF FOR VIOLATION OF ORS 124.105

against Jefferson County and Tyler W. Anderson:

(1) Economic damages in an amount the jury determines in accordance

with the law and the facts, not to exceed $20 million, trebled pursuant to

ORS 124.100(2)(a);

**PAGE 28 – FIRST AMENDED COMPLAINT**

(2) Noneconomic (general) damages in an amount the jury determines in accordance with the law and the facts, not to exceed $10 million, trebled pursuant to ORS 124.100(2)(b);

(3) Reasonable attorney fees incurred by the plaintiff, pursuant to ORS 124.100(2)(c);

(4) Reasonable fees for the services of a conservator incurred by reason of the litigation of this claim;

(5) Costs and disbursements necessarily incurred therein; and

(6) Such other relief as the court may deem equitable and just.

C.      On his THIRD CLAIM FOR RELIEF FOR VIOLATION OF 42 U.S.C. § 1983

against Deputy Anderson:

(1) Economic damages in an amount the jury determines in accordance with the law and the facts, not to exceed $20 million;

(2) General Noneconomic damages in an amount the jury determines in accordance

___ with

——the law and the facts, not to exceed $10 million;

(3) Punitive damages in an amount the jury determines in accordance with —— the law and the facts;

(4(3) Reasonable attorney fees, costs, and disbursements necessarily incurred by the plaintiff, pursuant to 42 U.S.C. § 1988; and

**PAGE 29 – FIRST AMENDED COMPLAINT**

(~~5~~4) Such other relief as the court may deem equitable and just.

D.    On his FOURTH CLAIM FOR RELIEF FOR VIOLATION OF 42 U.S.C.

§ 1983 against Jefferson County:

(1) Economic damages in an amount the jury determines in accordance with

the law and the facts, not to exceed $20 million;

(2) ~~General~~Noneconomic damages in an amount the jury determines in

accordance ~~with~~

with the law and the facts, not to exceed $10 million;

(3) Reasonable attorney fees, costs, and disbursements necessarily incurred

by the plaintiff, pursuant to 42 U.S.C. § 1988; and

(5) Such other relief as the court may deem equitable and just.

E.    On his FIFTH CLAIM FOR RELIEF FOR VIOLATION OF 42 U.S.C. § 1983

against Officer Aryanfard:

(1) Economic damages in an amount the jury determines in accordance

with the law and the facts, not to exceed $20 million;

(2) Noneconomic damages in an amount the jury determines in accordance

with the law and the facts, not to exceed $10 million;

(3) Reasonable attorney fees, costs, and disbursements

necessarily incurred by the plaintiff, pursuant to 42 U.S.C. § 1988; and

(4) Such other relief as the court may deem equitable and just.

~~DATED: November 16, 2020.~~

**PAGE 30 – FIRST AMENDED COMPLAINT**

Dated:  June 7, 2023.

LAW OFFICE OF ERIN OLSON, P.C.

Erin K. Olson, OSB 934776
eolson@erinolsonlaw.com

~~DWYER WILLIAMS CHERKOSS ATTORNEYS~~BALDWIN, CROCKER &

RUDD, P.C.

Kelly A. Rudd, OSB 054961
rudd@bcrattorneys.com

BRIGID TURNER, ATTORNEY AT LAW,
LLC

Brigid K. Turner, OSB 065846
~~brigid@rdwyer.com~~

Brigid.Turner@icloud.com

Attorneys for Plaintiff

**PAGE 31 – FIRST AMENDED COMPLAINT**